No. 25-5129

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

RINNAI AMERICA CORPORATION et al.,

*Plaintiffs–Appellants*,

v.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,

*Defendant–Appellee*,

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE et al.,

*Intervenor–Defendants–Appellees*.

On Appeal from the United States District Court
for the Central District of California, No. 2:24-cv-10482-PA-PD
Hon. Percy Anderson, District Judge

**PLAINTIFFS–APPELLANTS' MOTION FOR
INJUNCTION PENDING APPEAL**

**RELIEF NEEDED BY JANUARY 1, 2026**

Sarah O. Jorgensen
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
1201 W. Peachtree St., Suite 2300
Atlanta, GA 30309

Brian C. Baran
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006

Courtland L. Reichman
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401
creichman@reichmanjorgensen.com

*Counsel for Plaintiffs–Appellants Rinnai America Corp., Noritz America
Corp., National Association of Home Builders, California Manufacturers
& Technology Association, California Restaurant Association, California
Hotel & Lodging Association, California Apartment Association, and
Plumbing-Heating-Cooling Contractors of California*

(*Additional parties and counsel listed on inside cover*)

John J. Davis, Jr.
Luke Dowling
MCCRACKEN, STEMERMAN &
  HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200
jjdavis@msh.law

*Counsel for Plaintiff–Appellant
California State Pipe Trades
Council*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Plaintiff–Appellant
Restaurant Law Center*

Matthew P. Gelfand
CALIFORNIANS FOR
  HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, CA 90020
(213) 739-8206
matt@caforhomes.org

*Counsel for Plaintiff–Appellant
Californians for Homeownership,
Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................. 3

ARGUMENT ................................................................................. 6

  I.  Plaintiffs Have a Likelihood of Success on the Merits. .................... 7

  II.  Plaintiffs Face Irreparable Harm While This Appeal Is Pending. .... 13

  III. The Balance of Harms Sharply Favors an Injunction. .................... 19

  IV. The Public Interest Favors Preserving the Status Quo. ................. 21

CONCLUSION .............................................................................. 22

CERTIFICATE OF COMPLIANCE ....................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2010) ........................................................ 7, 21

*Am. Trucking Ass'ns v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ............................... 13, 16, 21, 22

*Am. Trucking Ass'ns v. City of Los Angeles,*
   569 U.S. 641 (2013) ................................................................................ 8

*Ariz. Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) .............................................................. 13

*Bucklew v. Precythe,*
   139 S. Ct. 1112 (2019) ............................................................................ 9

*California Restaurant Ass'n v. City of Berkeley,*
   89 F.4th 1094 (9th Cir. 2024) ...................................................... *passim*

*Champion Int'l Corp. v. Brown,*
   731 F.2d 1406 (9th Cir. 1984) ...................................................... 20, 21

*Clark v. City of Seattle,*
   899 F.3d 802 (9th Cir. 2018) ................................................................ 6

*E. Bay Sanctuary Covenant v. Biden,*
   993 F.3d 640 (9th Cir. 2021) .............................................................. 14

*Earth Island Inst. v. Carlton,*
   626 F.3d 462 (9th Cir. 2010) ........................................................ 20, 21

*Feldman v. Ariz. Sec'y of State's Off.,*
   843 F.3d 366 (9th Cir. 2016) (en banc) .............................................. 6

*Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.,*
   82 F.4th 664 (9th Cir. 2023) (en banc) .............................................. 21

*Gonzalez v. Arizona,*
   677 F.3d 383 (9th Cir. 2012) (en banc) .............................................. 11

ii

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ............................................ 7, 13

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ............................................... 6, 7

*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) ................................................. 16

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................ 6

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    579 U.S. 115 (2016) .............................................................. 12

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) .............................................. 20

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008) .............................................................. 12

*S. Bay United Pentecostal Church v. Newsom*,
    959 F.3d 938 (9th Cir. 2020) .................................................. 6

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
    472 F.3d 1097 (9th Cir. 2006) ............................................ 6, 7

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................. 6, 20

**Statutes**

Energy Policy and Conservation Act,
    42 U.S.C. §§ 6201 *et seq.* ........................................... *passim*

    §6297(c) ......................................................................... 2, 3, 4

    §6297(f)(3) ...................................................................... 9, 12

**Rules**

9th Cir. R. 27-1(3) .................................................................. 1

Fed. R. App. P. 8(a)(2) .................................................... 1, 6

Fed. R. Civ. P. 62(d) ............................................................. 5

**Regulations**

S. Coast AQMD R. 1146.2 ....................................... 4, 13, 22

S. Coast AQMD R. 1146.2(d)(1) ........................................ 4

S. Coast AQMD R. 1146.2(d)(2) .................................... 4, 14

**Ordinances**

Berkeley, Cal. Mun. Code §12.80 (repealed) ........................... 9

Berkeley, Cal. Mun. Code tit.19 ........................................... 9

**Other Authorities**

*Proposed Amended Rules (PAR) 1111 & 1121*, S. Coast Air Quality
   Mgmt. Dist., https://www.aqmd.gov/home/rules-compliance/rules
   /scaqmd-rule-book/proposed-rules/rule-1111-and-rule-1121
   (last visited Oct. 6, 2025). ............................................. 19

## INTRODUCTION

Plaintiffs move under Appellate Rule 8(a)(2) for an injunction pending appeal to maintain the status quo and prevent irreparable harm while this Court considers the serious legal question this appeal presents. Under Circuit Rule 27-1(3), Plaintiffs request relief by January 1, 2026 to prevent irreparable harm.

This case is a federal preemption challenge to Defendant–Appellee South Coast Air Quality Management District's effective ban on certain gas appliances, which it implemented by capping their emissions of $NO_x$, an inevitable byproduct of combustion, at zero. In rejecting Plaintiffs' challenge, the district court flatly contradicted this Court's decision in *California Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), which presented essentially the same question as this case.

Without interim relief from this Court, Plaintiffs will suffer irreparable harm. Although the Court has already expedited this appeal by the parties' agreement, the first phase of the challenged ban is scheduled to take effect January 1, 2026, before the appeal can likely be resolved even on an expedited schedule. That will irreparably harm Plaintiffs, who are manufacturers and sellers of gas appliances, trade associations, affordable housing groups, and labor union groups that rely on the availability of natural gas appliances and systems for their and their members' livelihoods.

1

Plaintiffs are likely to prevail on the merits. As explained in Plaintiffs' opening brief, Dkt.14.1, the decision below is irreconcilable with both the plain text of the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§6201 *et seq.*, and this Court's *California Restaurant Ass'n* decision.[1] EPCA expressly preempts state and local "regulation[s] concerning" certain appliances' "energy use." §6297(c). As this Court held, banning an appliance from using any energy—and thus setting its maximum energy use to zero—concerns that appliance's energy use and is therefore preempted. *Cal. Rest.*, 89 F.4th at 1102, 1107. When Berkeley tried taking "a more circuitous route to" a ban on gas appliances by instead banning gas piping, this Court held that its ban was nonetheless preempted. *Id.* at 1098.

So too here. The District's ban on combustion emissions is a different but equally effective means to achieve the same prohibited result: banning gas appliances. The challenged rule is legally indistinguishable from Berkeley's ban. None of the district court's protestations to the contrary can be squared with this Court's reasoning. Plaintiffs are therefore likely to succeed—but at the very least, this appeal presents a serious question on the merits.

The balance of harms and public interest favor an injunction pending appeal. If the District is allowed to upend the status quo by

---

[1] All further statutory references are to Title 42 of the U.S. Code unless otherwise noted.

2

implementing its ban while this appeal is pending, Plaintiffs will suffer serious harms that cannot be compensated or unwound—including not only lost sales but also lost market share, customers, and goodwill; forced business restructuring; and lost work hours and opportunities. Plaintiffs submitted evidence of the specific harms that will occur in 2026 as a result of Phase I of the zero-$NO_x$ rule. The District, in contrast, will suffer no appreciable harm from a short delay in the effective date. Nor would an injunction prevent anyone from choosing electric appliances.

Without discussing the merits, the district court denied interim relief based on its erroneous analysis of Plaintiffs' evidence of harm, as well as on the mistaken premise that failing to move for a preliminary injunction at the outset of the case bars any claim of harm now. Under this Court's well-established precedent, an injunction preserving the status quo pending appeal is warranted here.

The District and Defendant–Intervenors oppose this motion.

## BACKGROUND

**1.** EPCA expressly preempts any state or local "regulation concerning the ... energy use" of covered appliances. §6297(c). This Court held in *California Restaurant Ass'n* that EPCA preempted Berkeley's ban on gas piping in new buildings because "a regulation on 'energy use' fairly encompasses an ordinance that effectively eliminates the 'use' of an energy source." 89 F.4th at 1102. It made no difference that Berkeley, rather than banning gas appliances directly, banned gas

3

piping instead. *Id*. at 1107 ("States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*.").

Within months of that decision, the District amended its Rule 1146.2 to set a limit of zero $NO_x$ emissions for EPCA-covered gas-fired water heaters, boilers, and process heaters. As the district court found, because $NO_x$ is an inevitable byproduct of combustion, the District's zero-$NO_x$ rule "effectively bans the use of covered gas fueled" appliances. ER-13. Rule 1146.2 sets schedules for the rollout of the zero-$NO_x$ limits depending on the type of gas appliance and whether it is in an existing or new building. The first zero-$NO_x$ limits for gas tankless water heaters and smaller boilers and process heaters in new buildings will take effect January 1, 2026. *See* S. Coast AQMD R. 1146.2(d)(1)-(2).

The question in this case is whether the District's effective ban on EPCA-covered gas appliances is a preempted "regulation concerning the ... energy use" of those products, §6297(c), as this Court interpreted that phrase in *California Restaurant Ass'n*. Put another way, does the fact that the District banned gas appliances by banning their inevitable emissions distinguish its rule from Berkeley's attempt to ban gas appliances by banning the piping necessary to fuel them?

**2.** On cross-motions for summary judgment, the district court held that the zero-$NO_x$ rule was not preempted because, despite effectively banning gas appliances, the rule "concerns the pollution appliances emit,

and not how much energy an appliance uses, and is therefore outside the scope of" this Court's *California Restaurant Ass'n* holding.  ER-13, ER-16-17.

Plaintiffs timely appealed.  ER-236-38.  This Court granted Plaintiffs' unopposed motion to expedite.  Dkt.20.1.  Plaintiffs filed their opening brief on September 22, Dkt.14.1, and briefing will be complete by November 12, Dkt.2.1 at 3-4.

**3.**  Shortly after filing this appeal, Plaintiffs moved in the district court under Civil Rule 62(d) for an injunction pending appeal.  D.Ct.Dkt.85.  Plaintiffs filed declarations detailing the specific harms they will suffer in 2026 from the rule's first phase.  D.Ct.Dkts.85.2-.9.

The district court denied the motion.  D.Ct.Dkt.92.  It did not address the likelihood of success on the merits.  Instead, it concluded that the harm to Plaintiffs was not sufficiently concrete, would occur in the future, or was compensable.  *Id.* at 5-6.  The court also suggested that Plaintiffs' decision not to seek a preliminary injunction when they filed this case more than a year before the rule's effective date undercut their claim of imminent harm now—even though the court resolved this case more than five months before the effective date.  *Id.* at 6.  Finally, the court asserted in a footnote that the balance of harms would favor the District in any event.  *Id.* at 6 n.6.

5

## ARGUMENT

Appellate Rule 8(a)(2) allows this Court to preserve the status quo by entering an injunction pending appeal. "The ability to grant interim relief is … not simply an historic procedure for preserving rights during the pendency of an appeal, but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up); *accord Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011). This Court should exercise that power here to protect Plaintiffs from irreparable harm while it considers this case.

An injunction pending appeal is appropriate when the moving parties have shown that "they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest." *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc) ("The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction.").[2]

---

[2] *See also Feldman*, 843 F.3d at 367 (granting an injunction pending appeal to prevent a challenged law from going into effect); *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) (court had enjoined enforcement of the challenged ordinance pending appeal); *Se. Alaska*

6

Although a party must make a threshold showing on each factor, this Court uses a "sliding scale" approach under which "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1134-35 (9th Cir. 2010). As a result, an injunction is warranted when there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff ..., so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135; *accord hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188, 1191 (9th Cir. 2022) (similar).

## I.  Plaintiffs Have a Likelihood of Success on the Merits.

Plaintiffs have demonstrated a likelihood of success on the merits, or at the very least, "a substantial case for relief on the merits." *See Leiva-Perez,* 640 F.3d at 968.

**1.** This case does not arrive on a blank slate. Under a straightforward application of this Court's holding and reasoning in *California Restaurant Ass'n*, the District's zero-$NO_x$ rule is preempted for the same reason Berkeley's gas piping ban was. The District's rule does nothing more than "shift[] the[] regulatory focus" from the piping needed to fuel gas appliances to the emissions those appliances inevitably produce, providing another "indirect but wholly effective means" to the

---

*Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (similar).

same preempted end: banning covered appliances. *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 652 (2013) (rejecting an attempt to end-run a preemption provision); *see Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases).

As this Court recognized, "EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings." *Cal. Rest.*, 89 F.4th at 1107. Just as Berkeley could not "evade preemption by merely moving up one step in the energy chain and banning natural gas piping within those buildings," *id.*, the District cannot evade preemption by moving down one step and banning gas emissions. Banning an inevitable byproduct of covered gas appliances' energy consumption "'concerns' the energy use of those products as much as a direct ban on the products themselves." *See id.* at 1103.

As the district court here acknowledged, Berkeley's ordinance "'concerned the energy use' of covered appliances" because, "by banning the installation of piping to transport gas to an appliance where gas was otherwise available," it "set[] that use at zero." ER-15. That is what the zero-$NO_x$ rule does too. The district court found that the District's rule effectively bans gas appliances by banning the combustion necessary to use them, ER-13—which, just like banning the piping, "set[s]" the appliances' maximum energy "use at zero," ER-15. Nevertheless, the

8

district court insisted that the rule was distinguishable from Berkeley's ban.

**2.** The district court failed to give fair import to this Court's reasoning, instead treating *California Restaurant Ass'n* as confined to its facts. That is not how precedent works. "[J]ust as binding as this [Court's] holding is the reasoning underlying it." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019).

**a.** Start with the district court's insistence that *California Restaurant Ass'n* is limited to building codes. ER-15. It is not. This Court of course decided only the case before it. But nothing in its opinion confined EPCA's reach to building codes. To the contrary, this Court said §6297(f)(3)'s building code exception was "[o]f critical importance" because it refuted the view that preemption is limited to "direct or facial regulations of covered products" or to "regulations that impose standards on the design and manufacture of appliances." *See Cal. Rest.*, 89 F.4th at 1100-01. The point was that preemption extends "to at least include building codes," not that preemption is confined to building codes. *Id.* at 1101.[3]

---

[3] The District's rule is no less a building code than Berkeley's ordinance; both restrict what can be installed in a building. Berkeley's ordinance was part of its health and safety code, *see* Berkeley, Cal. Mun. Code §12.80 (repealed), not its building code, *id.* tit.19. What mattered was the law's effect, not its formal classification. *Cal. Rest.*, 89 F.4th at 1098-99.

**b.** The district court's remaining attempts to distinguish *California Restaurant Ass'n* confirm that the decision controls here. It spent just six sentences attempting to explain why this case presents "a very different situation." ER-15-16. But everything it said was an argument considered and rejected by the *California Restaurant Ass'n* panel, an argument unsuccessfully advanced in the dissent from denial of rehearing en banc, or was equally true of Berkeley's ban. *See* Dkt.14.1 at 31-33 (Plaintiffs' opening brief mapping every purported distinction to *California Restaurant Ass'n*).

The district court's core misunderstanding was that Berkeley's ban expressly regulated "the quantity of gas an appliance may use." ER-15-16. Not so. The whole point of the case in this Court was that Berkeley's ban did not do so; it did not even explicitly regulate appliances, let alone say anything about the quantity of gas they could use. *Cal. Rest.*, 89 F.4th at 1098-99, 1102. That was why the district court in *California Restaurant Ass'n* had upheld Berkeley's ban. *Id.* at 1099. And on appeal, "Berkeley's main contention [was] that its Ordinance doesn't regulate 'energy use' because it bans natural gas rather than prescribes an affirmative 'quantity of energy.'" *Id.* at 1102. This Court rejected that argument. *Id.* at 1103.

Next, the district court suggested that the District's rule does not require consumers to use or manufacturers to make appliances that exceed federal performance standards. ER-15-16. Neither did Berkeley's

10

ban. *See Cal. Rest.*, 89 F.4th at 1126 (Friedland, J., dissenting from the denial of rehearing en banc) (arguing that Berkeley's ban did not depend on appliances' energy consumption, did not "require consumers to use appliances with higher efficiency standards," and did not require manufacturers "to change the design of their natural gas products to meet" such standards).

The district court's emphasis on the District's purpose of addressing air quality, ER-15-16, again fails to distinguish this case. Berkeley's aim was to address health, safety, and climate change. *See Cal. Rest.*, 89 F.4th at 1126 (Friedland, J., dissenting from the denial of rehearing en banc).

In short, the decision below aligns more closely with the dissent from denial of en banc review than with the binding panel opinion. That is ample reason to think Plaintiffs will prevail on the merits. *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (this Court's published decisions are "binding authority" that "must be followed unless and until overruled by a body competent to do so" (attribution omitted)).

**3.** The district court next contended that EPCA contains an unwritten exception for "emission regulations designed to combat air pollution," asserting that "there is no reason to believe that Congress" intended to preempt air quality regulations. ER-16.

In reality, there is ample "reason to believe" that Congress intended to preempt emissions regulations—and any other regulations—when

they concern covered appliances' energy use. The plain text of the statute says so. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (The inquiry "begins with the language of the statute itself, and that is also where the inquiry should end, for the statute's language is plain." (cleaned up)). Congress "broadly preempt[ed] any state regulation concerning" covered products' "energy efficiency" or "energy use," subject to carefully defined exceptions. *Cal. Rest.*, 89 F.4th at 1105. None of those exceptions is for emissions regulations. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373-74 (2008). The reason EPCA mentions building codes but not emissions regulations is because Congress chose to include an exception for certain building codes, §6297(f)(3), but not for emissions regulations. *Contra* ER-16.[4]

**4.** What's more, the district court's approach would gut EPCA's preemption provision by making it trivially easy to evade. The crux of the district court's position is that EPCA has nothing to say about emissions regulations even when those regulations ban covered appliances. That is a blueprint for every city and state—including Berkeley—that wants to ban gas-fired appliances. A ban on gas appliances or piping can simply be restated as a ban on $NO_x$ emissions. But as this Court has already explained, broad preemption provisions

---

[4] The statute's structure and amendment history confirm the point. Dkt.14.1 at 37-44.

12

like EPCA are not so easy to evade. *See Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases).

## II. Plaintiffs Face Irreparable Harm While This Appeal Is Pending.

If Rule 1146.2's Phase I zero-$NO_x$ limits are allowed to take effect as scheduled, Plaintiffs will suffer grave and irreparable harm before this appeal can realistically be resolved.

**1.** The District and Intervenors do not dispute that the types of harm at issue are irreparable. For good reason: Established precedent says they are. Plaintiffs have provided evidence of specific harms they will suffer starting January 1, 2026 if the zero-$NO_x$ limits take effect, including lost sales and revenue, lost market share and reputation, loss of customers and goodwill, loss of relationships with contractors and suppliers, business disruptions and burdens, and employee layoffs or lost work hours and opportunities. These types of harm are irreparable. *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (loss of "newfound customers and accompanying goodwill and revenue"); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("loss of opportunity to pursue Plaintiffs' chosen professions" (cleaned up)); *hiQ Labs*, 31 F.4th at 1188 ("threat of being driven out of business" (attribution omitted)); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009) (being "forced to incur large costs" that would "disrupt and change the whole nature of [their] business[es]").

13

The district court nevertheless concluded that Plaintiffs' strongest evidence was of "compensable, economic harm," not irreparable injury. D.Ct.Dkt.92 at 5 n.5. That was error. EPCA does not provide any cause of action for damages against the District, and the district court did not explain how Plaintiffs' injuries could otherwise be quantified or compensated. Because Plaintiffs thus lack an adequate remedy at law, their economic harms are irreparable. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("economic harm for which the [plaintiffs] have no vehicle for recovery" is irreparable).

**2.** Plaintiffs have established that they will suffer specific, concrete harms while this appeal is pending. Even on an expedited schedule, the appeal will not likely be resolved until several months after Phase I takes effect on January 1. Plaintiffs' declarations attest specifically to the harms they will suffer in 2026 as a result of Phase I. *See* Exs.1-7.

Phase I targets gas tankless water heaters and small boilers. Rule 1146.2(d)(2) tbls.2-3. Those are exactly the appliances for which Rinnai and Noritz are market leaders. They are appliances that plumbers and pipefitters install along with gas-related piping. And they are appliances that residential builders and the hotel industry, among others, install and use in homes and commercial buildings. The district court's unexplained assertion that Plaintiffs' harms either will not occur in 2026 or are not attributable to Phase I, D.Ct.Dkt.92 at 5, is contrary to the record.

14

For example, Noritz estimates that it will suffer $4 million in lost revenue in 2026. Ex.1 ¶6. And Rinnai "faces approximately $8.5 million in lost direct sales" in 2026. Ex.2 ¶7. Plumbers and pipefitters attest that gas-related work "is a substantial part of [their] members' work," and so losing that work will lead to lost income and other injuries. Ex.3 ¶10. Likewise, family-owned plumbing businesses whose work is mostly gas-appliance-related will suffer financial hardship and will have to lay off or retrain employees, sell assets, or shift to other lines of business. Ex.4 ¶¶3-7; Ex.5 ¶¶5-8. The residential construction and hotel industries face disruptions to ongoing planning, permitting, and construction, and it will be costly and burdensome to revert to their preferred appliances if they are forced to comply with the ban in the meantime. Ex.6 ¶¶5-7; Ex.7 ¶¶7-10. These harms are concrete, imminent, and anything but speculative.

The district court also ignored Plaintiffs' evidence of less tangible— but no less real—harms. Rinnai and Noritz, for example, will lose customers and goodwill, suffer damage to relationships with distributors and contractors "built over years, if not decades," and lose market share. Ex.1 ¶13; *accord* Ex.2 ¶¶6-7, 11-13. Those injuries cannot easily be undone. Ex.2 ¶¶6-7 (network of distributors, contractors, and builders "cannot be easily rebuilt or converted"). Both companies are leading sellers of gas tankless water heaters—the very appliances Phase I bans. They cannot simply offset losses by selling more heat pumps, a product

15

in which they are not leading sellers and have to compete "with established heat pump suppliers, who are much larger, have established reputations, and have economic advantages." Ex.1 ¶13; Ex.2 ¶12.

Some of these immediate harms will have trailing impacts well into the future. Once a house is permitted or built with electric appliances, it is difficult to install gas appliances, precluding future repair, service, and replacement opportunities. Ex.7 ¶¶7-10; *accord* Ex.1 ¶9 (sales lost now "will translate to additional lost sales for replacement"); Ex.6 ¶7; Ex.4 ¶4. Far from undercutting the present harm, these long-term effects magnify it. That Plaintiffs' evidence also includes future harms is no excuse to ignore the harms they will suffer while this appeal is pending. *Contra* D.Ct.Dkt.92 at 5-6 (cherrypicking a few paragraphs discussing future harm).

Finally, being forced to comply with "conditions which are likely unconstitutional because they are preempted" during the pendency of appeal is an irreparable harm in itself. *See Am. Trucking*, 559 F.3d at 1058-59 ("[C]onstitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm." (attribution omitted)). The district court ignored this point.

16

**3.** The district court's other reasons for finding insufficient evidence of irreparable harm are no better.

First, the district court mistakenly thought that the fact that Plaintiffs are already suffering harm in anticipation of the ban suggested that an injunction would be futile because market anticipation, rather than the rule itself, is driving compliance. D.Ct.Dkt.92 at 6. If that were so, the District should agree to an injunction pending appeal because it would suffer no harm in the meantime. But it is not. Now, consumers and businesses have a choice; once the ban goes into effect, the harm will become a matter of compulsion, not anticipation. The District's rule can and does both have anticipatory effects in the market and do additional damage when it takes effect. For example, construction projects "are now being designed and built without gas service or appliances … in preparation for compliance" on the existing schedule. Ex.3 ¶6; *accord* Ex.1 ¶7. Delaying the effective date of the rule would reduce or delay the need for projects to comply in advance and thus reduce or avoid the harm to Plaintiffs. That some harms have already happened is no reason to allow further irreversible harms to happen.

Next, the district court accepted the view that not seeking a preliminary injunction undercuts any later claim of harm. D.Ct.Dkt.92 at 6. That misses the point of interim relief: All a preliminary injunction could have done was maintain the status quo (*i.e.*, the absence of the zero-$NO_x$ rule) while the district court was deciding the case. But with more

17

than a year to finish the district court litigation—which all parties agreed could be done on dispositive motions without discovery—there was no point wasting the district court's and parties' time seeking interim relief from a ban that would not take effect until January 1. Plaintiffs filed this suit in December 2024, and the court set a schedule that would have resolved it by September 2025 even if a trial were needed. D.Ct.Dkt.40 at 2. As it was, the district court finished its work in July 2025, with five months to spare. ER-6-7. Had Plaintiffs prevailed, their requested permanent injunction would have come well ahead of the zero-$NO_x$ rule's effective date.

Plaintiffs did not seek a preliminary injunction or expedited consideration in the district court because they did not need that relief. The suggestion that parties must seek interim relief pending trial court proceedings even when they do not need it just so they can seek an injunction pending appeal if the need arises would encourage unnecessary and premature motions practice. Parties should not be forced to declare emergencies that do not exist just in case they need expedited treatment or interim relief in the future. Plaintiffs sought expedition and interim relief when—and only when—it became necessary. That says nothing about the nature or gravity of the harm Plaintiffs will suffer while this appeal is pending.

## III. The Balance of Harms Sharply Favors an Injunction.

Plaintiffs have detailed imminent, serious harms that cannot be compensated or unwound if Plaintiffs prevail on appeal. By contrast, the District will suffer no appreciable harm from a short delay in the effective date of the first phase of its rule.

A short delay would not impose any burden or expense on the District. Nor would an injunction constrain any individuals or businesses; anyone who prefers electric appliances would still have that option. And as the District has emphasized, the delay would affect only appliances subject to Phase I and installed in new buildings "during the several months while the appeal is likely to be pending." D.Ct.Dkt.86 at 18. By the District's own calculation, Phase I will be responsible for just 0.3% of its overall emissions reduction target by 2037. *See* D.Ct.Dkt.85-1 at 19 (citing D.Ct.Dkt.53 at 13, 16; D.Ct.Dkt.50-4 at 145 & tbl.4-1). That is a drop in the bucket over the next twelve years, let alone the next several months. So the District's own math underscores that a short delay will not make an appreciable difference for its long-term goals. Besides, the District's claim that it needs the zero-$NO_x$ rule to meet federal standards is undermined by its failure to submit the rule to the EPA for approval and its recent rejection of zero-$NO_x$ rules for other appliances.[5]

---

[5] *Proposed Amended Rules (PAR) 1111 & 1121*, S. Coast Air Quality Mgmt. Dist., https://www.aqmd.gov/home/rules-compliance/rules /scaqmd-rule-book/proposed-rules/rule-1111-and-rule-1121 (last visited Oct. 6, 2025).

Indeed, it is hard to see how the District could be harmed by a temporary delay in enforcing a potentially preempted rule. *Cf. Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1409 (9th Cir. 1984) ("no cognizable state interest in enforcing … laws that are preempted by federal law"); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (similar). Taking the District at its word, it will suffer no harm if the zero-$NO_x$ rule is enjoined pending appeal because market restructuring "will continue in anticipation of the Rule's enforcement … whether or not enforcement is enjoined for some part of a year." D.Ct.Dkt.86 at 22. Perhaps that is why, when it came to balancing the equities, the District abandoned its focus on Phase I's effects during the pendency of the appeal and instead asserted irreparable harm based on the entire rule's decades-long impact. *See* D.Ct.Dkt.86 at 24-25.

Nobody doubts that environmental harm can be irreparable. The question here, though, is how any harm to the District weighs against Plaintiffs' irreparable harm. *See, e.g.*, *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475-76 (9th Cir. 2010) (affirming the district court's finding that countervailing interests outweighed asserted environmental injuries); *see also Winter*, 555 U.S. at 24 ("[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." (cleaned up)). The District has made no argument that its rule will prevent any substantial amount of $NO_x$ emissions while the appeal is pending. Nor could it, given its own

calculations.  And the rule's own timeline, with a year-and-a-half delay for the start of Phase I and longer for the rest, belies any claim that an additional short extension will cause severe harm.[6]

The bottom line is that Phase I would have a minimal effect on the District during Plaintiffs' appeal.  But for the individual companies, employers, and employees in the affected market, the effects will be devastating.  The balance of harms thus tips sharply in Plaintiffs' favor. *See Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 683-84 (9th Cir. 2023) (en banc); *Wild Rockies*, 632 F.3d at 1135; *see also Earth Island*, 626 F.3d at 475 ("Economic harm may indeed be a factor in considering the balance of equitable interests.").

## IV. The Public Interest Favors Preserving the Status Quo.

"Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Christian Athletes*, 82 F.4th at 695 (cleaned up). As just discussed, the balance of harms sharply favors Plaintiffs.  And because there is "no cognizable state interest in enforcing … laws that are preempted by federal law," the public interest lies in staying enforcement of a potentially preempted law until this Court can decide the issue.  *Champion*, 731 F.2d at 1409.  In *American Trucking Ass'ns,*

---

[6] The district court's footnoted and unexplained assertion that the balance of harms favors the District failed to grapple with these significant flaws in the District's argument.  D.Ct.Dkt.92 at 6 n.6.

this Court recognized that "the public interest represented by the" government defendant had to be "balanced against the public interest represented in Congress' decision to deregulate the motor carrier industry, and the Constitution's declaration that federal law is to be supreme." 559 F.3d at 1059-60 (9th Cir. 2009). So too here. EPCA embodies Congress's decision that there should be a uniform national energy policy, including as to appliances' energy use, and the District's zero-$NO_x$ rule undermines that policy.

Interim relief is necessary to protect Congress' purpose, including to preserve the public's ability to choose. Anyone in the District would remain free to use and install electric appliances. And Plaintiffs would retain their right to conduct their businesses and chosen professions without being subject to the burdens and constraints of a preempted rule.

The public interest is thus served by preserving the status quo—that is, by keeping in place the District's longstanding non-zero limits on $NO_x$ emissions, which are still in place today—until this Court can determine whether the District's new zero-$NO_x$ rule is preempted.

## CONCLUSION

For these reasons, this Court should enjoin enforcement of amended Rule 1146.2's zero-$NO_x$ limits while this appeal is pending.

22

Dated: October 6, 2025

Respectfully submitted,

*/s/ Courtland L. Reichman*

Sarah O. Jorgensen
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 W. Peachtree St., Suite 2300
Atlanta, GA 30309

Courtland L. Reichman
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94605
(650) 623-1401
creichman@reichmanjorgensen.com

Brian C. Baran
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K St. NW, Suite 800
Washington, DC 20006

*Counsel for Plaintiffs–Appellants Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

John J. Davis, Jr.
Luke Dowling
MCCRACKEN, STEMERMAN &
  HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200
jjdavis@msh.law

Matthew P. Gelfand
CALIFORNIANS FOR
  HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, CA 90020
(213) 739-8206
matt@caforhomes.org

*Counsel for Plaintiff–Appellant California State Pipe Trades Council*

*Counsel for Plaintiff–Appellant Californians for Homeownership, Inc.*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Plaintiff–Appellant Restaurant Law Center*

23

## CERTIFICATE OF COMPLIANCE

This motion complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Ninth Circuit Rules because it has been prepared using a proportionally spaced typeface and includes 5179 words.

I certify under Circuit Rule 25-5(f) that all parties on whose behalf this motion is submitted concur in its content.

Dated: October 6, 2025       */s/ Courtland L. Reichman*
                                   Courtland L. Reichman

# Exhibit 1

1  Courtland L. Reichman (SBN: 268873)
    creichman@reichmanjorgensen.com
2  Brian C. Baran (SBN: 325939)
    bbaran@reichmanjorgensen.com
3  REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
    100 Marine Parkway, Suite 300
4  Redwood Shores, CA 94065
    Tel.: (650) 623-1401; Fax: (650) 560-3501
5
    *Attorneys for Plaintiffs Rinnai America Corp., Noritz*
6  *America Corp., National Association of Home*
    *Builders, California Manufacturers & Technology*
7  *Association, California Restaurant Association,*
    *California Hotel & Lodging Association, California*
8  *Apartment Association, and Plumbing-Heating-*
    *Cooling Contractors of California*
9
    ADDITIONAL COUNSEL ON FOLLOWING PAGE
10

11  ### UNITED STATES DISTRICT COURT
    ### CENTRAL DISTRICT OF CALIFORNIA
12

13  RINNAI AMERICA CORP., et al.

             Plaintiffs,                                   Civil Action No.
14
                 v.                                        2:24-cv-10482 PA(PDx)
15  SOUTH COAST AIR QUALITY
    MANAGEMENT DISTRICT,                                   **DECLARATION OF JAY**
16                                                         **HASSEL IN SUPPORT OF**
             Defendant,                                    **PLAINTIFFS' MOTION FOR**
17                                                         **INJUNCTION PENDING**
    And                                                    **APPEAL**
18
    PEOPLE'S COLLECTIVE FOR
19  ENVIRONMENTAL JUSTICE, SIERRA
    CLUB, and INDUSTRIOUS LABS,
20
             Defendant-Intervenors.
21

22

23

24

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
  FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-
  3501

Sean Kneafsey
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
  jjdavis@msh.law
MCCRACKEN, STEMERMAN & HOLSBERRY
LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-
  7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
2429

*Attorney for Plaintiff Restaurant Law
Center*

I, Jay Hassel, hereby declare as follows:

1.      I am President at Noritz America Corporation ("Noritz").  Having been in that role since 2017, and in the previous years from 2005 to 2017 having been a Vice President at Noritz, I am personally aware of the specific details of the finances, management, and operations at Noritz. As such, I have personal knowledge of the following facts and, if called to testify, I could and would testify competently to their truth and accuracy.

2.      Noritz is a leading manufacturer and seller of gas instantaneous (tankless) water heaters in the United States. Noritz has its headquarters located in the South Coast Air Quality Management District, specifically, Fountain Valley in Orange County, California. Noritz is a wholly owned subsidiary of Noritz Corporation (Japan). Noritz's product line incorporates condensing and non-condensing instantaneous water heaters and condensing combination gas boilers.  We have also recently sold a small number of integrated hybrid electric heat pump water heaters.  Noritz started doing business in the United States selling gas tankless water heaters in 2002.  Although the market share varies from year to year, Noritz currently sells about 10% of gas tankless water heaters in the United States, and it has significant sales of gas tankless water heaters in California, approximately $35 million.  A majority of those sales are made to customers in the jurisdiction of the South Coast Air Quality Management District.

3.      Noritz is a member of a local affiliate of Plaintiff National Association of Home Builders, a nonprofit corporation that represents the U.S. residential building construction industry.

4.      Noritz is experiencing, or will imminently experience, harm in the form of economic injuries, lost sales, and altered business practices because of the

1

impending ban on its appliances under the District's rule imposing zero-$NO_x$ emission limits on gas fired boilers, water heaters, and process heaters (the "zero-$NO_x$ rule").

5.     Noritz is already suffering several distinct types of harm from the zero-NOx rule.

6.     First, Noritz has already lost sales in the new home market in 2025 and expects further losses leading up to 2026. The new-home market previously comprised up to about half of all sales for Noritz in the District territory. Although gas heaters and boilers have traditionally been installed in up to 80% of new construction in the homebuilding market, the industry is moving exclusively to electric heat pumps, in anticipation of the District's zero-$NO_x$ rule. Consequently, Noritz's sales in the new home market have been virtually eliminated because of the rule. A stay of the rule pending appeal would allow homebuilders who wish to do so to resume making purchases of Noritz products for the new-home market until the validity of the adoption of the rule can determined by the courts. As part of Noritz's sales interactions with the homebuilding industry, Noritz has seen a drastic decrease in sales of its products that are impacted by the provisions of the zero-Nox rule that are set to go into effect on January 1, 2026. Even with significant efforts to make up lost sales with focus on different products or products in different segments that are not prohibited by the rule, sales of such Noritz products have dropped by approximately 10 percent so far in 2025. This dramatic drop translates to approximately $4 million in lost revenue on an annualized basis.

7.     Homebuilding projects have lead-times typically of 6 to 12 months or longer because of the need for planning and permitting approval for both the water heating units, as well as the mechanical and energy systems that interact with the

appliances. Consequently, Noritz has large customers who are already changing purchase decisions for the water heaters they plan to install after the start of 2026. This drastic change in purchasing behavior can be explained only by the impact of the impending zero-NOx rule; there has been no other economic or regulatory change that would impact sales of Noritz's appliances at that time and in that way. Indeed, several builders who are customers for the affected products have stated that when stopping purchases.

8.      The zero-NOx rule has not only caused a decrease in overall sales of products affected directly by the rule, the competition for the remaining customers in the market for products that are not prohibited has intensified among the suppliers such that prices and margins have decreased. For instance, the costs of sales and marketing have increased significantly to achieve those sales in this intensely competitive market. The average rebates Noritz provides to contractors to incentivize sales of tankless water heaters has also markedly increased in recent months. The rule has thus also affected Noritz's sales and marketing expenses, product pricing, and profit margins on both gas tankless water heaters and other products.

9.      Second, the loss of initial sales for the new home market also causes the loss of replacement sales. Typically, a substantial portion of Noritz sales are for replacement of Noritz units that have reached the end of their useful life. For instance, switching to a water heater with a different fuel source, or even a different brand of water heater with the same fuel source, can involve modifications to space or hook ups, such that many homeowners replace an old unit with a similar unit from the same manufacturer. Thus, sales that Noritz is losing now because of the zero-NOx rule also will translate to additional lost sales for replacement of those lost units in future decades.

3

10.     Additionally, as Noritz has its headquarters in California, Noritz may be forced to consider leaving the state if its primary business of tankless water heaters is not allowed to be conducted in the largest existing market for its products. Noritz, headquartered in the very District banning its gas products, must consider closing its facilities and eliminating, or moving out of California all together, its approximately 120 employee positions, 50 of which are located in the District.

11.     Third, the consequences of the zero-$NO_x$ rule are affecting Noritz's long-term investment, manufacturing, marketing, and distribution plans. If Noritz Corporation (Japan) does not pull out of the U.S. market altogether and Noritz continues to supply appliances for the California market, this would be limited to Noritz's integrated hybrid electric heat pump water heaters. Because of the larger size and configuration of heat pump water heaters, Noritz would have to secure new storage facilities that are substantially larger than its current storage facilities, and its transportation and distribution costs would substantially increase.

12.     Because of the size of the California market for the banned products, the business disruption caused by the zero-$NO_x$ rule is, and will be, significant in 2025, 2026, and beyond. Noritz will lose its market share and name recognition, will lose customers, and will lose the associated goodwill.

13.     Currently, most of Noritz's sales in the District are sold through distributors, who in turn resell to installation contractors. Noritz's wholesale distributors would also incur these increased storage, transportation, and distribution costs associated with the larger electric heat pump units. However, because of space limitations, many of the wholesale distributors would instead likely be forced to reduce product lines they offer to fit their current space, such that Noritz would very likely

4

1   face losing sales to those customers or losing those customers altogether. Many of the

2   distributors have long-standing relationships with Noritz that were built over years, if

3   not decades.   Noritz spent millions of dollars to grow its brand and distributor

4   relationships in the District region. Additionally, because Noritz has not previously

5   offered electric heat pumps, if it wanted to remain as a supplier in the California market,

6   it would have to begin competing with established heat pump suppliers, who are much

7   larger, have established reputations, and have economic advantages that Noritz could

8   not overcome.  For these reasons and others, there is a significant likelihood that the

9   zero-$NO_x$ rule could make Noritz's operations in the District and in California

10   commercially unviable such that they would have to cease.

11       14.    If the zero-NOx rule remains in place and goes into effect as currently

12   planned, and the rule is not stayed pending the appeal of the trial court's decision, the

13   economic harm to Noritz will likely be so severe, and irreversible, that Noritz will have

14   no choice but to reduce operations, try to reconfigure its sales and distribution

15   networks, and implement layoffs of workers in 2026.

16       I declare under penalty of perjury under the laws of the United States of America

17   that the above facts are true and correct.

18       Executed on August 26, 2025, in Fountain Valley, California.



Jay Hassel

# Exhibit 2

Courtland L. Reichman (SBN: 268873)
   creichman@reichmanjorgensen.com
Brian C. Baran (SBN: 325939)
   bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiffs Rinnai America Corp., Noritz
America Corp., National Association of Home
Builders, California Manufacturers & Technology
Association, California Restaurant Association,
California Hotel & Lodging Association, California
Apartment Association, and Plumbing-Heating-
Cooling Contractors of California*

ADDITIONAL COUNSEL ON FOLLOWING PAGE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RINNAI AMERICA CORP., et al.

      Plaintiffs,

      v.

SOUTH COAST AIR QUALITY
MANAGEMENT DISTRICT,

      Defendant,

And

PEOPLE'S COLLECTIVE FOR
ENVIRONMENTAL JUSTICE, SIERRA
CLUB, and INDUSTRIOUS LABS,

      Defendant-Intervenors.

Civil Action No.

2:24-cv-10482 PA(PDx)

**DECLARATION OF FRANK
WINDSOR IN SUPPORT OF
PLAINTIFFS' MOTION FOR
INJUNCTION PENDING
APPEAL**

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
   sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
   FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-
   3501

Sean Kneafsey
   skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
   jjdavis@msh.law
MCCRACKEN, STEMERMAN & HOLSBERRY
   LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-
   7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
   matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
   INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
   7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
   aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
   2429

*Attorney for Plaintiff Restaurant Law
Center*

I, Frank Windsor, hereby declare as follows:

1.     I am President of Rinnai America Corporation. I have personal knowledge of the following facts and, if called to testify, I could and would testify competently to their truth and accuracy.

2.     I previously submitted an affidavit in this case, dated April 14, 2025, describing the imminent harm that Rinnai was facing from the South Coast Air Quality Management District's ("District") Rule 1146.2, which imposes zero-NOx limits on gas tankless water heaters and boilers, among other appliances, precluding their sale or installation. I am submitting this affidavit to further detail the harm to Rinnai that will occur if the Rule goes into effect on January 1, 2026 as scheduled.

3.     Rinnai is one of the leading manufacturers and sellers of gas instantaneous (tankless) water heaters in the United States. Rinnai sells roughly 35% of gas tankless water heaters in the United States. Rinnai also sells commercial hybrid tank/tankless water heaters, residential and commercial condensing tankless boilers, residential condensing combination water heaters/boilers, and electric heat pump water heaters.

4.     Rinnai is a member of Plaintiff National Association of Home Builders, a nonprofit corporation that represents the U.S. residential building construction industry. Rinnai is also a member of Plaintiff California Manufacturers & Technology Association, a nonprofit organization that represents the businesses from the manufacturing community.

5.     Rinnai maintains a particularly strong presence in California, and especially within the South Coast Air Quality Management District ("District"), where Rinnai and Noritz are recognized as the two primary leaders in the gas tankless sector.

6.     This leadership is not a matter of chance. Over decades, Rinnai has

carefully designed and executed strategies that address the District's unique market conditions and consumer needs. Beyond building high-quality products, we have invested in developing a robust ecosystem of employees, distributors, contractors, and builders dedicated to gas tankless water heating. That ecosystem is sustained by long-standing relationships, specialized training, and mutual investments of time and resources.

7.    If the District's zero-NOx rule takes effect on January 1, 2026, the consequences will extend far beyond near-term lost sales. It will dismantle the ecosystem we have spent decades building—an ecosystem that cannot be easily rebuilt or converted. From the effective date through the end of 2026, when an appellate decision is reasonably expected, Rinnai alone faces approximately $8.5 million in lost direct sales. These losses are not merely financial entries on a balance sheet; they represent lost opportunities that cannot be recovered and provide only a glimpse into the irreparable harm that will result if this rule is implemented on January 1, 2026.

8.    Indeed, the harm extends well beyond lost sales. Rinnai has made substantial, targeted investments in research and development tailored specifically to the District's existing NOx standards. These investments include dedicated engineering teams, specialized testing equipment, and product innovations created exclusively for low-NOx gas tankless applications. The individuals behind this work are not easily replaced. They represent a highly specialized workforce—engineers, manufacturing teams, and sales professionals—who have devoted their careers to advancing tankless water heating technology.

9.    If sales and production decline as anticipated, Rinnai will be required to adjust its workforce levels.  Such adjustments, including potential layoffs, would risk

2

the loss of valuable expertise and institutional knowledge across sales, production, distribution, or product development—capabilities that are not easily replaced and are critical to Rinnai's long-term competitiveness. Beyond these organizational impacts, such changes would also affect employees who rely on their positions to support their families and maintain financial stability..

10.    Equally damaging is the impending collapse of Rinnai's distribution and service channels. Our wholesale partners, installation contractors, and service providers have spent years developing their businesses or lines of business around gas tankless and boiler products. If forced to abandon these sales beginning January 1, 2026, they will suffer significant losses and some may attempt to pivot toward alternate technologies. But such a pivot is far from simple. Many of these partners already operate on razor-thin margins and are under immense strain from inflation, elevated borrowing costs, and weakening consumer demand. For some, the transition will prove impossible.

11.    The revenues tied to this distribution ecosystem amount to approximately $42,000,000 for Rinnai's distributors and installers for the year 2026. But the impact cannot be measured in dollars alone. Once distributors and contractors exit the market or permanently realign with competitors or with other products, Rinnai will lose not only near-term sales, but also the long-term business relationships that underpin service and replacement opportunities for decades to come. These relationships, once severed, cannot be reconstituted easily, if at all.

12.    If Rule 1146.2 goes into effect on January 1, 2026, Rinnai's loss of customers, goodwill, and market share will be both immediate and structural. By eliminating gas tankless products, while leaving gas storage untouched, the rule

3

effectively transfers our hard-earned share of the water heating market to a small group of dominant competitors that sell both gas storage tanks and electric heat pump water heaters. New construction is likely to increasingly shift toward electric storage (including heat pump)—a market concentrated in the hands of a few major players. Rinnai and Noritz, recognized leaders in gas tankless, hold no comparable position in either of those categories. The outcome is a forced reallocation of market share away from our core technology into sectors where we do not hold a strong competitive position.

13.     This shift not only harms our company, it undermines the District's own stated policy objectives. For decades, gas tankless technology has steadily displaced gas storage, offering consumers and builders easier installation, higher efficiency, longer product life, and lower emissions. Halting that trajectory reverses years of adoption of more efficient solutions and threatens to nullify the very environmental benefits Rule 1146.2 claims to promote.

14.     Finally, the reputational and strategic harm cannot be overstated. For decades, Rinnai has earned the trust of contractors, builders, and consumers by positioning itself as a leader in tankless innovation through years of deliberate investment and effort. If our products are abruptly banned, our visibility and presence in one of the nation's largest and most influential markets will virtually disappear overnight.

15.     Beyond lost sales and distribution revenues, Rinnai stands to lose the benefits of approximately $1,500,000 in assets and marketing investments made specifically for this region if the rule is not stayed.

16.     These losses are neither speculative nor recoverable. They represent the

4

permanent erosion of market share, the collapse of customer trust, the loss of highly trained and skilled employees, and the undoing of decades of progress. For these reasons, unless enforcement of Rule 1146.2 is stayed pending appeal, the harm to Rinnai and the networks it supports will be permanent and devastating.

17.     Because of the size of the District's market for the banned products and the overall significance of the California market, the business losses and disruption caused by the zero-$NO_x$ rule will be significant and lasting.

I declare under penalty of perjury under the laws of the United States of America that the above facts are true and correct.

Executed on August 27, 2025 in Peachtree City, Georgia.


_____
Frank Windsor

5

# Exhibit 3

Courtland L. Reichman (SBN: 268873)
  creichman@reichmanjorgensen.com
Brian C. Baran (SBN: 325939)
  bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiffs Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

ADDITIONAL COUNSEL ON FOLLOWING PAGE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINNAI AMERICA CORP., et al. | Case No. 2:24-cv-10482 PA(PDx) |
| Plaintiffs, | |
| | Hon. Percy Anderson |
| v. | |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, | **DECLARATION OF JOE RAYMOND IN SUPPORT OF PLAINTIFFS'-APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL** |
| Defendant, | |
| And | |
| PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and INDUSTRIOUS LABS, | Hearing date:  Not scheduled <br> Hearing time:  Not scheduled <br> Hearing place: 350 West First Street <br> Courtroom:      9A |
| Defendant-Intervenors. | |
| _____/ | |

**1**
**Decl. of Joe Raymond iso Mot. for Injunction Pending Appeal Case No. 2:24-cv-10482 PA(PDx)**

1

2

ADDITIONAL COUNSEL

3  Sarah O. Jorgensen (*pro hac vice*
4    forthcoming)
    sjorgensen@reichmanjorgensen.com
5  REICHMAN JORGENSEN LEHMAN &
6    FELDBERG LLP
7  1201 West Peachtree St., Suite 2300
   Atlanta, GA 30309
8  Tel.: (650) 623-1403; Fax: (650) 560-3501

9

10 Sean Kneafsey
     skneafsey@kneafseyfirm.com
11 THE KNEAFSEY FIRM, INC.
12 707 Wilshire Blvd., Suite 3700
   Los Angeles, CA 90017
13 Tel.: (213) 892-1200; Fax: 213-892-1208

14

15 *Attorneys for Plaintiffs Rinnai America
   Corp., Noritz America Corp., National
16 Association of Home Builders, California
   Manufacturers & Technology Association,
17 California Restaurant Association,
18 California Hotel & Lodging Association,
   California Apartment Association, and
19 Plumbing-Heating-Cooling Contractors of
   California*
20

21 John J. Davis, Jr. (SBN 65594)
22   jjdavis@msh.law
   MCCRACKEN, STEMERMAN & HOLSBERRY
23 LLP
24 475 – 14th Street, Suite 1200
   Oakland, CA 94612
25 Tel.: (415) 597-7200; Fax: (415) 597-7201

26
27 *Attorneys for Plaintiff California State
   Pipe Trades Council*
28

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*
forthcoming)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
2429

*Attorney for Plaintiff Restaurant Law
Center*

**Decl. of Joe Raymond iso Mot. for Injunction Pending Appeal Case No. 2:24-cv-10482 PA(PDx)**

I, Joe Raymond, declare:

1.      I am the Business Manager of Plumbers and Pipefitters Local Union No. 364.  Local 364 represents plumbers, pipefitters, refrigeration fitters and HVAC technicians in San Bernardino and Riverside Counties of California.

2.      Local 364 is a chartered affiliate of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO CLC.  Local 364 is also an affiliate of the California State Pipe Trades Council, a statewide organization, and Pipe Trades District Council No. 16, which includes thirteen Local Unions that represent more than 10,000 Union members in southern California who work throughout the jurisdiction of the South Coast Air Quality Management District.

3.      Local 364 represents approximately 800 plumbers, pipefitters, steamfitters, welders, refrigeration fitters, and HVAC technicians working in Riverside and San Bernardino counties, which lie within the territory of the South Coast AQMD.  Local 364's principal office is in Colton, California.

4.      Our District Council, Local Unions, signatory contractors, and Joint Apprenticeship and Training Committees spend tens of millions of dollars annually in training apprentices and educating our members in work skills, plumbing codes, jobsite hazards, safety practices, theory, and certification of all installations.  Our mission is to educate, train, and represent highly skilled journey workers and apprentices; to support the working conditions and environment of our members; and to protect the health of California residents by providing quality plumbing and pipe fitting services.

5.      The South Coast Air Quality Management District's rule imposing zero-$NO_x$ emission limits on natural gas boilers, water heaters, and process heaters (the "zero-$NO_x$ rule") is causing and will continue to cause serious harm to the Council, our District Council, our Local Unions, and the workers we represent.

6.      Union plumbers and pipefitters are losing work and wages as a result of the zero-$NO_x$ rule.  Members have already lost work and wages because residential

1    construction projects traditionally built with natural gas service for gas-fired heating and
2    appliances are now being designed and built without gas service or appliances, and often
3    without gas infrastructure at all, in preparation for compliance with the District's zero-
4    $NO_x$ rule.  With the gas plumbing work reduced or eliminated from many building
5    projects, the projects will involve substantially less plumbing work and will employ
6    fewer plumbers. The loss of work on gas infrastructure will cost many of our members
7    their jobs, reduce the need for their services, result in lower hours worked and wages
8    earned by members, and impair our training programs.  These harms will only be
9    exacerbated once the zero-$NO_x$ rule goes into effect.

10       7.      For example, one of our members is a superintendent for a signatory
11   contractor that does plumbing work on new single- and multi-family home construction.
12   He tells me that because of the new AQMD zero-$NO_x$ rule, over the past year or so
13   developers have started specifying electric heat pumps for the HVAC systems instead of
14   the traditional gas-fired units they have specified in the past.  The cost of heat pumps is
15   higher and the efficiency is lower than with gas-fired units, and the change is a huge blow
16   to our members in lost work and wages.

17       8.      For another example, one of our signatory plumbing contractors has a
18   subcontract on the construction of student housing with 600-plus apartments for U.C.
19   Riverside.  Traditionally, such apartments have been built with gas service for gas-fired
20   kitchen stoves.  Our contractors and members have traditionally installed the gas-service
21   piping and gas-fired stoves, and this work on a job like the U.C. Riverside apartments
22   would have provided about 25,000 hours of work for our members.  But the U.C.
23   Riverside project calls for electric stoves, so our members have lost that work and the
24   wages it would have produced.

25       9.      Moreover, gas service would have provided a greater benefit to U.C. and its
26   student-housing residents, because gas is much cheaper to use than electricity.

27       10.     Since April of this year, the situation has continued to deteriorate.  Owners
28   and developers are designing their projects in anticipation of zero-$NO_x$ requirements even

before the District's rule actually takes effect. Looking at work coming up in late 2025 and into 2026, residential projects are continuing to specify electric heat pumps and appliances instead of gas-fired boilers, water heaters and appliances. Gas plumbing and the installation of gas-fired equipment is a substantial part of our members' work, so this trend will continue to take work away from our Union's members. As this work dries up, our members will suffer greater losses of income and difficulty supporting their families. These losses mean not only lost wages, but also difficulty obtaining the work hours needed to qualify for health-and-welfare (i.e., medical) benefits and to fund their retirement benefits. In many instances the consequences will not be repairable.

I declare under penalty of perjury that the above facts are true and correct.

Executed on August 27, 2025, at Colton, California.

_____
Joe Raymond

# Exhibit 4

Courtland L. Reichman (SBN: 268873)
    creichman@reichmanjorgensen.com
Brian C. Baran (SBN: 325939)
    bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiffs Rinnai America Corp., Noritz
America Corp., National Association of Home
Builders, California Manufacturers & Technology
Association, California Restaurant Association,
California Hotel & Lodging Association, California
Apartment Association, and Plumbing-Heating-
Cooling Contractors of California*

ADDITIONAL COUNSEL ON FOLLOWING PAGE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINNAI AMERICA CORP., et al.<br><br>        Plaintiffs,<br><br>        v.<br><br>SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,<br><br>        Defendant,<br><br>and<br><br>PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and INDUSTRIOUS LABS,<br><br>        Defendant-Intervenors. | Civil Action No.<br><br>2:24-cv-10482 PA(PDx)<br><br>**DECLARATION OF MIKE PRENCAVAGE JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**<br><br>Honorable Percy Anderson<br>United States District Judge |

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
   sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
   FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-
   3501

Sean Kneafsey
   skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
   jjdavis@msh.law
MCCRACKEN, STEMERMAN & HOLSBERRY
LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-
7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
   matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
   aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
2429

*Attorney for Plaintiff Restaurant Law
Center*

I, Mike Prencavage Jr., hereby declare as follows:

1.      I am the owner of The Family Plumber.  We are a member of the Plaintiff California chapter of the Plumbing-Heating-Cooling Contractors Association, and we operate in the jurisdiction of the South Coast Air Quality Management District.  I have personal knowledge of the following facts and, if called to testify, I could and would testify competently to their truth and accuracy.

2.      I submit this declaration in support of Plaintiffs' Motion for Injunction Pending Appeal.

3.      We are a multi-generational, family-owned company.  For over 39 years, our company has specialized in providing top quality plumbing services for residential clients in and throughout Los Angeles and Orange County. Roughly 70% of our total company revenue derives from services we provide in the category of residential gas appliance repair, replacement, and installation.

4.      Once the District's zero-NOx rule comes into effect at the start of 2026, all new constructions will be built without the covered gas appliances (tankless water heaters, large tank water heaters, and boilers) or even without any gas infrastructure at all.  If the Rule is not enjoined and residential and commercial buildings across Los Angeles and Orange County are built in this manner over the next 12 to 18 months, the resulting damage to our company will be irreparable.  Once built without those gas appliances or as allelectric developments, there will be no opportunities for service, repair or replacement for our company.  That segment of the market will effectively be foreclosed to us.  The exclusion of our business ultimately means we will lose roughly 60-70% of our overall business revenue, and lose the repair side of our business altogether.

1

5.      In addition, if the Rule goes into effect, our business will need to take steps immediately to try to pivot to other lines of business in order to survive.  Our working capital will be depleted even further because we will be forced to spend large sums of capital on formal training for our technicians on non-gas products.  We will also have to make decisions about product and business lines that affect our suppliers, the equipment and assets we invest in, and our relationships with customers and builders.

6.      The District's assumption that its rule can move forward without running small concerns like ours out of business is unfounded and incorrect.

7.      Forcefully removing the opportunity for a free and fair market in the gas appliance sector negatively impacts affordability of installation, overall household ownership costs, and customer choice.  We already exist in a volatile industry where competing companies are often un-licensed.  The District's gas appliance ban will result in fewer reliable and licensed businesses providing installation, repair, and replacement services for appliances.

I declare under penalty of perjury under the laws of the United States of America that the above facts are true and correct.

Executed on August 27, 2025, in Los Alamitos, California.


Mike Prencavage Jr.

2

# Exhibit 5

Courtland L. Reichman (SBN: 268873)
  creichman@reichmanjorgensen.com
Brian C. Baran (SBN: 325939)
  bbaran@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel.: (650) 623-1401; Fax: (650) 560-3501

*Attorneys for Plaintiffs Rinnai America Corp., Noritz
America Corp., National Association of Home
Builders, California Manufacturers & Technology
Association, California Restaurant Association,
California Hotel & Lodging Association, California
Apartment Association, and Plumbing-Heating-
Cooling Contractors of California*

ADDITIONAL COUNSEL ON FOLLOWING PAGE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RINNAI AMERICA CORP., et al.<br><br>        Plaintiffs,<br><br>        v.<br><br>SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,<br><br>        Defendant,<br><br>And<br><br>PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, SIERRA CLUB, and INDUSTRIOUS LABS,<br><br>        Defendant-Intervenors. | Civil Action No.<br><br>2:24-cv-10482 PA(PDx)<br><br>**DECLARATION OF WHITNEY SQUIRE IN SUPPORT OF PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**<br><br>Honorable Percy Anderson<br>United States District Judge |

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
  FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-
  3501

Sean Kneafsey
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
  jjdavis@msh.law
MCCRACKEN, STEMERMAN & HOLSBERRY
LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-
7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
2429

*Attorney for Plaintiff Restaurant Law
Center*

I, Whitney Squire, hereby declare as follows:

1.      I am Chief Executive Officer of the Plumbing-Heating-Cooling Contractors Association of California.  I have personal knowledge of the following facts and, if called to testify, I could and would testify competently to their truth and accuracy. I previously filed a declaration dated April 11, 2025.

2.      I submit this declaration in support of Plaintiffs' Motion for Injunction Pending Appeal.

3.      The Plumbing-Heating-Cooling Contractors Association is the nation's oldest trade association, founded in 1883 by plumbing craftsmen seeking to distinguish themselves as experts and share best practices to improve the industry and protect the health and safety of the public. The Plumbing-Heating-Cooling Contractors of California chapter was founded in 1900, and for the past 125 years has been instrumental in training the workforce, elevating the industry, and connecting plumbing-heating-cooling professionals.

4.      Plumbing-Heating-Cooling Contractors of California is a 501(c)(6) nonprofit California corporation with its headquarters in Sacramento, California.  Our motto is "Best People. Best Practices", and we represent contractors ranging from single truck owner / operators to large commercial contractors, all committed to furthering our mission statement: The Plumbing-Heating-Cooling Contractors Association is dedicated to the advancement and education of the plumbing and HVACR industry for the health, safety, and comfort of society and the protection of the environment.

5. Plumbing-Heating-Cooling Contractors of California has members doing business in the jurisdiction of the South Coast Air Quality Management District, including The Family Plumber, which is submitting its separate declaration in support of Plaintiffs' Motion for Injunction Pending Appeal. Our members are suffering or will imminently suffer harm to their revenues and business operations as a result of the District's rule imposing impending zero-$NO_x$ emission limits on natural gas boilers, water heaters, and process heaters (the "zero-$NO_x$ rule"). If the rule goes into effect on January 1, 2026, it will bar the sale or installation of any gas tankless water heaters and gas boilers or process heaters less than 400,000 Btu/hr.

6. As our member The Family Plumber explains in its declaration, when the impending zero-$NO_x$ rule goes into effect on January 1, 2026, all new constructions will be built without the covered gas appliances, or even without any gas infrastructure at all. If the Rule is not enjoined and residential and commercial buildings across Los Angeles and Orange County are built in this manner over the next 12 to 18 months, the resulting damage to members including The Family Plumber will be irreparable. This is because, once built without those gas appliances or as all-electric developments, there will be no opportunities for service, repair or replacement, meaning that segment of the market will effectively be foreclosed to our members. In the case of The Family Plumber, the exclusion of its business ultimately means it will lose roughly 60-70% of its overall business revenue, and lose the repair side of its business altogether.

2

7.     In addition, if the zero-$NO_x$ rule goes into effect, members such as The Family Plumber will need to take steps immediately to try to pivot to other lines of business in order to survive.  Their working capital will be depleted even further because they will be forced to spend large sums of capital on formal training for their technicians on non-gas products, which require a substantial level of training and expertise, and are more difficult and time-consuming to repair and service.  They will also have to make decisions about product and business lines that affect their suppliers, the equipment and assets they invest in, and their relationships with customers and builders.

8.     Other member companies are affected similarly, whether small family businesses or larger contractors.  Given the significant size of the District, such loss of work and revenue, business disruption, and compliance costs will be felt irreparably and tremendously, particularly for smaller companies.

I declare under penalty of perjury under the laws of the United States of America that the above facts are true and correct.

Executed on August 27th, 2025, in Sacramento, California.

3

Whitney Squire

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 6

1  Courtland L. Reichman (SBN: 268873)
     creichman@reichmanjorgensen.com
2  Brian C. Baran (SBN: 325939)
     bbaran@reichmanjorgensen.com
3  REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
   100 Marine Parkway, Suite 300
4  Redwood Shores, CA 94065
   Tel.: (650) 623-1401; Fax: (650) 560-3501

5
   *Attorneys for Plaintiffs Rinnai America Corp., Noritz*
6  *America Corp., National Association of Home*
   *Builders, California Manufacturers & Technology*
7  *Association, California Restaurant Association,*
   *California Hotel & Lodging Association, California*
8  *Apartment Association, and Plumbing-Heating-*
   *Cooling Contractors of California*

9
   ADDITIONAL COUNSEL ON FOLLOWING PAGE
10

11            **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**

12
   RINNAI AMERICA CORP., et al.
13
              Plaintiffs,                    |  Civil Action No.
14
              v.                             |  2:24-cv-10482 PA(PDx)
15
   SOUTH COAST AIR QUALITY
   MANAGEMENT DISTRICT,                      |  **DECLARATION OF LYNN**
16                                           |  **MOHRFELD IN SUPPORT OF**
              Defendant,                     |  **PLAINTIFFS' MOTION FOR**
17                                           |  **INJUNCTION PENDING**
   And                                       |  **APPEAL**
18
   PEOPLE'S COLLECTIVE FOR
   ENVIRONMENTAL JUSTICE, SIERRA
19 CLUB, and INDUSTRIOUS LABS,

20            Defendant-Intervenors.

21

22

23

24

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
  FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-
  3501

Sean Kneafsey
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
  jjdavis@msh.law
MCCRACKEN, STEMERMAN & HOLSBERRY
LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-
7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
2429

*Attorney for Plaintiff Restaurant Law
Center*

I, Lynn Mohrfeld, hereby declare as follows:

1.     I am President and Chief Executive Officer at the California Hotel & Lodging Association. I have personal knowledge of the following facts and, if called to testify, I could and would testify competently to their truth and accuracy.   I previously filed a declaration dated April 10, 2025 in this case.

2.     The California Hotel & Lodging Association is a § 501(c)(6) nonprofit California corporation with its headquarters in Sacramento, California. We are the largest state lodging industry association in the country, representing more than 3,000 hotel owners and operators who directly and indirectly facilitate more than $150.4 billion in travel-related spending across the state annually. California's hospitality industry is a diverse cross-section of the state and includes independent owner-operators, family businesspeople, first- and second-generation immigrant entrepreneurs, large-scale operators, and many more. We regularly represent our members' interests in governmental advocacy as well as legal affairs, and provide our membership with educational and operational resources relevant to all aspects of California's hotel and lodging industry.

3.     We have members that do business in the jurisdiction of the South Coast Air Quality Management District and are suffering or will imminently suffer harm to their revenues and business operations as a result of the District's rule imposing impending zero-$NO_x$ emission limits on natural gas boilers, water heaters, and process heaters (the "zero-$NO_x$ rule").  If the Rule goes into effect on January 1, 2026, it will bar the sale or installation of any gas tankless water heaters and gas boilers or process heaters less than 400,000 Btu/hr.  Our members use these types of appliances in their buildings, and the ban on buying or installing these appliances will harm our members,

1

1    who rely on gas as an affordable, reliable energy source for their buildings and
2    operations.

3        4.    A recent hotel development survey by the Atlas Hospitality Group shows
4    that in 2025, there are 41 hotels under construction in the counties of Los Angeles (20),
5    Orange (1), Riverside (9), and San Bernandino (11).  And there are 431 hotels in
6    planning in the counties of Los Angeles (195), Orange (67), Riverside (124), and San
7    Bernandino (45).  Many of these planned and under-construction hotels are subject to
8    the jurisdiction of the District and will still be under construction, just starting
9    construction, or applying for building permits in 2026.

10        5.    When the impending zero-$NO_x$ rule goes into effect on January 1, 2026,
11    owners and developers who have hotels in the planning and permitting stages, just
12    beginning construction, or mid-construction—including members of CHLA—will not
13    be able to buy or install gas tankless water heaters or large tank water heaters, gas
14    boilers and process heaters less than 400,000 Btu/hr.  For hotels and lodging already
15    under construction, this could pose a huge dilemma; they could be forced to change
16    plans midstream, and there may already be infrastructure in place that can no longer be
17    used.  And for hotels and lodging in the permitting process or just beginning
18    construction, they may be forced to go all electric due to the ban or at the least to have
19    some gas appliances changed to electric.  CHLA has a member that is planning to build
20    5 hotels in the counties covered by the SCAQMD's Rule with anticipated completion
21    of construction in mid-2027 (3 hotels) and mid-2028 (2 hotels).  Those hotels are
22    currently in the planning and permitting process and will be impacted by the Rule in
23    deciding what infrastructure and appliances can be included.

24        6.    Having to use electric heat pumps and appliances for hotels and lodging

1   is challenging.  Heat pumps require much more space, for starters.  They are more
2   expensive to buy and install.  And because electricity is roughly four times more
3   expensive than gas, it is likely to raise operating costs for hotels, which often operate
4   on thin margins and in challenging economic conditions.  It will also affect the hotel's
5   ability to offer amenities, because without gas piping, it becomes difficult to operate
6   heated pools and spas and to have fireplaces or firepits.  Being forced to build new
7   hotels without gas tankless water heaters and gas boilers and process heaters will cause
8   cost pressures and revenue impacts, impose operating and compliance burdens, and
9   create difficult financial tradeoffs that may make all electric hotels less valued than
10  multi-fuel hotels.

11      7.      These harms are not easy to quantify in monetary terms, nor will they be
12  easy to reverse—once designed permitted, or built without the covered gas appliances
13  or without gas infrastructure, a hotel is highly unlikely to spend the money, time, and
14  disruption to revert to gas.   Thus, if the Rule is subsequently found to be preempted, it
15  will not be easy to pivot back to gas appliances or infrastructure or to a multi-fuel
16  building.  That could require amending permits, changing design and specifications,
17  relocating infrastructure or appliances, modifying venting or piping, and engaging new
18  subcontractors.   This will require additional expense, administrative burden, and
19  potential construction delays.

20      8.      Absent an injunction during the pendency of the appeal, CHLA and its
21  members will be seriously and irreversibly harmed by the District's Rule.

22

23

24

3

1    I declare under penalty of perjury under the laws of the United States of America

2    that the above facts are true and correct.

3        Executed on August 25, 2025, in San Diego, CA.

4

5                                              _____

6                                              Lynn Mohrfeld

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4

# Exhibit 7

1  Courtland L. Reichman (SBN: 268873)
   creichman@reichmanjorgensen.com
2  Brian C. Baran (SBN: 325939)
   bbaran@reichmanjorgensen.com
3  REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
   100 Marine Parkway, Suite 300
4  Redwood Shores, CA 94065
   Tel.: (650) 623-1401; Fax: (650) 560-3501

5

6  *Attorneys for Plaintiffs Rinnai America Corp., Noritz*
   *America Corp., National Association of Home*
   *Builders, California Manufacturers & Technology*
7  *Association, California Restaurant Association,*
   *California Hotel & Lodging Association, California*
8  *Apartment Association, and Plumbing-Heating-*
   *Cooling Contractors of California*

9  ADDITIONAL COUNSEL ON FOLLOWING PAGE

10

11  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**

12

13  RINNAI AMERICA CORP., et al.

      Plaintiffs,

14        v.

15  SOUTH COAST AIR QUALITY
   MANAGEMENT DISTRICT,

16        Defendant,

17  And

18  PEOPLE'S COLLECTIVE FOR
   ENVIRONMENTAL JUSTICE, SIERRA
19  CLUB, and INDUSTRIOUS LABS,

20        Defendant-Intervenors.

21

Civil Action No.

2:24-cv-10482 PA(PDx)

**DECLARATION OF THOMAS
J. WARD IN SUPPORT OF
PLAINTIFFS' MOTION FOR
INJUNCTION PENDING
APPEAL**

22

23

24

ADDITIONAL COUNSEL

Sarah O. Jorgensen (*pro hac vice*)
  sjorgensen@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
  FELDBERG LLP
1201 West Peachtree St., Suite 2300
Atlanta, GA 30309
Tel.: (650) 623-1403; Fax: (650) 560-
  3501

Sean Kneafsey
  skneafsey@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, CA 90017
Tel.: (213) 892-1200; Fax: 213-892-1208

*Attorneys for Plaintiffs Rinnai America
Corp., Noritz America Corp., National
Association of Home Builders, California
Manufacturers & Technology Association,
California Restaurant Association,
California Hotel & Lodging Association,
California Apartment Association, and
Plumbing-Heating-Cooling Contractors of
California*

John J. Davis, Jr. (SBN 65594)
  jjdavis@msh.law
MCCRACKEN, STEMERMAN & HOLSBERRY
LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
Tel.: (415) 597-7200; Fax: (415) 597-
  7201

*Attorneys for Plaintiff California State
Pipe Trades Council*

Matthew P. Gelfand (SBN 297910)
  matt@caforhomes.org
CALIFORNIANS FOR HOMEOWNERSHIP,
INC.
525 S. Virgil Ave.
Los Angeles, California 90020
Tel.: (213) 739-8206; Fax: (213) 480-
7724

*Attorney for Plaintiff Californians for
Homeownership, Inc.*

Angelo I. Amador (*pro hac vice*)
  aamador@restaurant.org
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
Tel.: (202) 331-5913 Fax: (202) 331-
2429

*Attorney for Plaintiff Restaurant Law
Center*

I, Thomas J. Ward, hereby declare as follows:

1.      I am the Vice President of Legal Advocacy at the National Association of Home Builders of the United States (hereinafter, the National Association of Home Builders or NAHB).  I have personal knowledge of the following facts and, if called to testify, I could and would testify competently to their truth and accuracy.

2.      The National Association of Home Builders is a nonprofit corporation organized under the laws of Nevada with its principal office in Washington, D.C.  It represents the U.S. residential building construction industry and has approximately 140,000 members across all fifty states.  About one-third of our members are home builders and remodelers, both single family and multifamily.  The rest work in closely related specialties such as sales and marketing, housing finance, manufacturing, and building materials supply.

3.      The National Association of Home Builders is affiliated with eleven local organizations in California, including the California Building Industry Association.  Both the National Association of Home Builders and its local organizations have members, including Plaintiff Rinnai America Corporation, that are located in or conduct business and operations in the jurisdiction of the South Coast Air Quality Management District.

4.      Our mission is to protect and provide housing opportunities for the American public while promoting the business interests of its members.

5.      Starting on January 1, 2026, the South Coast Air Quality Management District's rule imposing zero-$NO_x$ emission limits on natural gas boilers, water heaters, and process heaters (the "zero-NOx rule") will prohibit the use of gas tankless water heaters that use less than 200,000 Btu/hr and any Boiler, Water Heater, or Process

1

1   Heater that uses less than 400,000 Btu per hour in new buildings.

2       6.    The National Association of Home Builders has one or more members

3   that do business in the District and are suffering harm now and will suffer further harm

4   to their revenues, business operations, and compliance burdens once the South Coast

5   Air Quality Management District's zero-NOx rule goes into effect.

6       7.    NAHB estimates that it takes between 7 and 13 months to build a single-

7   family home.  In the Pacific Region, the average time to complete a new single-family

8   home is approximately 11.9 months after authorization.  Multifamily projects take

9   longer to build.  NAHB estimates that a 20-unit project takes 19.9 months to build after

10  obtaining authorization.

11      8.    Due to lead times and because certain aspects of the zero NOx rule take

12  effect in January 2026, builders must already comply with the rule's requirements.

13  This compels builders to now make irrevocable decisions on which appliances and

14  HVAC equipment to install.

15      9.    NAHB also has members that manufacture and sell the equipment that the

16  zero NOx rule prohibits the use of beginning in January 2026.

17      10.    Those members operating in the District report lost sales in 2025 and

18  expect further losses in 2026 due to the zero NOx rule.  Moreover, once new homes

19  are constructed without the appliances prohibited by the zero NOx rule, manufacturers

20  generally lose the opportunity to supply those homes with their appliances in the future.

21  Gas fired appliances have specific venting and condensation requirements that are

22  difficult to install if a new home is designed and constructed for electric appliances.

23      11.    The zero NOx rule also impacts NAHB's members clients who wish to,

24  but cannot, use gas-fired tankless water heaters.  Those clients are forced to install

electric tankless water heaters.  According to U.S. Energy Information Administration the average California residential electricity rate is 35.03 ¢/kWh which is 100% more than the national average.  The U.S. Energy Information Administration reports that average cost of natural gas in California is only 9.5% above the national average.

I declare under penalty of perjury under the laws of the United States of America that the above facts are true and correct.

Executed on August 27th, 2025, in Sterling, VA.

_____

Thomas J. Ward