Docket No. 25-5129

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

RINNAI AMERICA CORPORATION et al.
Plaintiffs-Appellants,

vs.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
Defendant-Appellee,

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE et al.,
Intervenor-Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Case No. 2:24-cv-10482-PA-PD

## APPELLEE'S OPPOSITION TO MOTION FOR INJUNCTION
## PENDING APPEAL

Bayron T. Gilchrist
General Counsel
Barbara Baird
Chief Deputy District Counsel
South Coast Air Quality Management District
21865 Copley Drive
Diamond Bar, California 91765
Telephone: (909) 396-3400
Facsimile: (909) 396-2961

Matthew D. Zinn
Lauren M. Tarpey
Ryan K. Gallagher
Shute, Mihaly & Weinberger LLP
396 Hayes Street
San Francisco, California 94102
Telephone: (415) 552-7272
Facsimile: (415) 552-5816

Attorneys for Defendant-Appellee
South Coast Air Quality Management District

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

INTRODUCTION................................................................................ 4

BACKGROUND ................................................................................ 6

LEGAL STANDARD ......................................................................... 8

ARGUMENT .................................................................................... 9

    I.    Because EPCA does not preempt the Rule, Plaintiffs have not raised a serious question going to the merits. .......... 9

    II.    As the district court correctly found, Plaintiffs have not shown that they will suffer irreparable harm. ..................... 12

        A.    Plaintiffs have not alleged that enforcement of Phase I of the Rule is likely to cause them concrete harm during the appeal................................. 13

        B.    Temporarily enjoining enforcement of the Rule would not prevent Plaintiffs' alleged harms............... 17

        C.    Plaintiffs' delay in bringing this motion undercuts their claims of irreparable harm. ................................. 19

    III.    As the district court recognized, the balance of the equities and public interest weigh heavily against granting an injunction. ......................................................20

CONCLUSION ................................................................................23

i

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................... 15, 23

*Am. Fed'n of Gov't Emps. v. Trump*,
    139 F. 4th 1020 (9th Cir. 2025) ................................................. 8, 21

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ................................................. 13, 17

*Baird v. Bonta*,
    81 F.4th 1036 (9th Cir. 2023) ......................................................... 12

*Beame v. Friends of the Earth*,
    434 U.S. 1310 (1977) ......................................................................... 22

*California Restaurant Ass'n v. City of Berkeley*,
    89 F.4th 1094 (9th Cir. 2024) ...................................... 4, 9, 10, 11, 12

*Comm. for a Better Arvin v. EPA*,
    786 F.3d 1169 (9th Cir. 2015) ........................................................ 21

*Doe v. San Diego Unified Sch. Dist.*,
    19 F.4th 1173 (9th Cir. 2021) ........................................... 9, 10, 20, 22

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ......................................................... 19

*Gilder v. PGA Tour, Inc.*,
    936 F.2d 417 (9th Cir. 1991) ......................................................... 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ......................................................... 17

*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) ......................................................... 17

*Oakland Tribune, Inc. v. Chronicle Publ'ing Co.*,
762 F.2d 1374 (9th Cir. 1985) ....................................................... 19

*Pac. Merch. Shipping Ass'n v. Goldstene,*
639 F.3d 1154 (9th Cir. 2011) ....................................................... 11

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs,*
472 F.3d 1097 (9th Cir. 2006) ...................................................... 23

*Tandon v. Newsom,*
992 F.3d 916 (9th Cir. 2021) ......................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................................... 8, 10, 12, 20

## FEDERAL STATUTES

42 U.S.C. § 6297 ......................................................................... 10

## SOUTH COAST AQMD RULES & REGULATIONS

Rule 1121......................................................................................... 6

Rule 1146.2................................................................................... 4, 6

iii

## INTRODUCTION

Plaintiffs seek extraordinary relief. Having lost on the merits below, they ask this Court to enjoin pending appeal Rule 1146.2—an air quality regulation that will require zero-NOx emissions from some appliances installed in new buildings beginning January 1, 2026. But Plaintiffs cannot satisfy the stringent requirements for this "drastic and extraordinary remedy."

First, Plaintiffs face steep odds on the merits. The district court correctly granted summary judgment to Defendant South Coast Air Quality Management District on Plaintiffs' preemption claim under the Energy Policy and Conservation Act ("EPCA"). EPCA preempts only regulations "concerning energy use," not regulations targeting air pollution. Unlike the ordinance in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024) ("*CRA*"), which banned gas piping and thereby set energy use at zero, the District's Rule requires that covered appliances not emit harmful nitrogen oxide ("NOx") pollution and says nothing about how much energy they may use. Plaintiffs' theory would call into question decades of state and local emission standards that Congress has never suggested it intended to preempt—standards that states adopt to fulfill their obligations under the Clean Air Act ("CAA"). Plaintiffs struggle to demonstrate even "serious questions" on the merits.

Second, Plaintiffs fail to establish irreparable harm. Phase I of the Rule affects only a narrow slice of the market: specific appliances installed in newly constructed buildings. And their desired injunction would cover an even narrower slice: the few months in which this

4

expedited appeal will be pending. Yet Plaintiffs invoke harms from later phases that will not take effect for years—many not until 2029 or later. They cite impacts to products the Rule doesn't regulate, including gas stoves and piping. But most significantly, Plaintiffs acknowledge the market has already begun transitioning in *anticipation* of the Rule's eventual enforcement, which undermines their claim that a temporary injunction would prevent harm. Indeed, Plaintiffs have presented no evidence that any market participants would change their behavior based on their requested injunction. The district court thus properly found these assertions insufficient to establish irreparable injury.

Third, the balance of equities strongly favors the District. The South Coast Air Basin experiences the worst ozone pollution in the nation, causing health impacts including respiratory illness and premature deaths. The District adopted this Rule to achieve federal air quality standards and protect public health. Every day of delay means additional emission sources locked in for decades. Against this public health imperative, Plaintiffs identify only potential economic impacts to a fraction of their nationwide and global business during the brief pendency of this appeal.

The timing of Plaintiffs' motion reinforces these conclusions. They waited six months after the Rule's adoption to file suit. They never sought preliminary relief. They waited six weeks after the summary judgment ruling to seek an injunction. This relaxed pace belies the urgency they now claim.

Plaintiffs have not demonstrated likelihood of success, irreparable harm, or a favorable balance of equities. The district court properly denied their motion below. This Court should do the same.

## BACKGROUND

The District adopted Rule 1146.2 on June 7, 2024. Plaintiffs-Appellants' Excerpts of Record, Dkt. 15.1 ("ER") 10.[1] The Rule applies to large water heaters, small boilers, and process heaters and requires them to meet a zero-NOx emission limit, subject to staggered future compliance deadlines. ER-81, 214-18.

The Rule's first compliance deadline is January 1, 2026. ER-218. The deadline applies only to appliances in "Phase I" installed in new buildings. *Id.* Phase I appliances include instantaneous water heaters with a rated heat input capacity ("capacity") less than or equal to 200,000 Btu per hour ("Btu/hr"), and Type 1 units, which are water heaters, boilers, and process heaters with a capacity less than or equal to 400,000 Btu/hr. *Id.*; ER-215, 217. This category excludes water heaters that are subject to the District's Rule 1121, which are those with capacities less than 75,000 Btu/hr. ER-81, 217. Also excluded from this category subject to the first compliance deadline are pool heaters, high temperature units, and Type 2 Units, which are water heaters, boilers, and process heaters with a capacity greater than 400,000 Btu/hr. *Id.*; ER-218.

A full six months after the District adopted its Rule in June 2024, Plaintiffs filed their complaint on December 5, 2024. Dist.Ct.Dkt. 1.

---

[1] Ninth Circuit docket entries are cited as "Dkt." District court docket entries are cited as "Dist.Ct.Dkt."

Plaintiffs never sought a preliminary injunction. After full briefing, on July 18, 2025, the district court granted the District's cross-motion for summary judgment and denied Plaintiffs' motion for summary judgment, declaratory relief, and permanent injunction. ER 18-30.

Three weeks later, Plaintiffs filed their notice of appeal, on August 8, 2025. Dist.Ct.Dkt. 83. This Court set a briefing schedule on August 13, 2025, in which Plaintiffs' Opening Brief was due September 22, 2025, and the District's and Defendant-Intervenors' Answering Briefs were due on October 22, 2025. Dkt. 2.1.

Six weeks after the district court granted the District's motion for summary judgment, Plaintiffs moved on August 27, 2025, for an injunction pending appeal. Dist.Ct.Dkt. 85; Plaintiffs-Appellants' Motion for Injunction Pending Appeal, Dkt. 27 ("Mot.") at 11. The district court denied Plaintiffs' motion on September 29, 2025. Dist.Ct.Dkt. 92 (attached as Exhibit A).

The court held that Plaintiffs had not established that they would suffer immediate and irreparable harm during the appeal, and thus could not establish all required elements for interim injunctive relief. *Id.* at 4-6. The court also reasoned that even if Plaintiffs *had* shown that they would incur immediate and irreparable harm, the balance of the hardships would favor the District, given the damage to the environment and public health that would result were the Rule enjoined. *Id.* at 6 n.6; *see also id.* (concluding that an injunction would not be in the public interest). Although the court did not address Plaintiffs' likelihood of success, it

noted that its rejection of Plaintiffs' claim on the merits on summary judgment made it unnecessary to do so. *Id.* at 6.

Also six weeks after the district court's summary judgment order, and more than a month after this Court set a briefing schedule for their appeal, Plaintiffs moved on September 16, 2025 to expedite the appeal. Dkt. 8.1. The District and Defendant-Intervenors did not oppose this request, but disputed all allegations of irreparable harm in the motion to expedite. Dkts. 18, 19. This Court granted Plaintiffs' unopposed request on September 26, 2025. Dkt. 20.1.

On October 6, 2025, after filing their Opening Brief, Plaintiffs filed the present motion for an injunction pending appeal. Dkt. 27-1.

## LEGAL STANDARD

An injunction pending appeal is a "drastic and extraordinary remedy" requiring "a clear showing that the plaintiff is entitled to such relief." *Tandon v. Newsom*, 992 F.3d 916, 928 (9th Cir. 2021) (citations omitted). Plaintiffs must prove (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent the injunction, (3) the balance of equities favors Plaintiffs, *and* (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If the government is the non-moving party, the third and fourth *Winter* factors merge. *Am. Fed'n of Gov't Emps. v. Trump*, 139 F. 4th 1020, 1039-40 (9th Cir. 2025).

This Court employs a "sliding scale" test under which an injunction may also be appropriate if Plaintiffs can show "serious questions going to the merits," but only if the balance of hardships "tips sharply" in their

8

favor. *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021). If Plaintiffs fail to "establish[] serious questions going to the merits," the Court "need not consider the remaining factors for an injunction." *Id.* at 1181.

## ARGUMENT

To obtain an injunction pending appeal, Plaintiffs must establish all four *Winter* factors. They have established none. First, Plaintiffs have not presented even a serious question going to the merits, because, as the district court correctly held, EPCA does not preempt the District's Rule. Second, as the district court also correctly held, Plaintiffs have not proven that they would suffer immediate and irreparable harm absent the injunction. Finally, as the district court concluded in the alternative, the balance of the equities does not favor Plaintiffs at all—let alone tip *sharply* in their favor. For each of these independent reasons, the Court must deny Plaintiffs' motion.

## I. Because EPCA does not preempt the Rule, Plaintiffs have not raised a serious question going to the merits.

The district court firmly rejected Plaintiffs' claim on the merits. *See* ER-15-17. Its decision was well-reasoned, supported by the plain meaning of the statute, and consistent with this Court's decision in *CRA*. As a result, Plaintiffs all but concede that they cannot demonstrate a likelihood of success on their claims, and instead insist that their appeal "at least . . . presents a serious question on the merits," Mot. at 8, or "a substantial case for relief," *id.* at 13. But Plaintiffs have failed to satisfy even

9

this more forgiving version of the first *Winter* factor.[2] As explained below and in the District's merits brief,[3] Plaintiffs have not established a serious merits question—one that is "substantial, difficult, and doubtful." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). EPCA plainly does not preempt the Rule.

EPCA preempts only regulations "concerning . . . energy use" of covered products. *See* 42 U.S.C. § 6297(c). In *CRA*, this Court held that Berkeley's ban on natural gas piping in new buildings was preempted because it inevitably set at zero the quantity of gas that covered appliances could use. 89 F.4th at 1101-02. As the district court emphasized, *CRA* was expressly "narrow" and addressed only building codes controlling the quantity of energy that covered appliances may use. ER-15.

Unlike Berkeley's building code, the Rule regulates harmful NOx emissions—a byproduct of appliances' operation. ER-15. As the district court correctly held, the Rule says nothing about how much gas an appliance may use or how efficiently it must operate. ER-16. For that reason, it does not "concern" the energy use of appliances. Instead, any impact on appliance energy use is merely incidental. As *CRA* recognized, regulations with only incidental impacts on energy use—such as utility

---

[2] As discussed further below, Plaintiffs' decision to argue that they have raised only "serious questions" on the merits—rather than a true likelihood of success—comes with consequences: Under the sliding scale approach, Plaintiffs must prove that the balance of equities tips *sharply* in their favor. *See Doe*, 19 F.4th at 1177. Plaintiffs cannot satisfy that standard. *See* Section III, *infra*.

[3] *See* Dkt. 29.1 (filed Oct. 22, 2025).

distribution regulations or carbon taxes—would likely not be preempted, even if they effectively discourage gas appliance use. 89 F.4th at 1103 (majority), *id.* at 1117 (Baker, J., concurring). Plaintiffs' argument to the contrary ignores this Court's repeated insistence in *CRA* that its decision was "very narrow." *See, e.g.*, *id.* at 1106.

Moreover, Plaintiffs cannot distinguish the Rule from other supposedly "ordinary" non-zero emission standards that states and air districts have imposed on EPCA-covered appliances for decades. The Rule represents a change in degree, not kind, from the District's prior regulatory efforts. As the district court acknowledged, because Plaintiffs' theory offers no coherent limiting principle, it could also imperil non-zero emission limits that have the effect of precluding gas appliances in some circumstances. ER-16. Nothing in EPCA's text or in *CRA* supports this result.

The district court also correctly recognized that EPCA's preemption provision must be interpreted against the backdrop of the CAA's cooperative federalism regime, which explicitly relies on states to regulate emissions and achieve federal air quality standards. ER-16; *see also Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1167 (9th Cir. 2011). The District adopted the Rule to fulfill its obligations under the CAA and California law to bring the South Coast Air Basin into attainment of federal ozone standards by 2038. Appellee's and Intervenor-Appellees' Joint Supplemental Excerpts of Record, Dkt. 30.1 ("SER") 29, 38, 42 n.1, 102. This task requires eliminating emissions from all stationary sources where feasible, including appliances. SER-29, 41.

11

Congress did not intend to preempt the very air pollution regulations it depends on states to adopt under the CAA. As the district court noted, the CAA had been in place for years when Congress enacted and amended EPCA, yet Congress never mentioned preempting emission regulations—unlike building codes, which EPCA expressly addresses. ER-16; *see also CRA*, 89 F.4th at 1103 (majority), 1117 (Baker, J., concurring). The statute's silence on emission regulations counsels against preemption.

The district court was correct to hold that EPCA does not preempt the Rule. Plaintiffs have not shown that they are likely to succeed on their appeal.

## II.   As the district court correctly found, Plaintiffs have not shown that they will suffer irreparable harm.

Because Plaintiffs have not shown a likelihood of success—or even serious questions—on the merits, this Court must deny the injunction. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). However, even had Plaintiffs satisfied the first *Winter* factor, the injunction would still need to be denied because enforcement of Phase I of the Rule will not cause Plaintiffs irreparable harm. *See Winter*, 555 U.S. at 22 (holding movants must demonstrate that the claimed harms are both "likely" and imminent). When the district court considered the same sparse evidence of vague and speculative injuries that Plaintiffs have repurposed for their current Motion, it found that Plaintiffs had not shown they would be irreparably harmed during the appeal. Ex. A at 4-6. This Court should conclude the same.

### A. Plaintiffs have not alleged that enforcement of Phase I of the Rule is likely to cause them concrete harm during the appeal.

Plaintiffs make vague and exaggerated claims about the effects of Phase I enforcement, which are speculative at best. *See, e.g.*, Mot. at 19, 21, 22; Mot., Ex. 1 ¶ 12 (contending that Noritz's business in "the California market" will be affected); Mot., Ex. 4 ¶ 4 (asserting that the Rule may lead to "all new constructions" being built "without any gas infrastructure at all"). These allegations are too insubstantial to establish irreparable harm. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009) (holding that harm that is "merely speculative . . . will not support injunctive relief"). Because they have failed to establish that Phase I is likely to irreparably harm them, they are not entitled to injunctive relief.

First, Plaintiffs fail to tie their sweeping claims of harm specifically to *Phase I*, which they admit is the only aspect of the Rule that will be enforced during the appeal. Mot. at 14. Instead, Plaintiffs repeatedly allege harms attributable to later stages of the Rule. *See, e.g.*, Mot., Ex. 2 ¶¶ 12, 14 (claiming that Phase I will "eliminat[e] gas tankless products" and "abruptly ban" Rinnai's products, and that Rinnai's "visibility and presence" in the market will "virtually disappear overnight."); Mot., Ex. 5 ¶ 6 (claiming that "on January 1, 2026, all new constructions will be built . . . without any gas infrastructure at all").

As the district court recognized, these harms will not materialize during the appeal. *See* Ex. A at 5 (observing that Plaintiffs "claimed harm that would not occur until later phases of the Rule are implemented").

13

Phase I applies only to a limited subset of appliances in new buildings. *See* Background, *supra*. Of the appliances affected by the Rule over the coming decades, the District estimates only 10 percent will be first-time installations in new buildings rather than replacements of old appliances. *See* District's Final Staff Report for Amended Rule 1146.2, Dist.Ct.Dkt. 50-4, at 291 (excerpts included as Exhibit B, attached hereto). An even smaller subset of that 10 percent will be affected by Phase I; other appliances installed in new buildings are only covered by subsequent phases. *See* ER-218. And only a portion of that subset of the 10 percent could be expected to be installed during the appeal.[4] *Id.*; Ex. B at 265. The Rule's limited reach over the next year will hardly trigger the market shock Plaintiffs envision.

Indeed, because the Rule's compliance deadlines are staggered, Plaintiffs' appeal will have been resolved long before many Plaintiffs are even affected by the Rule. Appliances in existing buildings will not need to comply with the Rule until 2029 at the earliest and in many cases not until a decade or more thereafter. ER-217-18. The Rule also includes alternative compliance options to delay the replacement deadline for existing appliances, including extensions of up to five years. ER-222-30. Whatever the consequences of the Rule's gradual roll-out may be in the coming decades, they cannot justify an injunction that will only be in place for "the next several months." Mot. at 25.

---

[4] This case will be fully briefed in a matter of weeks and, because this Court granted Plaintiffs' unopposed motion to expedite the appeal, argument will occur immediately after. *See* Dkt. 20.

14

Second, some of Plaintiffs' asserted harms will not be caused even by later phases of the Rule. For example, Plaintiffs allege harms related to gas stoves and piping, neither of which is covered by the Rule. *See* Mot., Ex. 3 ¶ 8 (attributing to the Rule the fact that a U.C. Riverside construction project called for electric stoves); Mot., Ex. 6 ¶ 6 (claiming impacts to hotels caused by a lack of "gas piping"). Similarly, Plaintiffs allege harms that will result from hotels and commercial buildings being built all-electric, despite the fact that the Rule requires no such thing. Mot., Ex. 6 ¶ 6; Mot., Ex. 5 ¶ 6. The district court correctly faulted Plaintiffs for claiming these phantom harms. *See* Ex. A at 5 (emphasizing "the majority of Plaintiffs' evidence focuses on broad generalized categories of appliances, *some of which will not ever be impacted by the Rule*" (emphasis added)). Yet Plaintiffs have not attempted to substantiate these dubious assertions of harm in their latest Motion. *See* Mot. at 19, 20. Accordingly, none of these allegations explain how the Phase I requirements could cause such deep disruptions, and thus none "establish that irreparable harm is likely, not just possible." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Nor have Plaintiffs shown that the Rule will cause significant harm to market share or consumer goodwill for the short duration of the appeal. Although they insist they will lose significant market share, *see* Mot. at 19, 20, Plaintiffs Rinnai and Noritz are major industry players nationwide and sell a variety of products unaffected by Phase I—including heat pumps, which comply with the Rule and thus may see an uptick in sales. *See* Mot., Ex. 1 ¶¶ 2, 11; Mot., Ex. 2 ¶ 3.

15

The scale of Rinnai's and Noritz's enterprises also undermines their claims that the implementation of Phase I during the pendency of this appeal would materially damage their overall market share. Rinnai and Noritz sell approximately 35 and 10 percent, respectively, of all gas tankless water heaters nationwide. Mot., Ex. 1 ¶ 2; Mot., Ex. 2 ¶ 3. They show only that the Rule may affect sales of some of their products *within the District*, which presumably constitutes only a small fraction of their nationwide business. Notably, neither Rinnai nor Noritz estimates the portion of their sales attributable to the installation of units in new construction within the District—the only sales that could be affected during the appeal. *See* Mot. at 21.

Plaintiffs also maintain that the Rule will cause them to lose customer goodwill. Mot. at 9, 19, 21; Mot., Ex. 1 ¶13; Mot., Ex. 2 ¶¶ 6-7, 11-13. But Phase I will equally affect all sellers of covered appliances, precluding *any* manufacturer from selling the appliances for installation in new construction. Rather than Plaintiffs in particular losing goodwill—presumably to competing suppliers—*all* equally situated market participants will be affected equally. *See, e.g.*, Mot., Ex. 1 ¶ 6 (explaining that the entire homebuilding industry is responding to the Rule's requirements). As the district court correctly found, these vague and generalized claims of lost goodwill do not constitute concrete, irreparable harm. *See* Ex. A at 5-6; *see also* Section II.B, *infra*.

The uncertain harms that Plaintiffs allege fall far short of the extreme injuries that this Court has found to justify an injunction pending appeal. *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1189 (9th

Cir. 2022) (holding movant established that the balance of hardships tipped decidedly in its favor where its "entire business" was at risk and it would have "no products to sell" absent the injunction). Perhaps recognizing this, Plaintiffs try a different tack, insisting they will be irreparably harmed by being "forced to comply" with a Rule they believe is preempted. Mot. at 22 (citing *Am. Trucking*, 559 F.3d at 1058-59, and *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)). But this is simply a repackaging of Plaintiffs' faulty merits arguments. *See* Section I, *supra*. Unlike in *American Trucking* and *Monterey Mechanic Co.*, Plaintiffs have not raised even a serious question as to whether the Rule is preempted. *See* 559 F.3d at 1053; 125 F.3d at 715.

### B. Temporarily enjoining enforcement of the Rule would not prevent Plaintiffs' alleged harms.

Plaintiffs' admission that the market has already begun to change in anticipation of the Rule's enforcement further undercuts their claims. *See* Mot. at 23. As the district court correctly reasoned, an injunction would not prevent their claimed harms, "given that Plaintiffs admit that the industry has already begun to respond to the District's approval of the Rule, long before the start of its phased implementation." Ex. A at 6.

Plaintiffs assert that the Rule is already "causing . . . serious harm." Mot., Ex. 3 ¶ 5. For instance, Noritz claims that it is "already suffering" harms from the Rule, including lost sales, because "the industry is moving exclusively to electric heat pumps, in anticipation of the District's zero-NOx rule." Mot., Ex. 1 ¶¶ 5-6. Indeed, "over the past year or so developers have started specifying electric heat pumps . . . instead of the traditional gas-fired units." Mot., Ex. 3 ¶ 7. Similarly, Plaintiffs admit that in

17

anticipation of the Rule, "builders must already comply with the rule's requirements." Mot., Ex. 7 ¶ 8. Because of the substantial lead-times required, *see id.*, residential construction projects are being designed and built without gas appliances "in preparation for compliance" with the Rule, Mot., Ex. 3 ¶ 6; *see also id.* ¶ 10 (asserting that developers are designing projects in anticipation of the Rule's requirements).

By Plaintiffs' admission, *anticipation* of the Rule's enforcement— not its actual implementation—has already been triggering the market changes that Plaintiffs complain of. The cause of Plaintiffs' supposed injury is the prospect that the District may enforce the Rule at all. The market restructuring Plaintiffs claim has already begun, Mot. at 23, will continue in anticipation of the Rule's enforcement. *See* Ex. A at 6. That reality will not change, whether or not enforcement is enjoined for some part of a year.

Likewise, temporarily enjoining Phase I's enforcement is unlikely to influence the "irrevocable decisions" builders are making about which appliances to install, given that they already anticipate the Rule's eventual enforcement. Mot., Ex. 7 ¶ 8. As Plaintiffs note, builders are already "mak[ing] irrevocable decisions on which appliances and HVAC equipment to install." *Id*. Moreover, as the district court observed, Plaintiffs have offered "no evidence that builders will change their choices of appliances for new construction projects if [Phase I] is temporarily enjoined."[5]

---

[5] And Plaintiffs have adduced no new evidence with their motion in this Court; they have only resubmitted the declarations presented to the district court.

18

Ex. A at 6. Thus, Plaintiffs' claim that delaying the Rule's enforcement would "avoid the harm to Plaintiffs," Mot. at 23, is baseless and cannot constitute irreparable harm.

### C. Plaintiffs' delay in bringing this motion undercuts their claims of irreparable harm.

Plaintiffs' delay in both filing this lawsuit and seeking an injunction further undermines their claims of irreparable harm. Plaintiffs waited six months after the Rule was adopted to file their suit, Dist.Ct.Dkt. 1; waited another two weeks to serve the District, Dist.Ct.Dkt. 20; waited nearly *six weeks* after the district court's judgment to move for an injunction pending appeal in district court, Dist.Ct.Dkt. 85; and waited yet another full week after the district court's denial of the injunction to file this Motion. This delay shows a lack of urgency, undercutting the claim of irreparable harm. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015).

Moreover, Plaintiffs never sought a preliminary injunction from the district court. The court correctly found that Plaintiffs' failure to seek interim injunctive relief "weighs against the finding of immediate and irreparable harm now"—particularly given that Plaintiffs' Complaint had alleged that the Rule was "already harming" businesses. Ex. A at 6; *see also Oakland Tribune, Inc. v. Chronicle Publ'ing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"). Had the need for injunctive relief truly been urgent, Plaintiffs would have filed suit and sought an injunction much sooner.

19

Plaintiffs now contend that "there was no point wasting the district court's and parties' time seeking" a preliminary injunction, because they expected the district court to issue a decision—and assumed it would be in their favor—before Phase I would take effect. *See* Mot. at 23-24. But this argument is flatly inconsistent with Plaintiffs' broader theory that they will suffer and have *already* suffered harm as a result of the building industry's changing its practices in "anticipation" of the Rule's operation. *See id.* at 22-23. Plaintiffs cannot have it both ways. If the Rule's "anticipatory effects" are real and imminent, *see id.* at 24, Plaintiffs should have moved for interim relief much sooner to head off those long-term effects. But if those anticipatory effects are minimal or speculative—as Plaintiffs' delay in seeking an injunction suggests—they cannot constitute irreparable harm.

\* \* \*

Plaintiffs' failure to show a likelihood of irreparable harm forecloses their requested injunction. Like the district court, this Court may deny Plaintiffs' injunction on this basis alone. *See Winter*, 555 U.S. at 20; Ex. A at 6.

### III.  As the district court recognized, the balance of the equities and public interest weigh heavily against granting an injunction.

Even if Plaintiffs could show irreparable harm, an injunction cannot issue unless the balance of equities "tips sharply" in their favor. *Doe*, 19 F.4th at 1176–77; *see also* Section I, *supra*. Because the opposing party is the government, this factor merges with the question of whether the

injunction is in the public interest. *Am. Fed'n of Gov't Emps.*, 139 F. 4th at 1039–40.

Granting an injunction would unequivocally harm the public interest, while Plaintiffs have failed to establish that they will be irreparably harmed without an injunction. Accordingly, as the district court properly recognized, the balance of the equities strongly favors the District. *See* Ex. A at 6 n.6.

Enjoining the Rule would cause irreparable injury to the environment and to public health in the Basin, harming air quality and contributing to the Basin's nonattainment with federal ozone standards. NOx are toxic, reactive gases that directly endanger human health and the environment. ER-9, 74. They also react with volatile organic compounds in the presence of sunlight to form ozone, one of the pollutants for which Congress directed the Environmental Protection Agency ("EPA") to set standards in the CAA. ER-74. Appliances covered by the Rule collectively generate approximately 5.6 tons of NOx per day in the Basin. SER-31. The Basin suffers from some of the worst air quality in the nation, is in "extreme" nonattainment for federal ozone standards, and has the highest ozone levels nationwide. ER-9, 74.

The Rule's emission reductions are essential to the District's attainment of ozone standards,[6] and to avoiding premature deaths and other

---

[6] Despite Plaintiffs' arguments to the contrary, that the District has not submitted the Rule to EPA does not diminish its obligation to achieve federal air quality standards through every conceivable means. *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1173 (9th Cir. 2015) (explaining (footnote continued on next page)

21

adverse health impacts. The Rule is projected to prevent premature deaths, prevent new onset cases of asthma and lung cancer, reduce cardiac and respiratory illness symptoms, and reduce emergency room visits due to respiratory illness, among other health impacts. SER-20. The public interest clearly favors preventing such premature death and health impacts, not accelerating them. *Doe*, 19 F.4th at 1181 (holding that the "public interest weighs strongly in favor" of upholding regulations that save lives, prevent the spread of disease, and "promote . . . health and safety"). The district court agreed. *See* Ex. A at 6 n.6 (emphasizing "the balance of hardships factor would favor Defendants" and "an injunction . . . would not be in the public interest" due to the District's evidence and argument showing the threat to the environment and public health resulting from an injunction).

Plaintiffs attempt to downplay the Rule's benefits as "minimal," characterizing the NOx reductions from Phase I as insignificant because "Phase I will be responsible for just 0.3% of its overall emissions reduction target by 2037." Mot. at 25, 27. But this argument ignores that air pollution is incremental in nature, and once pollutants are emitted, they cannot be removed. For that reason, several courts have held that increased air pollution can constitute irreparable harm, even for a short period of time. *See, e.g.*, *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313–14 (1977) (finding that two months of air pollution caused concrete harm). The Rule's first compliance deadline will prevent *new* emission

_____

that under the CAA, the EPA "sets required air quality standards but the state is a primary actor in creating plans to achieve them").

sources from being added to the Basin, which is already in "extreme" non-attainment of federal air quality standards. *See* Ex. B at 029. By contrast, allowing the District to enforce its Rule will prevent these new sources of emissions from being installed, thereby avoiding decades of pollution and health impacts.

Plaintiffs also ignore the Rule's salutary impact on air quality, despite the fact that ongoing harm to the environment constitutes irreparable harm. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). Here, the public interest clearly lies in avoiding that irreparable harm. *Id*. at 1101 ("[T]he public interest strongly favors preventing environmental harm."); *see also All. for the Wild Rockies*, 632 F.3d at 1138 (recognizing the "well-established 'public interest in . . . avoiding irreparable environmental injury'").

If Plaintiffs' injunction is granted, irreparable harm to the environment and public health is certain. If it is denied, Plaintiffs will suffer at most temporary economic harm. The balance of the equities clearly favors the District. The Court, like the district court, should therefore deny Plaintiffs' injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for an injunction pending appeal.

DATED:  October 23, 2025     SHUTE, MIHALY &
                             WEINBERGER LLP


                        By:    s/Matthew D. Zinn
                             _____
                             MATTHEW D. ZINN
                             LAUREN M. TARPEY
                             RYAN K. GALLAGHER

                             Attorneys for Defendant-Appellee
                             South Coast Air Quality
                             Management District

24

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,195 words. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced roman typeface, 14-point New Century Schoolbook, using Microsoft Word.

DATED:  October 23, 2025        SHUTE, MIHALY &
                                WEINBERGER LLP


                         By:    ___s/Matthew D. Zinn_____
                                MATTHEW D. ZINN
                                LAUREN M. TARPEY
                                RYAN K. GALLAGHER

                                Attorneys for Defendant-Appellee
                                South Coast Air Quality
                                Management District