No. 25-5129

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

RINNAI AMERICA CORPORATION, *et al*.,
PLAINTIFFS-APPELLANTS,

V.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,
DEFENDANT-APPELLEE

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, *et al*.,
DEFENDANT-INTERVENOR-
APPELLEES

———————————

**On Appeal from the United States District Court
for the Central District of California**
No. 2:24-cv-10482-PA-PD
Hon. Percy Anderson, Judge

———————————

## AMICUS CURIAE BRIEF OF CALIFORNIA AIR RESOURCES BOARD IN SUPPORT OF DEFENDANT-APPELLEE

———————————

ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
  *Senior Assistant Attorney General*
MYUNG J. PARK
  *Supervising Deputy Attorney
  General*
JONATHAN A. WIENER
BENJAMIN P. LEMPERT
*Deputy Attorneys General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3549
Fax: (415) 703-1107
Jonathan.Wiener@doj.ca.gov
  *Attorneys for Amicus Curiae California
  Air Resources Board*

October 29, 2025

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF AMICUS.................................................. 1

INTRODUCTION ......................................................................... 3

ARGUMENT .............................................................................. 4

    I.     The Clean Air Act Authorizes State and Local Appliance
           Emissions Standards................................................... 4

    II.    EPCA Did Not Impliedly Repeal or Otherwise Disturb the
           Clean Air Act's Support for Appliance Emissions
           Standards ........................................................... 8

    III.   The Clean Air Act's Support for State Appliance
           Emissions Standards Distinguishes This Case from *CRA* ...... 15

CONCLUSION ........................................................................ 17

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ass'n of Amer. R.R. v. S. Coast Air Qual. Mgmt. Dist.*
  622 F.3d 1094 (9th Cir. 2010) ....................................................13

*BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*
  904 F.3d 755 (9th Cir. 2018) ...............................................10, 13

*California Div. of Lab. Standards Enf't v. Dillingham Const.,*
*N.A., Inc.*
  519 U.S. 316 (1997).............................................................9, 10

*California Restaurant Association v. City of Berkeley*
  89 F.4th 1094 (9th Cir. 2024) ...................................4, 14, 15, 16

*EPA v. EME Homer City Generation, L.P.*
  572 U.S. 489 (2014).....................................................................5

*Epic Sys. Corp. v. Lewis*
  138 S.Ct. 1612 (2018)...................................................................9

*Hall v. United States Dep't of Agric.*
  984 F.3d 825 (9th Cir. 2020) .....................................................10

*Hughes v. Talen*
  578 U.S. 150 (2016)....................................................................17

*Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air*
*Pollution Control Dist.*, 627 F.3d 730 (9th Cir. 2010) ................4

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
  567 U.S. 519 (2012)....................................................................17

*Obduskey v. McCarthy & Holthus LLP*
  139 S. Ct. 1029 (2019)................................................................14

*Ohio v. EPA*
  603 U.S. 279 (2024)......................................................................4

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Safe Air for Everyone v. Meyer*
  488 F.3d 1088 (9th Cir. 2007) .................................................... 6

*United States v. Miller*
  604 U.S. 518 (2025) ................................................................. 11

*Whitman v. Am. Trucking Ass'ns.*
  531 U.S. 457 (2001) ............................................................. 5, 7

FEDERAL STATUTES

Clean Air Act Amendments of 1990, Pub. L. 101-549 ................................... 11

Energy Policy of Act of 2005, Pub. L. 109-58 ................................................ 12

Energy Independence & Security Act of 2007, Pub. L. 110-140 ............. 12, 13

United States Code, Title 15
  § 10501 ..................................................................................... 14

United States Code, Title 42
  § 6295 .......................................................................................... 9
  § 6295(b)(3)(A)(ii) ................................................................. 10
  § 6295(c)(6)(A)(vi) ................................................................. 12
  § 6297(c) .............................................................................. 8, 11

## TABLE OF AUTHORITIES
### (continued)

Page

§ 6297(c)(7)(8) ................................................................. 12
§ 6297(d) ......................................................................... 11
§ 7401(a)(3) ....................................................................... 4
§ 7401(c) ........................................................................... 4
§ 7407(a) ........................................................................... 5
§ 7407(d) ........................................................................... 5
§ 7409 ............................................................................... 4
§ 7410 ............................................................................... 5
§ 7410(5)(A)(ii) ............................................................... 14
§ 7410(a) ........................................................................... 5
§ 7410(a)(2)(A) ............................................................... 16
§ 7410(a)(2)(E) ............................................................... 16
§ 7410(c)(1) .................................................................. 2, 7
§ 7411(b) ........................................................................... 7
§ 7416 ............................................................................... 4
§ 7502(c)(1) ....................................................................... 6
§ 7509 ............................................................................... 2
§ 7511 ............................................................................... 5
§ 7511(d) ........................................................................... 2
§ 7543(a) ........................................................................... 7
§ 7604(a) ........................................................................... 6

**STATE STATUTES**

California Health & Safety Code
§ 40412 ............................................................................ 16
§ 39002 .............................................................................. 1
§ 39500 .............................................................................. 1
§ 39602 .............................................................................. 1
§ 39602.5 ........................................................................... 1
§ 40001 ............................................................................ 16
§ 40001(a) .......................................................................... 1
§ 40910 ............................................................................ 16

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

REGULATIONS

40 C.F.R. §§ 60.530–60.539(b) ........................................................ 8

51 Fed. Reg. 600, 602 (Jan. 7, 1986) ............................................... 5

52 Fed. Reg. 5065 (Feb. 18, 1987) ................................................... 8

64 Fed. Reg. 19,277 (Apr. 20, 1999) ............................................... 6

67 Fed. Reg. 16,640 (Apr. 8, 2002) ................................................. 6

69 Fed. Reg. 7,370 (Feb. 17, 2004) ................................................. 6

73 Fed. Reg. 73,562, 73,570–71 (Dec. 3, 2008) ............................. 6

74 Fed. Reg. 20,880 (May 6, 2009) ................................................. 6

76 Fed. Reg. 69,896 (Nov. 9, 2011) ................................................ 6

79 Fed. Reg. 28,612 (May, 19 2014) ............................................... 6

82 Fed. Reg. 17,136, 13,142 (Apr. 10, 2017) ................................. 6

87 Fed. Reg. 60,494, 60,512 (Oct. 5, 2022) .................................... 7

89 Fed. Reg. 54,358, 54,360 (July 1, 2024) .................................... 6

South Coast Air Quality Management Dist. Rule 1146.2 ................. 1

OTHER AUTHORITIES

Jack Lienke et al., *Regulating New Fossil-Fuel Appliances Under
    Section 111(b) of the Clean Air Act*, Inst. for Pol'y Integrity
    (Oct. 15, 2021),
    https://policyintegrity.org/publications/detail/regulating-new-
    fossil-fuel-appliances ................................................................ 7

Sen. Rep. No. 100-6 (1987) ........................................................... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

## IDENTITY AND INTEREST OF AMICUS

The California Air Resources Board ("CARB") is the California State agency assigned to "coordinate, encourage, and review the efforts of all levels of government as they affect air quality." Cal. Health & Safety Code § 39500. In that role, CARB is tasked with coordinating California's compliance with national ambient air quality standards ("NAAQS") established under the federal Clean Air Act. *Id*. § 39602. CARB thus works together with local and regional air districts to develop emissions standards and other control measures within their respective areas of authority for CARB to include in federally required State Implementation Plans ("SIPs") to attain or maintain the NAAQS. *Id*. §§ 39602.5, 40001(a). In general, CARB has primary authority over emissions from mobile sources statewide, while air districts have primary authority over emissions from stationary sources. *Id*. § 39002.

CARB has a strong interest in defending the legality of low- and zero-emission appliance standards in the South Coast Air Quality Management District ("South Coast") and beyond. As described below, similar measures are common throughout California and are regularly incorporated into California SIPs. The appliance emissions standard at issue in this case, South Coast's Rule 1146.2 ("the Boiler Rule"), restricts emissions of smog-forming oxides of nitrogen ("NOx") from certain large water heaters, boilers, and process heaters. The sources covered

1

by the Boiler Rule are collectively responsible for 10 percent of stationary source NOx emissions in the South Coast air basin, and a key contributor to the basin's worst-in-the-nation ground-level ozone problem and corresponding difficulty attaining the NAAQS.

If Plaintiffs were to prevail in striking the Boiler Rule down, CARB would need to work with South Coast to develop alternative pollution control measures to achieve the emissions reductions necessary to attain the NAAQS, requiring significant additional expenditures of regulatory resources at best. And there is no guarantee that CARB and South Coast would succeed in identifying the needed additional reductions. If they cannot, they face a potential loss of local control over Clean Air Act implementation, escalating restrictions on activity in the district, and the potential loss of federal highway funding. 42 U.S.C. §§ 7410(c)(1), 7509, 7511(d).

Given its experience and expertise implementing the Clean Air Act and working with both air districts and the federal government to attain the NAAQS, CARB is particularly well suited to assist the Court in understanding the statutory and regulatory history relevant to this case.[1]

---

[1] All parties have consented to the filing of this brief. *See* Fed. Rule of App. Proc. 29(a)(2). No party or party's counsel authored this brief in whole or in part, and no person besides amicus curiae or its counsel contributed money that was intended to fund preparing or submitting this brief. *See* Fed. Rule of App. Proc. 29(a)(4)(E)(iii).

## INTRODUCTION

The Boiler Rule is a prototypical exercise of core State and local authority to control stationary source emissions. The Clean Air Act protects and embraces this authority through a cooperative-federalism framework, in particular through the NAAQS program.

Appliance emissions standards like the Boiler Rule have long been key to implementation of that program. Air regulators around the country have adopted standards similar in scope and effect to the Boiler Rule and have relied on them in their SIPs. And the United States Environmental Protection Agency (EPA) has consistently approved those SIPs into federal law.

CARB agrees with South Coast and the Defendant-Intervenors that, by its own terms, the Energy Policy & Conservation Act ("EPCA") does not preempt the Boiler Rule. The District Court can and should be affirmed on those grounds alone. Even if EPCA *could* be read to preempt the Boiler Rule in a vacuum, that reading could not be squared with the earlier-enacted Clean Air Act and its support for appliance emission standards. In this brief, CARB details that support, and explains why Plaintiffs are wrong to argue the Clean Air Act's framework was implicitly repealed or otherwise disturbed by EPCA's preemption provision. Moreover, Plaintiffs' effort to extend EPCA's preemption provision to appliance emissions standards embraced by the Clean Air Act would create a potential

3

conflict between the two statutes, requiring a harmonization analysis and further setting this case apart from this Court's decision in *California Restaurant Association v. City of Berkeley,* 89 F.4th 1094 (9th. Cir. 2024) (amending opinion and denying rehearing en banc) (*CRA*).

## ARGUMENT

### I.    THE CLEAN AIR ACT AUTHORIZES STATE AND LOCAL APPLIANCE EMISSIONS STANDARDS

The Clean Air Act relies on State and local governments retaining "primary responsibility" for "the reduction or elimination" of air pollution from sources within their jurisdiction. 42 U.S.C. § 7401(a)(3). "A primary goal" of the Act "is to encourage or otherwise promote reasonable Federal, State, and local governmental actions … for pollution prevention." *Id.* § 7401(c). To that end, unless otherwise provided, the Act recognizes and preserves "the right of any State or political subdivision thereof to adopt or enforce [] any standard or limitation respecting emissions of air pollutants." *Id*. § 7416.

In the case of emissions from stationary sources, the Act  "generally speaking … gives states the job of regulating." *Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Control Dist.*, 627 F.3d 730, 733 (9th Cir. 2010). The Act supports State and local regulation of stationary source emissions through a framework of "federal-state collaboration." *Ohio v. EPA*, 603 U.S. 279, 283 (2024) (citations omitted). The Act's best-known example of this

cooperative federalism approach is in its NAAQS provisions. *See EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 498 (2014). Those provisions direct EPA to set standards for ozone and certain other air pollutants, at levels requisite to protect health and welfare. 42 U.S.C. § 7409. Once it sets those standards, EPA must then designate regions as in or out of attainment with those standards. 42 U.S.C. § 7407(d).

Regions designated nonattainment must attain the NAAQS by certain deadlines. 42 U.S.C. § 7511. The Clean Air Act obligates States to develop, and submit for EPA approval, SIPs that identify how those areas will attain the NAAQS. *Id.* § 7410(a). In their development of these plans, States retain "initial and primary responsibility for deciding what emissions reductions will be required from which sources." *Whitman v. Am. Trucking Ass'ns.*, 531 U.S. 457, 470 (2001) (citing 42 U.S.C. §§ 7407(a), 7410).

Appliance emissions standards have been a part of State and local pollution control strategy for decades, at least as far back as South Coast adopting NOx-emissions standards for small furnaces and water heaters in 1978. *See* Answering Br. 16-17 (citing SER 30, ¶¶ 30–31). And EPA has been approving those appliance emission standards into SIPs for almost as long—since at least 1986, when EPA approved the Bay Area Air Quality Management District's NOx-emissions standards for residential central furnaces. 51 Fed. Reg. 600, 602 (Jan. 7, 1986). In

5

the ensuing decades, States around the country continued to rely on appliance emission standards in their SIPs. Br. of *Amicus Curiae* Northeast States for Coordinated Air Use Management, at 14–26, ECF No. 37 ("NESCAUM Br.") (compiling examples of state adoption). And EPA continued to approve those SIPs. *E.g.*, 64 Fed. Reg. 19,277 (Apr. 20, 1999) (Sacramento and Mojave Desert); 67 Fed. Reg. 16,640 (Apr. 8, 2002) (South Coast).[2]

EPA approval of appliance emissions standards in SIPs imbues those standards with "the force and effect of federal law." *Safe Air for Everyone v. Meyer* 488 F.3d 1088, 1096 (9th Cir. 2007). Among other things, approval makes those standards enforceable in federal court, 42 U.S.C. § 7604(a), thereby encouraging compliance with the standards and relying on them to achieve the Act's goals.

The Act calls for appliance emissions standards through its requirement that State plans for nonattainment areas contain all "reasonably available control measures" needed to bring those areas into attainment. 42 U.S.C. § 7502(c)(1).

---

[2] *See also* 69 Fed. Reg. 7,370 (Feb. 17, 2004) (San Joaquin Valley Unified Air Pollution Control District); 73 Fed. Reg. 73,562, 73,570–71 (Dec. 3, 2008) (Texas); 74 Fed. Reg. 20,880 (May 6, 2009) (South Coast); 76 Fed. Reg. 69,896 (Nov. 9, 2011) (San Joaquin Valley); 79 Fed. Reg. 28,612 (May, 19 2014) (Ventura County Air Pollution Control District); 82 Fed. Reg. 17,136, 13,142 (Apr. 10, 2017) (Southwest Washington); 89 Fed. Reg. 54,358, 54,360 (July 1, 2024) (Utah).

States thus must include in their plans appliance emissions standards that are needed for attainment, and the agency may require States to do so. 42 U.S.C. § 7502(d); *see also Whitman*, 531 U.S. at 470 (describing EPA review process). Indeed, the agency has previously proposed disapproving a SIP for the San Joaquin Valley *because* the submission lacked zero-emission standards for space and water heating. 87 Fed. Reg. 60,494, 60,512 (Oct. 5, 2022). If a State fails to submit an approvable plan, the Act also provides for EPA to impose a Federal Implementation Plan ("FIP") that, if need be, can impose or tighten appliance emissions standards in the nonattainment area. 42 U.S.C. § 7410(c)(1).[3]

The Act thus supports appliance emission standards and other stationary source controls in ways that may not always be true for other laws "motivated by Clean Air Act compliance." Plaintiff-Appellants' Opening Brief (AOB), ECF No. 14-1, at 52. For example, in contrast with its embrace of stationary source controls, the Act—with some exceptions—preempts certain State mobile source regulations.

---

[3] Separately, the gives EPA itself authority to set nationwide emission standards for new appliances under Section 111(b). 42 U.S.C. § 7411(b); *see also* Jack Lienke et al., *Regulating New Fossil-Fuel Appliances Under Section 111(b) of the Clean Air Act*, Inst. for Pol'y Integrity (Oct. 15, 2021), https://policyintegrity.org/publications/detail/regulating-new-fossil-fuel-appliances. EPA has used this authority to set standards for residential wood-fired heaters. 40 C.F.R. §§ 60.530–60.539(b); 52 Fed. Reg. 5065 (Feb. 18, 1987) (listing woodheaters as source category for regulation under Section 111).

42 U.S.C. §§ 7543(a) (emission standards for new motor vehicles and engines), 7545(c)(4) (motor vehicle fuel regulation), 7553 (aircraft standards).

Plaintiffs argue that zero-emission standards like those in the Boiler Rule are qualitatively different than other appliance standards that the Clean Air Act embraces. AOB 49–50. But as South Coast explains, low-emission and zero-emission standards alike prohibit the use of covered appliances that cannot meet their requirements. Defendant-Appellee's Answering Br. ("Answering Br."), ECF No. 29-1, at 41–43. And the Clean Air Act supports state zero-emission appliance standards just as much as it does low-emission appliance standards. *See, e.g.,* 42 U.SC. § 7401(a)(3) (protecting state authority for "the reduction or *elimination*" of pollution at its source). When air districts have adopted zero-emission appliance standards, they have done so simply by amending low-emission appliance standards previously approved into SIPs. Answering Br. 17–18 (citing ER 83–84; SER 57–60).

## II.  EPCA DID NOT IMPLIEDLY REPEAL OR OTHERWISE DISTURB THE CLEAN AIR ACT'S SUPPORT FOR APPLIANCE EMISSIONS STANDARDS

Plaintiffs argue that Congress circumscribed the Clean Air Act's support for appliance emissions standards when it amended EPCA in 1987 to require federal energy conservation standards and preempt state or local energy use standards. AOB 45–46 (citing 42 U.S.C. § 6297(c)). But Plaintiffs cannot overcome the

"strong presumption" against implied repeal of the earlier-enacted Clean Air Act. *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1624 (2018).

Under that presumption, Congress can be counted on "'to specifically address' preexisting law when [Congress] wishes to suspend its normal operations in a later statute." *Id.* (citing *United States v. Fausto*, 484 U.S. 439, 452 (2018)). Similarly, a later statute's "silence on the pre-emption of state [policies] that Congress previously sought to foster counsels against finding pre-emption" based on that later statute. *California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, ("*Dillingham*"), 519 U.S. 316, 332 n.7 (1997).

Plaintiffs concede that Congress said nothing in either EPCA or its legislative history about the Clean Air Act or the state appliance emissions standards it supported. AOB 46. In fact, Congress said nothing at all in EPCA or its legislative history about emissions standards of any kind. Nor were the appliance standards it addressed about emissions. Congress gave authority to the Department of Energy to set energy conservation standards for appliances, without suggesting this authority including the authority to establish emission standards. *See* 42 U.S.C. § 6295.

EPCA's silence on state appliance emissions standards cannot be attributed to lack of knowledge. Congress was presumptively aware of both EPA and State implementation of the Clean Air Act through appliance emissions standards. *See*

9

*Hall v. United States Dep't of Agric.*, 984 F.3d 825, 840 (9th Cir. 2020). And the 1987 amendments to EPCA demonstrate that Congress was well aware of other California appliance standards—Congress paid specific attention to the operation of California's existing efficiency standards for refrigerators and other covered products, and specified conditions that would trigger their preemption. *See*, *e.g.*, 42 U.S.C. § 6295(b)(3)(A)(ii)); *see also* Sen. Rep. No. 100-6, at 3 (1987) ("California has already enacted [energy efficiency] standards and has been very active on this issue.")

But when it came to the appliance emission standards Congress "previously sought to foster," *Dillingham*, 519 U.S. at 332 n.7, Congress left entirely undisturbed the Clean Air Act's careful balance of federal and state authority. Congress said nothing about pre-existing state emissions standards, EPA's recent approval of them into California's SIP, or EPA's authority to promulgate standards in FIPs or on a nationwide basis. "If Congress intended in [EPCA] to reverse course and no longer to permit States to impose" appliance emission standards under the Clean Air Act, "one would expect Congress to have said so. But Congress said nothing." *BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*, 904 F.3d 755, 766 (9th Cir. 2018).

Plaintiffs claim that EPCA's silence about state emission standards actually shows EPCA preempted those standards, pointing to the lack of a specific

10

exemption for them. AOB 46. But that argument begs the question. The lack of an exemption no more shows emission standards are preempted than it shows the opposite. Answering Br. 48; Defs.-Intvs. Br. ("Intervenor Br."), ECF No. 32, at 29. After all, EPCA did not specifically require states to seek waivers for emissions standards, either. *See* 42 U.S.C. § 6297(d).

Nor can Plaintiffs compensate for that silence by relying on the preemption provision's use of the word "concerning." 42 U.S.C. § 6297(c). Plaintiffs call that word "perhaps the most important statutory term." AOB 36. That term's meaning, like other "phrases that govern conceptual relationships," "inherently depend[s] on [its] surrounding context." *United States v. Miller*, 604 U.S. 518, 533 (2025). And here, that context includes the Clean Air Act and its implementation.

Subsequent amendments to the Clean Air Act and EPCA alike further underscore that the latter's appliance *efficiency* program did nothing to disturb the former's support for appliance *emission* standards. Rather, the two statutes continued to use separate frameworks for these separate domains. First, Congress amended the Clean Air Act just three years later in 1990. In those Amendments, Congress set zero-emission standards for evaporative emissions from refrigerators and other EPCA-covered products. Pub. L. 101-549 (Nov. 15, 1990), 104 Stat. 2662 (codified at 42 U.S.C. § 7671g(c)(1)). Congress also added a savings clause

11

protecting approved SIP measures against challenges under other statutes. Pub. L. 101-549, § 108(l), 104 Stat. 2469 (codified at 42 U.S.C. § 7515).

The 1990 Amendments also increased the consequences for NAAQS nonattainment. *See* Intervenor Br. 5–6. Following those Amendments, EPA strengthened the NAAQS for particulate matter and ozone. 62 Fed. Reg. 38,652 (July 18, 1997); 62 Fed. Reg. 38,856 (July 18, 1997). As described above, *supra* pp. 5-6 & n.2, more and more areas around the country sought to attain the NAAQS by adopting or strengthening appliance emission standards, and EPA continued to approve more and more of these standards into SIPs.

Next, against this regulatory backdrop, Congress again revisited EPCA and its preemption provision in both the Energy Policy Act of 2005 and the Energy Independence & Security Act of 2007. Pub. L. 109-58, 119 Stat. 594 ("EPAct05"); Pub. L. 110-140, 121 Stat. 1492 ("EISA"). By then, appliance emissions standards had been in force in South Coast and elsewhere for decades.

As it had in 1987, Congress twice updated EPCA to require more and stronger energy conservation standards. EPAct05 § 135, 119 Stat. 624; EISA § 301, 121 Stat. 1549. And both times Congress also amended EPCA's preemption provision, paying careful attention to California appliance efficiency standards. *See*, *e.g.*, EPAct05 § 135(d)(3), 119 Stat. 634 (codified at 42 U.S.C. §§ 6297(c)(7), (8) (grandfathering California standards for commercial prerinse spray valves and

pedestrian modules, respectively); EISA § 321(a)(3), 121 Stat. 1580 (codified at 42 U.S.C. § 6295(c)(6)(A)(vi)) (authorizing California standards for general service lamps). And, again as in 1987, Congress said nothing in either law about Clean Air Act appliance *emissions* standards—in California or anywhere else.

Congress thus repeatedly addressed and supported appliance emissions standards in the Clean Air Act, and repeatedly steered clear of them in EPCA. Given this pattern, there is no reason to think—as Plaintiffs suggest—that Congress intended EPCA's preemption provision to implicitly repeal the Clean Air Act's framework supporting those standards.

Even if it were the case that the two statutes conflicted, the court could easily harmonize them by concluding that EPCA does not preempt what the Clean Air Act protects. *BNSF Ry.*, 904 F.3d at 766. This Court's decision in *American Railroads* is not to the contrary. *Ass'n of Amer. R.R. v. S. Coast Air Qual. Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010). The Court there acknowledged the need to harmonize federal preemption provisions with SIP-approved control measures in the event of an "apparent conflict" between the two, "giving effect to both laws if possible." *Id.* at 1097. But, relying in part on now-discarded *Chevron* deference to determine the scope of a different preemption provision, the court found no need to harmonize that provision with a merely local law. 622 F.3d at 1097–98.

13

To be sure, that case, like this one, involved a preemption provision and a local emissions control measure. But the similarities end there. Unlike the railyard rule at issue in *American Railroads*, the Boiler Rule is firmly grounded in decades of practice under the Clean Air Act, and merely tightens measures already approved into the SIP. As noted above, the Act even authorizes EPA to require appliance emissions standards in SIPs, or to promulgate them itself in FIPs. Regardless of the current status of the Boiler Rule, the Clean Air Act's role must be accounted for here.

For similar reasons, Plaintiffs cannot avoid accounting for the Clean Air Act when interpreting EPCA by claiming that doing so "boils down to a presumption against preemption." AOB 47. That presumption comes into play, if at all, when a federal statute appears to conflict with a state law. *CRA*, 89 F.4th at 1109 (O'Scannlain, J., concurring). Here, the potential conflict posed by Plaintiffs' interpretation of EPCA involves two *federal* laws, one (EPCA) that they argue preempts state laws and a second (the Clean Air Act) that supports those same state laws.[4]

---

[4] Plaintiffs' invocation of *Obduskey*, AOB 46, is likewise unavailing. That case, too, interprets a single federal statute, and sheds no light on how this Court should interpret the potential intersection of two different federal statutes. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019).

### III. THE CLEAN AIR ACT'S SUPPORT FOR STATE APPLIANCE EMISSIONS STANDARDS DISTINGUISHES THIS CASE FROM *CRA*

The need to interpret EPCA in light of the Clean Air Act's longstanding support for appliance emission standards distinguishes this case from this Court's decision in *CRA*. See also Answering Br. 26–39; Intervenor Br. 43–53 (listing additional distinctions). The *CRA* panel had no need to square EPCA preemption with another federal statute. The only potential conflict that was raised was with the Natural Gas Act, and the Court concluded that statute has nothing to say about piping within buildings. *Id*. The same cannot be said about the Clean Air Act and appliance emission standards.

Moreover, Plaintiffs' claim that the *CRA* panel's reasoning "squarely controls," AOB 27, ignores that *CRA* said it did not. Plaintiffs claim that decision means EPCA preempts every regulation that directly or indirectly bans any "particular covered products." AOB 43. But the panel went out of its way to assure the parties and amici in that case that its decision should not be read to call into question other types of laws, amending its opinion to emphasize the narrowness of the decision. See Answering Br. 29–30 (collecting examples); see also Intervenor Br. 50–51 (discussing en banc proceeding). These amendments were not made in a vacuum—they came in response to a petition for en banc rehearing and amicus briefs supporting rehearing that warned the initial opinion's reasoning could implicate other longstanding local laws. *See* Intervenor Br. 45. One of those

15

amicus briefs specifically enumerated low- and zero-NOx appliance emissions as potentially facing new litigation as a result of the panel's original opinion. *See* Br. of *Amicus Curiae* States in Support of Rehearing En Banc, at 8, 89 F.4th 1094 (2024) (No. 21-16278). Whatever else the panel's assurances mean, they cannot be squared with Plaintiffs' arguments here.

Finally, Plaintiffs are simply wrong when they claim, AOB 43, that harmonizing EPCA and the Clean Air Act would allow Berkeley to reenact the exact same ordinance struck down in *CRA*, simply by styling it as an emissions regulation to attain the NAAQS. Berkeley is not an air regulator for Clean Air Act purposes. Answering Br. 51. And South Coast does not have authority to establish building codes. *See* Cal. Heal. & Safety Code §§ 40001, 40910. South Coast does, however, have authority to set emissions standards for appliances "to carry out . . . implementation plan[s]" under the Clean Air Act, 42 U.S.C. § 7410(a)(2)(E). Cal. Heal. & Safety Code §§ 39002, 40001(a). And that responsibility is exclusive of any other local agency in South Coast's jurisdiction. Cal. Heal. & Safety Code 40412. Meanwhile, it is far from clear that local building codes like Berkeley's can even qualify as "enforceable emission limitations and other control measures" eligible to be included in SIPs. 42 U.S.C. § 7410(a)(2)(A).

Moreover, the fact that a city building code might be preempted despite indirectly reducing emissions does not mean every other method of accomplishing

similar reductions is also preempted. And especially not when Congress has authorized States to achieve those same reductions directly. "States, of course, may regulate within the domain Congress assigned to them," even when doing so might produce results that could not be achieved otherwise. *Hughes v. Talen,* 578 U.S. 150, 164 (2016); *accord Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 570 (2012) (upholding Affordable Care Act individual mandate under Taxing power despite lack of authority under Commerce power). Because the Clean Air Act authorizes appliance emission standards, EPCA does not preempt them.

### CONCLUSION

The District Court should be affirmed.

Dated:  October 29, 2025                    Respectfully submitted,

                                            */s/ Jonathan A. Wiener*
                                            _____

                                            ROB BONTA
                                              *Attorney General of California*
                                            ANNADEL A. ALMENDRAS
                                              *Senior Assistant Attorney General*
                                            MYUNG J. PARK
                                              *Supervising Deputy Attorney General*
                                            JONATHAN A. WIENER
                                            BENJAMIN P. LEMPERT
                                              *Deputy Attorneys General*

                                            *Attorneys for Amicus Curiae California Air Resources Board*

17

**STATEMENT OF RELATED CASES**

The California Air Resources Board is not aware of any related cases, as defined by Ninth Circuit Rule 28-2.6, that are currently pending in this Court and are not already consolidated here.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-5129

I am the attorney or self-represented party.

**This brief contains** 3,818 **words,** including [          ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　☐ it is a joint brief submitted by separately represented parties.
　☐ a party or parties are filing a single brief in response to multiple briefs.
　☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Jonathan A. Wiener   **Date** 10/29/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*