No. 25-5129

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RINNAI AMERICA CORPORATION et al.,

*Plaintiffs–Appellants*,

v.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,

*Defendant–Appellee*,

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE et al.,

*Intervenor–Defendants–Appellees.*

On Appeal from the United States District Court
for the Central District of California, No. 2:24-cv-10482-PA-PD
Hon. Percy Anderson, District Judge

## PLAINTIFFS–APPELLANTS' REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL

### RELIEF NEEDED BY JANUARY 1, 2026

Courtland L. Reichman
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065

Brian C. Baran
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006

Sarah O. Jorgensen
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 W. Peachtree St., Suite 2300
Atlanta, GA 30309
(650) 623-1401
sjorgensen@reichmanjorgensen.com

*Counsel for Plaintiffs–Appellants Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

(*Additional parties and counsel listed on inside cover*)

John J. Davis, Jr.
Luke Dowling
MCCRACKEN, STEMERMAN &
  HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200
jjdavis@msh.law

*Counsel for Plaintiff–Appellant
California State Pipe Trades
Council*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Plaintiff–Appellant
Restaurant Law Center*

Matthew P. Gelfand
CALIFORNIANS FOR HOMEOWNERSHIP,
  INC.
525 S. Virgil Ave.
Los Angeles, CA 90020
(213) 739-8206
matt@caforhomes.org

*Counsel for Plaintiff–Appellant
Californians for Homeownership, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

  I.  Intervenors Misstate the Legal Standard...........................................2

  II. An Injunction Pending Appeal Is Warranted. ...................................3

    A. Plaintiffs are likely to succeed on the merits. ...............................3

    B. Plaintiffs face irreparable harm while this appeal is pending. .........8

      1.  Plaintiffs have provided specific evidence of concrete, irreparable harm.........................................................................8

      2.  The argument that an injunction would not help Plaintiffs misunderstands the record....................................................12

      3.  Plaintiffs did not delay; they sought interim relief only when needed...........................................................................13

    C. The balance of equities and public interest favor relief. .............15

    CONCLUSION ................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ............................................................ 11

*Am. Trucking Ass'ns v. City of Los Angeles,*
  569 U.S. 641 (2013) ....................................................................... 4-5

*Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.,*
  622 F.3d 1094 (9th Cir. 2010) .............................................................. 7

*Bucklew v. Precythe,*
  139 S. Ct. 1112 (2019) ...................................................................... 5

*California Restaurant Ass'n v. City of Berkeley,*
  89 F.4th 1094 (9th Cir. 2024) ...................................................... *passim*

*Diamond Alternative Energy, LLC v. EPA,*
  145 S. Ct. 2121 (2025) ..................................................................... 12

*Doe v. San Diego Unified Sch. Dist.,*
  19 F.4th 1173 (9th Cir. 2021) ............................................................ 2-3

*Earth Island Inst. v. Carlton,*
  626 F.3d 462 (9th Cir. 2010) ............................................................... 16

*Hillman v. Maretta,*
  569 U.S. 483 (2013) .......................................................................... 6

*N.Y. State Dep't of Soc. Servs. v. Dublino,*
  413 U.S. 405 (1973) .......................................................................... 7

*Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regul. Comm'n,*
  479 U.S. 1312 (1986) ....................................................................... 2-3

*Rowe v. N.H. Motor Transp. Ass'n,*
  552 U.S. 364 (2008) .......................................................................... 6

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs,*
   472 F.3d 1097 (9th Cir. 2006) ........................................................ 2-3

*U.S. Philips Corp. v. KBC Bank N.V.,*
   590 F.3d 1091 (9th Cir. 2010) ......................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ..................................................................... 3, 16

## Statutes

42 U.S.C. §6297(c) ............................................................................ 6

42 U.S.C. §6297(c)(1)-(9), (d)-(f) ....................................................... 6

42 U.S.C. §7410(a)(2)(E)(i) ................................................................ 7

## Regulations

S. Coast AQMD R. 1146.2 .............................................................. 17

S. Coast AQMD R. 1146.2(b) ............................................................ 4

S. Coast AQMD R. 1146.2(d)(2) ....................................................... 9

## Other Authorities

S. Rep. No. 100-6 (1987) ................................................................. 17

## INTRODUCTION

The District and Intervenors offer no good reason not to maintain the status quo pending the resolution of this expedited appeal. Instead, they double down on the same faulty arguments the district court embraced. Ultimately, their responses are a case study in cognitive dissonance: They claim that an injunction wouldn't do anything anyway while vigorously opposing it and warning that it would cause them devastating harm. And they try to diminish Plaintiffs' harm by emphasizing that just part of the rule will take effect during this appeal—only to reverse course and rely on the decades-long effect of the whole rule when weighing their own asserted harms. This Court should reject those arguments and enjoin the District from enforcing its zero-$NO_x$ limits pending appeal.

All four requirements for relief are met. First, neither the District nor Intervenors (together, "Defendants") can distinguish this Court's decision in *California Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), making Plaintiffs likely to prevail.

Next, Defendants' scattershot complaints about Plaintiffs' evidence of harm does not overcome the sworn declarations detailing concrete, serious, and irreversible injuries Plaintiffs will suffer absent an injunction. It is not speculative that Rinnai and Noritz, recognized leaders in this market, will have sales of their gas tankless water heaters and boilers for new construction eliminated come January 1. That will have ripple effects on distributors, contractors, customers, and

1

employees. Small plumbing businesses will lose substantial work and struggle to reorganize. And union workers will see work opportunities and training programs decline. These serious harms cannot be unwound—and monetary damages are not available.

Finally, the balance of harms and public interest merge and together favor maintaining the status quo. Plaintiffs' irreparable injuries from the rule's first phase far outweigh any harm to Defendants from a short delay in its effective date; the rule's early stages impose significant real-world burdens while contributing little to the District's emissions goals. And Congress has made clear where the public interest lies: in preventing a patchwork of state and local regulations interfering with its nationally uniform energy policy. This Court should grant the motion.

## ARGUMENT

## I. Intervenors Misstate the Legal Standard.

Intervenors start by trying to raise the bar for interim relief. They insist that this Court's sliding-scale approach does not apply to injunctions pending appeal, and they suggest that the merits must be "indisputably clear." Intervenors.Resp.16 (quoting *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regul. Comm'n*, 479 U.S. 1312, 1312 (1986) (Scalia, J., in chambers)); *accord id.* at 10-11. Neither is correct.

Settled precedent confirms that the sliding-scale approach applies to injunctions pending appeal. *See, e.g.*, *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021) (cited at Intervenors.Resp.10); *Se.*

*Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). The heightened standard for a single Justice to "grant[] judicial intervention that has been withheld by lower courts" is beside the point. *See Ohio Citizens*, 479 U.S. at 1312. *Contra* Intervenors.Resp.16 (citing nothing else for this point). And even without the sliding scale, the question is simply whether the movant "is likely to succeed on the merits," *Doe*, 19 F.4th at 1176 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008))—not whether success is "indisputably clear," Intervenors.Resp.16.

The District acknowledges the correct sliding-scale test but pretends that Plaintiffs argued "only 'serious questions' on the merits" and thus must make a heightened showing on the balance of harms. District.Resp.9-10 & n.2. That is false. Plaintiffs argued that they "are likely to prevail on the merits." Mot.2; Mot.7-13 ("Plaintiffs Have a Likelihood of Success on the Merits.").

## II. An Injunction Pending Appeal Is Warranted.

### A. Plaintiffs are likely to succeed on the merits.

**1.** Defendants cannot distinguish this case from *California Restaurant Ass'n*. Take the District's own description of why Berkeley's gas piping ban was preempted: "because it inevitably set at zero the quantity of gas that covered appliances could use." District.Resp.10 (citing *Cal. Rest.*, 89 F.4th at 1101-02). So too does the District's zero-$NO_x$ rule. As the district court found, the rule effectively bans gas

3

appliances by banning the combustion necessary to use them. ER-13. Banning combustion sets their maximum energy use at zero just as inevitably as banning the piping necessary to use them.

That the District's rule does not expressly say "how much gas an appliance may use or how efficiently it must operate," District.Resp.10, makes no difference. Neither did Berkeley's ordinance, which did not even explicitly regulate appliances. *Cal. Rest.*, 89 F.4th at 1098-99, 1102. Nor is the rule "agnostic" about "what fuel [an appliance] consumes" to reach an emissions target. *Contra* Intervenors.Resp.12. The rule covers only appliances "fired with, or designed to be fired with, natural gas." S. Coast AQMD R. 1146.2(b). And it is undisputed that "[n]o gas appliance can operate via combustion without producing some $NO_x$" and thus exceeding the District's zero-$NO_x$ limit. ER-37 ¶3.

The rule's effect on energy use is anything but "incidental." *Contra* District.Resp.10-11. Just like Berkeley's ban, its purpose and effect is to categorically prohibit gas appliances, ER-13, preventing them from using any energy. *See Cal. Rest.*, 89 F.4th at 1102 ("an ordinance that effectively eliminates the 'use' of an energy source" is preempted). The District admits that its rule "targets appliances." ER-76. That it operates on an inevitable byproduct of their use of energy rather than directly setting energy use makes no more difference than did Berkeley's nominal regulation of piping. "[S]hifting the[] regulatory focus" like this is not a way around preemption. *Am. Trucking Ass'ns v. City of Los*

*Angeles*, 569 U.S. 641, 652 (2013).  Both approaches "cut[] to the heart of what Congress sought to prevent."  *Cal. Rest.*, 89 F.4th at 1119 (Baker, J., concurring).

It does not follow that the "non-zero emission standards that" have been around "for decades" are preempted.  *Contra* District.Resp.11.  Gas appliances have long coexisted with those regulations; that is why there are more than a million units covered by the rule.  ER-39 ¶5.  Perhaps designing appliances to comply with those regulations affected their energy use, or perhaps not; the District provides no evidence.  Regardless, any increase or decrease in energy use was likely incidental—a byproduct of the design choices made to reduce emissions.  To be clear, what makes the difference here is not the number zero, but that the District's new limit is set so low as to inevitably prevent gas appliances from using any energy.  That the District picked zero just simplifies the facts by leaving no doubt that its rule is an effective ban, as the district court recognized, ER-13.

**2.**  Unable to distinguish this Court's reasoning, Defendants cast *California Restaurant Ass'n* as a "very narrow" decision confined to its facts.  District.Resp.10-11; Intervenors.Resp.15.  That is not how binding precedent works.  "[J]ust as binding as this [Court's] holding is the reasoning underlying it."  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019).  That this Court resolved only the case in front of it in *California Restaurant Ass'n* is no excuse for ignoring the thorough analysis of text

and context that got it there. *See Cal. Rest.*, 89 F.4th at 1100-07 (explaining 42 U.S.C. §6297(c)'s breadth and rejecting multiple narrower readings). Holding only that §6297(c) reached Berkeley's building code did not foreclose the possibility that the same reasoning would reach other attempts to reach the same preempted end. *Contra* Intervenors.Resp.15.

**3.** The Clean Air Act ("CAA") does not excuse the District's rule from preemption. *Contra* District.Resp.11-12; Intervenors.Resp.14-16. Congress carved out several specific exceptions from EPCA's broad rule of preemption, *see* §6297(c)(1)-(9), (d)-(f), but even though it was well aware of the CAA and states' role in regulating emissions, it did not exempt emissions regulations. Courts cannot just write in an exception Congress chose to leave out. *See Hillman v. Maretta*, 569 U.S. 483, 496 (2013); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373-74 (2008).

Nobody is suggesting that EPCA preempts "the very air pollution regulations" the CAA calls for. *Contra* District.Resp.12; Intervenors.Resp.14. Rather, EPCA preempts those regulations (whether emissions regulations, building codes, or anything else) that "concern[]" covered appliances' "energy efficiency, energy use, or water use." §6297(c). Emissions regulations that do not fit that bill are not preempted. EPCA no more "undermin[es]" the CAA than any other general restriction on state action. *Contra* Intervenors.Resp.16.

6

Nor does it matter how necessary or helpful to achieving air quality standards the District's rule may be. *Contra* District.Resp.11. The CAA nowhere authorizes states to violate other federal laws. Instead, it requires states to provide assurances that their regulations are "not prohibited by any provision of Federal or State law." 42 U.S.C. §7410(a)(2)(E)(i).

Finally, binding precedent refutes Intervenors' argument that CAA federal–state coordination raises the bar for preemption by a separate federal law. *Contra* Intervenors.Resp.16. Express preemption turns on the text, read "without any presumptive thumb on the scale." *Cal. Rest.*, 89 F.4th at 1101 (attribution omitted). The case Intervenors rely on is about implied preemption and is thus irrelevant here. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 413-23 (1973). Moreover, this Court has already rejected the argument that an analysis of an express preemption provision must account for states' role in air quality regulation, stating that it was "irrelevant that the Clean Air Act reserves certain regulatory authority to the states and localities." *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010) (holding a District rule preempted by ICCTA).

In sum, this case is squarely controlled by *California Restaurant Ass'n*, and so Plaintiffs are likely to prevail.

7

### B. Plaintiffs face irreparable harm while this appeal is pending.

#### 1. Plaintiffs have provided specific evidence of concrete, irreparable harm.

Plaintiffs provided detailed declarations explaining the many concrete harms they will suffer if Phase I of the zero-$NO_x$ rule takes effect during the appeal. Defendants do not dispute that the *kinds* of harm Plaintiffs identify are irreparable, including the economic harms for which Plaintiffs have no adequate remedy at law. Mot.13-14.[1]

Instead, Defendants mount a kitchen-sink attack on whether Plaintiffs will suffer these harms pending appeal, relying on cherrypicked statements from the declarations and ignoring the rest of the evidence. Nothing they try can overcome the simple truth: Plaintiffs have proved concrete, specific harms tied to Phase I, including at the very least the millions of dollars in sales Rinnai and Noritz will lose in 2026 for which they cannot recover damages. Mot.14-16 (collecting evidence); Mot.Ex.1 ¶6 ($4 million for Noritz); Mot.Ex.2 ¶7 ($8.5 million for Rinnai).

**a.** Right off the bat, the District resorts to misdirection in an attempt to show that Plaintiffs' harms are "attributable to later stages of the Rule," not Phase I. District.Resp.13-14. The District implies that Phase I will not ban gas tankless products, *id.*, but that is just not true: Gas tankless water heaters up to 200,000 Btu/hr will be banned from new

---

[1] The District asserts in passing the Plaintiffs' economic harm will be "temporary," District.Resp.23, but does not explain how that could be so unless the District plans to compensate Plaintiffs despite the lack of a damages cause of action.

construction starting January 1, 2026. Rule 1146.2(d)(2) tbls.2-3. Next, the District alters a quotation to pass it off as an assertion that "all new constructions will be built … without any gas infrastructure at all" once Phase I takes effect. District.Resp.13 (District's ellipsis). The real quotation: Once the rule takes effect, "all new constructions will be built *without the covered gas appliances, or even* without any gas infrastructure at all." Mot.Ex.5 ¶6 (emphasis added).

The District emphasizes that the rule will have "limited reach over the next year" compared to its full implementation and that some of the harms Plaintiffs identify will happen later in the rule's "gradual roll-out." District.Resp.14. That the rule will do even more harm later is no reason to doubt that it will do serious harm now.

Even if the District were right to discard all the other harms, it seems to concede that Rinnai and Noritz will lose sales. *See* District.Resp.15-16. The District does not dispute that the losses in 2026 for sales for new construction will run into the millions or that sales lost now "translate to additional lost sales for replacement," Mot.Ex.1 ¶9. Perhaps that is why the District suggests that Rinnai and Noritz are too big to deserve relief. *See* District.Resp.15-16. The District cites no authority for the notion that it can harm Plaintiffs as much as it wants so long as they can stay in business elsewhere. And of course, that ignores all the smaller businesses and individual workers facing irreparable harm. Mot.15 (discussing Mot.Exs.3-5).

9

Next, the District suggests that Rinnai and Noritz can just make up lost market share by switching to electric appliances, District.Resp.15. The record says otherwise. As explained, Rinnai and Noritz are market leaders in the gas tankless water heaters banned by Phase I, but not in heat pumps, where they are newer entrants competing with major incumbents. Mot.15-16; Mot.Ex.1 ¶13; Mot.Ex.2 ¶12. Even if they could swiftly pivot, that would not negate the irreparable harm of being forced to abandon their established market and rework their business models (including by having to retool assembly lines, retrain staff, reorganize supply and distribution chains, and rebuild market reputation).

Forced to concede that Rinnai and Noritz will lose goodwill, the District dismisses that harm on the grounds that everyone else whose products are banned will also be harmed and all market participants would be affected equally. District.Resp.16 ("all sellers of covered appliances"). Not so. That others may be harmed as well does not refute harm to Plaintiffs. And not all market participants are equally situated (and therefore equally affected), as the District presumes. Rinnai and Noritz compete not just among sellers of gas tankless water heaters but also with sellers of gas storage and electric heat pump water heaters— indeed, the point of the rule is to force the market from one type of water heater to others, so Rinnai and Noritz are harmed more by a shift to products in which they lack a competitive advantage. *E.g.*, Mot.Ex.2 ¶12.

10

Finally, the District has no answer to the irreparable harm of being forced to comply with a preempted law other than to point back to its merits arguments. District.Resp.17. There is thus no dispute that if Plaintiffs are likely to succeed on the merits, they are also likely to suffer this irreparable constitutional harm. *See* Mot.16; *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).

**b.** Intervenors have little to add. Like the District, they ignore the immediate Phase I harms in favor of arguing that other harms will come later. Intervenors.Resp.17-18. They insist that new appliances won't need servicing, repairs, or replacement "in the months this appeal is pending," missing the point that lost sales now will translate to lost opportunities for service, repair, and replacement down the road. Intervenors.Resp.18. And they dismiss Rinnai's and Noritz's harms as "difficult to follow." Intervenors.Resp.19-20. What's hard to follow about losing millions in sales of their leading gas tankless products in 2026?

**c.** In the end, Defendants' repeated insistence that Phase I reaches only a small subset of the appliances the rule will ultimately ban does nothing to rebut the immediate harm from Phase I on the people and companies who rely on those appliances for a large part of their business. But it does a great deal to undermine Defendants' claims of devastating environmental harm from a short delay. By the District's own math, Phase I is a drop in the emissions-reduction bucket, accounting for just 0.3% of its target over twelve years. Mot.19. And the District assumes

11

(albeit without explanation or support) that "only 10 percent" of affected appliances will be for new buildings, only some of which will be installed during the appeal. District.Resp.14; *see* District.Resp.Ex.B at 291 (stating assumptions for the compliance-costs analysis). If true, that suggests less than 0.03% of the benefit to the District is on the table here. District.Resp.14.

### 2. The argument that an injunction would not help Plaintiffs misunderstands the record.

Defendants next turn to the argument that an injunction would not do anything anyway because the upcoming ban "has already been triggering the market changes" harming Plaintiffs, which "will continue" despite an injunction. District.Resp.17-19; *accord* Intervenors.Resp.19. "[T]hat is an odd argument for [Defendants] to advance. After all, if [enjoining] the [rule] would change nothing in the market, why are [they] … defending the" rule and planning to enforce it? *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2137 (2025) (holding that fuel producers had standing to challenge California's vehicle emissions standards and rejecting the claim that invalidating them would make no difference because the market would shift anyway). The rule's "whole point" is to prohibit appliances that would otherwise be installed. *Id.* And Defendants "are presumably defending [the rule] because they think" it will "make a difference in the market." *Id.*

12

Regardless, Defendants' logic is faulty. It is entirely possible for the rule to have both anticipatory effects now and further effects when implemented. And that, the record confirms, is the reality here. That some damage is already done is no reason to allow more irreversible damage. Basic economic logic suggests that the closer in time to enforcement, the greater the magnitude of the anticipatory effects. And of course, once the ban takes effect, anticipation will become compulsion.

### 3. Plaintiffs did not delay; they sought interim relief only when needed.

What Defendants call delay is more accurately described as prudence. *Contra* District.Resp.19-20; Intervenors.Resp.20-21. Plaintiffs sought relief long before the rule's effective date and refrained from prematurely requesting interim relief.

Plaintiffs sued in December 2024, more than a year before the rule's effective date. ER-249. The district court promptly set a schedule that would have resolved this case by September 2025 at the latest. D.Ct.Dkt.40 at 2. That led to final judgment in July, with five months to spare. ER-6-7. So any preliminary injunction would have dissolved long before the effective date and thus done no work at all. *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093-94 (9th Cir. 2010) (preliminary injunction "dissolves *ipso facto* when a final judgment is entered").

13

After the district court ruled, Plaintiffs appealed on August 8, weeks before the deadline. ER-236-39. Plaintiffs initiated the mandatory meet-and-confer process the same day, met with Defendants the next week, and moved in the district court for an injunction pending appeal on August 27, D.Ct.Dkt.85—less than three weeks after the notice of appeal, just nine days after Defendants confirmed their positions, and four months before the effective date. Plaintiffs then filed this motion within a week of the district court's decision and with two months to spare.

That is not what delay looks like. Indeed, when seeking more time to respond to this motion, Defendants emphasized that even with their extension, this "motion will be fully briefed … more than two months in advance of the date by which [Plaintiffs] request relief," leaving "the Court ample time to decide." Dkt.28.1 ¶4.

So Defendants are left to suggest that Plaintiffs' decision not to seek a preliminary injunction undercuts their harm. Despite inviting it below, Defendants mount no real defense of the district court's mistaken view that Plaintiffs needed to have requested a pointless preliminary injunction that would have expired long before the effective date (and thus before the injunction had any effect). D.Ct.Dkt.92 at 6. Instead, they pivot to arguing that Plaintiffs should have sought a preliminary injunction to somehow prevent the harm they are already suffering based on the market's anticipation of the rule. District.Resp.20; Intervenors.20-21. That makes no sense. The district court could not

have enjoined market anticipation; all it could have done was order the District not to enforce its rule pending final judgment, which was already scheduled to happen well ahead of the rule's effective date. Defendants presumably would have argued that a preliminary injunction was premature, and they would have been right. And contrary to Intervenors' assertion, Plaintiffs did "take[] steps to secure relief from" their ongoing injuries, Intervenors.Resp.21: They brought this suit and moved for a permanent injunction. Nothing about the course of this litigation undermines Plaintiffs' evidence of harm or otherwise justifies denying relief.

### C. The balance of equities and public interest favor relief.

After spending pages arguing that the rule's effect during this appeal will be minimal and that an injunction won't do anything anyway, Defendants turn around and argue that the balance of harms favors them because they (and the public) will be severely damaged by any delay. District.Resp.20-23; Intervenors.Resp.21-22. Ignoring the relevant timeframe, they focus on the claimed benefits from the entire rule over the coming decades. *See* District.Resp.21-22 (discussing total emissions from "[a]ppliances covered by the Rule" and total asserted benefits); Intervenors.Resp.21 (totaling benefits "[f]rom 2026 to 2037" but admitting that "only a fraction of those benefits will accrue while this appeal is pending").

15

Beyond that, the District brushes off the actual (minimal) emissions numbers associated with Phase I in 2026, reasoning that any emissions, no matter how slight, cause irreparable harm. District.Resp.22. That misses the point. The question is not whether any harm the District would suffer during the appeal is irreparable—of course environmental harm can be—but how it weighs against the irreparable harm to Plaintiffs. *See, e.g.*, *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (affirming the finding that countervailing interests outweighed asserted environmental injuries); *see also Winter*, 555 U.S. at 24 ("[C]ourts must balance the competing claims of injury … ." (cleaned up)). The District makes no argument that its rule will prevent any substantial amount of $NO_x$ emissions or afford any concrete health benefits during the appeal. And the rule's own timeline underscores that the District did not view the specific effective date as an emergency; it built in a year-and-a-half delay for the start of Phase I.

The reality is that during this expedited appeal's short timeframe, Phase I will provide minimal benefits to the District while causing devastating and irreparable harm to the people and companies who live, work, and do business there. Lost livelihoods, lost revenues, forced reorganization, and damaged relationships cannot be readily repaired. And unlike the District, Plaintiffs have provided specific evidence that these grave injuries are likely to occur during the appeal.

16

Lastly, Defendants have no response to the fact that Congress already had its word on the public interest when it adopted a uniform national energy policy to end "a growing patchwork of differing State regulations." S. Rep. No. 100-6, at 4 (1987). The balance of equities sharply favors Plaintiffs, and the public interest further supports preserving the status quo pending appeal.

## CONCLUSION

This Court should grant Plaintiffs' motion and enjoin enforcement of Rule 1146.2's zero-$NO_x$ limits while this appeal is pending.

17

Dated: October 30, 2025          Respectfully submitted,

                                 */s/ Sarah O. Jorgensen*
Courtland L. Reichman            Courtland L. Reichman
REICHMAN JORGENSEN               Sarah O. Jorgensen
  LEHMAN & FELDBERG LLP          REICHMAN JORGENSEN
100 Marine Parkway, Suite 300      LEHMAN & FELDBERG LLP
Redwood Shores, CA 94605         1201 W. Peachtree St., Suite 2300
                                 Atlanta, GA 30309
Brian C. Baran                   (650) 623-1401
REICHMAN JORGENSEN               sjorgensen@reichmanjorgensen.com
  LEHMAN & FELDBERG LLP
1909 K St. NW, Suite 800
Washington, DC 20006

*Counsel for Plaintiffs–Appellants Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, and Plumbing-Heating-Cooling Contractors of California*

John J. Davis, Jr.               Matthew P. Gelfand
Luke Dowling                     CALIFORNIANS FOR
McCRACKEN, STEMERMAN &             HOMEOWNERSHIP, INC.
  HOLSBERRY LLP                  525 S. Virgil Ave.
475 – 14th Street, Suite 1200    Los Angeles, CA 90020
Oakland, CA 94612                (213) 739-8206
(415) 597-7200                   matt@caforhomes.org
jjdavis@msh.law
                                 *Counsel for Plaintiff–Appellant*
*Counsel for Plaintiff–Appellant*    *Californians for Homeownership,*
*California State Pipe Trades Council Inc.*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Plaintiff–Appellant*
*Restaurant Law Center*

18

## CERTIFICATE OF COMPLIANCE

This motion has been prepared using a proportionally spaced typeface, includes 3,820 words, and is accompanied by a motion to file a longer reply.

I certify under Circuit Rule 25-5(f) that all parties on whose behalf this motion is submitted concur in its content.

Dated: October 30, 2025          _/s/ Sarah O. Jorgensen_
                                 Sarah O. Jorgensen