No. 25-5129

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

RINNAI AMERICA CORPORATION et al.,

*Plaintiffs–Appellants*,

v.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,

*Defendant–Appellee*,

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE et al.,

*Intervenor–Defendants–Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:24-cv-10482-PA-PD
Hon. Percy Anderson, District Judge

## PLAINTIFFS–APPELLANTS' REPLY BRIEF

Courtland L. Reichman
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065

Brian C. Baran
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006

Sarah O. Jorgensen
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
1201 W. Peachtree St., Suite 2300
Atlanta, GA 30309
(650) 623-1401
sjorgensen@reichmanjorgensen.com

*Counsel for Appellants Rinnai America Corp., Noritz America Corp.,
National Association of Home Builders, California Manufacturers &
Technology Association, California Restaurant Association,
California Hotel & Lodging Association, California Apartment
Association, Plumbing-Heating-Cooling Contractors of California,
and Restaurant Law Center*

*(Additional parties and counsel listed on inside cover)*

John J. Davis, Jr.
Luke Dowling
MCCRACKEN, STEMERMAN &
  HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200
jjdavis@msh.law

*Counsel for Appellant California
State Pipe Trades Council*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Appellant Restaurant
Law Center*

Matthew P. Gelfand
CALIFORNIANS FOR
  HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, CA 90020
(213) 739-8206
matt@caforhomes.org

*Counsel for Appellant Californians
for Homeownership, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................1

ARGUMENT ....................................................................3

I.   Binding Precedent Establishes That EPCA Preempts the
     District's Effective Ban on Covered Gas Appliances. ......................3

     A.  *CRA* is indistinguishable. ........................................3

         1.  The District's NO$_x$ ban is no less a regulation of gas
             appliances' energy use than Berkeley's piping ban. ..............3

         2.  Defendants fail to rehabilitate the district court's
             purported distinctions. ........................................9

         3.  There is no basis for confining *CRA* to its facts. .................14

     B.  EPCA's plain text preempts emissions regulations that, like
         the District's, concern covered appliances' energy use.............16

     C.  Unlike ordinary emissions regulations, the zero-NO$_x$ rule's
         effect on energy use is anything but incidental.......................20

II.  The Clean Air Act Does Not Immunize the District's Rule............25

     A.  The District's intent to satisfy Clean Air Act obligations does
         not allow it to avoid EPCA.........................................26

     B.  Defendants' demand for a clear statement that EPCA
         preempts CAA-motivated emissions regulations would
         rewrite the statute to add an exception Congress left out........30

III. The District's Fallback Positions Fare No Better. ..........................33

     A.  The District misapplies the standard for facial challenges. .....33

     B.  There is no basis to remand when it is undisputed that the
         rule bans gas-fired appliances.....................................36

CONCLUSION .................................................................38

CIRCUIT RULE 25-5(f) CERTIFICATION.............................................39

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adkins v. Mireles,*
  526 F.3d 531 (9th Cir. 2008)................................................................. 7

*Air Conditioning & Refrigeration Inst. v.
  Energy Res. Conservation & Dev. Comm'n,*
  410 F.3d 492 (9th Cir. 2005)............................................................... 33

*Am. Apparel & Footwear Ass'n v. Baden,*
  107 F.4th 934 (9th Cir. 2024) ............................................................. 35

*Am. Express Co. v. Italian Colors Rest.,*
  570 U.S. 228 (2013)............................................................................ 29

*Am. Trucking Ass'ns v. City of Los Angeles,*
  569 U.S. 641 (2013)........................................................................ 7, 21

*Association of American Railroads
  v. South Coast Air Quality Management District,*
  622 F.3d 1094 (9th Cir. 2010).......................................................28-29

*Bucklew v. Precythe,*
  139 S. Ct. 1112 (2019).........................................................................15

*Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A,*
  519 U.S. 316 (1997).....................................................................17, 31-32

*California Restaurant Ass'n v. City of Berkeley* (*CRA*),
  89 F.4th 1094 (9th Cir. 2024) ...................................................... passim

*Cent. Valley Chrysler-Jeep, Inc. v. Goldstene,*
  529 F. Supp. 2d 1151 (E.D. Cal. 2007) .............................................. 23

*Citizens United v. FEC,*
  558 U.S. 310 (2010)............................................................................ 35

*Gobeille v. Liberty Mut. Ins. Co.,*
  577 U.S. 312 (2016)............................................................................ 21

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
    508 F. Supp. 2d 295 (D. Vt. 2007) ...................................................... 23

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010) ........................................................................... 34

*McShannock v. JP Morgan Chase Bank NA*,
    976 F.3d 881 (9th Cir. 2020)................................................................ 7

*Montana Medical Ass'n v. Knudsen*,
    119 F.4th 618 (9th Cir. 2024) ........................................................... 35

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ..................................................................... 18, 22

*Nat'l Meat Ass'n v. Harris*,
    565 U.S. 452 (2012) ............................................ 17, 20, 22, 24

*Project Veritas v. Schmidt*,
    125 F.4th 929 (9th Cir. 2025) ........................................................... 34

*Regents of the Univ. of Cal. v. Shalala*,
    82 F.3d 291 (9th Cir. 1996).............................................................. 15

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008).............................................18-19, 21-22, 25, 31

*Sackett v. EPA*,
    143 S. Ct. 1322 (2023) ..................................................................... 32

*United States v. Sup. Ct. of N.M.*,
    839 F.3d 888 (10th Cir. 2016)......................................................34-35

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ......................................................................... 34

*Wos v. E.M.A. ex rel. Johnson*,
    568 U.S. 627 (2013) ..................................................................... 8, 16

## Constitutional Provisions

U.S. Const. art.VI, cl.2 ............................................................................. 26

U.S. Const. amend. XIV, §1........................................................................ 26

**Statutes**

42 U.S.C. §1981 ................................................................... 26

Energy Policy and Conservation Act of 1975,
  42 U.S.C. §§6201-6422 ............................................. *passim*

  §6292 ............................................................................ 9

  §6294a(b) ................................................................... 18

  §6297(a)(2)(A) ................................................... 16, 30-31

  §6297(c) ............................................................... *passim*

  §6297(c)-(f) .............................................................. 30

42 U.S.C. §7410 ................................................................. 27

42 U.S.C. §7410(a)(2)(E)(i) .................................. 25-26, 29-30

49 U.S.C. §32909(f) ........................................................... 23

Cal. Health & Safety Code §18909(a) ................................ 10

**Ordinances**

Berkeley, Cal., Mun. Code §12.80.010(A) (repealed) ............... 6

Berkeley, Cal., Mun. Code §12.80.010(C) (repealed) ............... 6

**Rules**

S. Coast AQMD R. 1146.2 (2024) ............................... *passim*

  Rule 1146.2(b) .................................................... 5, 8-9

  Rule 1146.2(d)(2) .................................................... 10

S. Coast AQMD R. 1146.2(a) (2018) .................................. 5

**Other Authorities**

Appellee's Brief, *Cal. Rest. Ass'n v. City of Berkeley*,
  89 F.4th 1094 (9th Cir. 2024) (No. 21-16278), Dkt.25 ........ 13

iv

Brief for the United States in Support of Appellee, *Cal. Rest.*
*Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024)
(No. 21-16278), Dkt.33 .......................................................................... 13

Letter from Michael T. Benjamin, Div. Chief, Cal. Air Res. Bd.,
to Cheree Peterson, Acting Reg'l Adm'r, Region 9, U.S. EPA
(Mar. 10, 2025) (EPA-R09-OAR-2024-0417),
https://www.regulations.gov/document/EPA-R09-OAR-2024
-0417-0016 ............................................................................................... 27

Plaintiff-Appellant's Reply Brief, *Cal. Rest. Ass'n v. City of*
*Berkeley*, 89 F.4th 1094 (9th Cir. 2024) (No. 21-16278), Dkt.75 ........... 14

## INTRODUCTION

Defendants and their amici do no better than the district court in attempting to explain away this Court's decision in *California Restaurant Ass'n v. City of Berkeley* (*CRA*), 89 F.4th 1094 (9th Cir. 2024). The District's ban on $NO_x$ emissions is no less a ban on EPCA-covered gas appliances than Berkeley's ban on gas piping was. Both function equally to reduce covered gas appliances' maximum permissible energy use to zero, and so both are preempted.

Defendants throw one purported distinction after another at the wall, but none sticks. Berkeley's ban did not directly regulate the quantity of gas any more than the District's rule. The District's regulation of "gas-fired" appliances is not fuel agnostic. Its motivation to reduce air pollution is not qualitatively different from Berkeley's goal of reducing greenhouse gas emissions. And so on. Plaintiffs' table comparing the district court's attempted distinctions with *CRA* laid bare that the decision below is irreconcilable with binding precedent. Defendants bury their halfhearted responses in the bowels of their briefs. But there's no escaping that the two rules are functionally indistinguishable.

With precedent decisively against them, Defendants are left to insist that regulating emissions is just "fundamentally different" from regulating energy use—to the point that no regulation can concern both. But no distinguishing feature of emissions regulations or textual basis backs that up. Defendants all but concede that their emissions-is-

1

different theory would let Berkeley redo its gas appliance ban—nullifying this Court's decision and making it laughably easy to end-run EPCA.

Recognizing this dilemma, Defendants try a narrower theory: only those emissions regulations motivated by Clean Air Act ("CAA") obligations are protected. City and county rules can fall, but air district regulations are immune—no matter whether they are submitted to and approved by the EPA under the CAA process. That theory has even more problems than the first; all it adds are more indefensible lines between functionally identical regulations, none of which are backed by either statute's text. EPCA nowhere carves out CAA-motivated regulations. And nothing in the CAA bypasses otherwise applicable federal laws like EPCA's preemption provision. Instead, the CAA provides that air quality regulations must not be prohibited by other federal laws—a provision Defendants conspicuously ignore. The statutes are not in conflict.

Finally, Defendants' fears of upsetting the federal-state balance, impliedly repealing the CAA, and endangering wide swaths of regulations are overblown. Plaintiffs seek simply to have the District regulate emissions in compliance with other federal laws. Because the district court failed to heed controlling precedent and hold the District to that obligation, this Court should reverse.

ARGUMENT

## I. Binding Precedent Establishes That EPCA Preempts the District's Effective Ban on Covered Gas Appliances.

This Court as good as resolved this case last year in *CRA*. The same reasoning and interpretation of 42 U.S.C. §6297(c) used there applies here. Opening.Br.27-35.[1]  Under that reading, EPCA's text, structure, and purpose establish that the District's effective ban on covered gas-fired appliances is preempted. Opening.Br.35-51.  And despite all Defendants' and amici's doomsaying, that conclusion would not undermine ordinary emissions regulations. Opening.Br.48-51.

### A. *CRA* is indistinguishable.

Like the district court's, Defendants' attempts to distinguish *CRA* end up echoing it. That is why the District finds itself "adopt[ing]" the dissent from denial of rehearing en banc. District.Br.57-58. And it is presumably why Intervenors relegate *CRA* to the back of their brief. Intervenors.Br.44-51. Nothing in Defendants' grab bag of attempted distinctions justifies allowing the District to ban covered appliances where Berkeley could not.

#### 1. The District's NO$_x$ ban is no less a regulation of gas appliances' energy use than Berkeley's piping ban.

**a.** Defendants' own description of why Berkeley's gas piping ban was preempted confirms that the District's NO$_x$ ban is likewise preempted. As the District puts it, this Court "held that Berkeley's ban on natural

---

[1] Further statutory references are to 42 U.S.C. unless otherwise noted.

3

gas piping in new buildings was preempted because it inevitably set at zero the quantity of gas that covered appliances could use." District.Br.21. The District's rule does exactly that. As the district court found, the rule effectively bans gas appliances by banning the combustion necessary to use them. ER-13. Banning combustion sets gas-fired appliances' maximum energy use at zero just as inevitably as banning gas piping.

Intervenors run right into the same problem. They say the flaw in Berkeley's ordinance was that it "regulated" "the amount of energy a product consumes when it is used in a home or business" because "[i]t operated to—not incidentally, but purposefully and unavoidably— prevent natural gas, a particular type of energy, from being used by a broad swath of [covered] appliances." Intervenors.Br.46. That describes the District's rule just as well.

**b.** None of Defendants' attempted distinctions works any better than the district court's, *see* Opening.Br.31-35.

**"Says nothing about" energy use.** The District first protests that Berkeley "directly regulated the quantity of natural gas that all appliances could use by prohibiting gas infrastructure," whereas its rule "says nothing about how much gas an appliance may use or how efficiently it must operate." District.Br.22, 26-28. That confuses the effect of Berkeley's ordinance with what it said. Consider *CRA*'s description of the pertinent text:

4

> [T]he Ordinance prohibits, with some exceptions, "Natural Gas Infrastructure" in "Newly Constructed Buildings" in the City of Berkeley. "Natural Gas Infrastructure" is defined as "fuel gas piping, other than service pipe, in or in connection with a building, structure or within the property lines of premises extending from the point of delivery at the gas meter … ."

89 F.4th at 1099 (cleaned up). Where does that "say[] [any]thing about the quantity of gas an appliance may use," ER-15-16, or "how efficiently it must operate"? *Contra* District.Br.22.

This Court recognized that Berkeley's ordinance "necessarily regulate[d]" covered appliances' energy use not because the ordinance said so expressly, but because that was its effect. *CRA*, 89 F.4th at 1102.

**"Fuel agnostic."** Intervenors say the District's rule is different because it is "agnostic as to the type of fuel covered equipment consumes." Intervenors.Br.26-27, 47. Amicus NESCAUM even says emission standards "are fuel agnostic, by definition." NESCAUM.Br.29-30.

That would be news to the District, whose rule is expressly limited to appliances "fired with, or designed to be fired with, natural gas"—as it was even before the District converted it from an emission standard to an appliance ban. S. Coast AQMD R. 1146.2(b) (2024); S. Coast AQMD R. 1146.2(a) (2018). And as the district court correctly found, there was no genuine dispute that the rule "effectively bans the use of covered gas fueled boilers and water heaters." ER-13; *see* ER-37-38 ¶¶3-4.

Intervenors' suggestion that gas combustion appliances could comply by "fully captur[ing] or eliminat[ing]" their inevitable $NO_x$ emissions is

too little, too late. *Contra* Intervenors.Br.26-27. Far from disputing below that gas-fired appliances inevitably emit $NO_x$, Intervenors and the District asserted that fact themselves. FER-7 ¶47 ("Appliances emit $NO_x$ when they burn fossil fuels."). Regardless, Intervenors offer no evidence supporting their change of heart, citing only two regulations that have nothing to do with gas appliances' $NO_x$ emissions. Intervenors.Br.26-27 (citing regulations addressing leaks from certain coke oven doors and power plant wastewater discharges).

**Air quality or emissions regulation.** That the zero-$NO_x$ rule's stated purpose is to "reduc[e] air pollution," not improve appliances' efficiency, is no distinction either. *Contra* Intervenors.Br.46-47; District.Br.52. Berkeley likewise set out to reduce "greenhouse gas emissions" and "the environmental and health hazards produced by the consumption and transportation of natural gas." *CRA*, 89 F.4th at 1099 (attribution omitted). Emissions and air quality were central to Berkeley's stated concerns, which included:

- "[N]atural gas combustion … produce[s] significant greenhouse gas emissions that contribute to global warming and climate change." Berkeley, Cal., Mun. Code §12.80.010(A) (repealed).

- "Berkeley residents suffer from asthma and other health conditions associated with poor indoor and outdoor air quality exacerbated by the combustion of natural gas." *Id.* §12.80.010(C).

6

The only arguable difference is that the District's aims also include meeting federal air quality standards, but as explained below, the Clean Air Act does not provide immunity from preemption. *Infra* pp.25-33.

**Supply and demand.** As the *CRA* Court recognized, a long line of cases "make[s] clear" that "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." 89 F.4th at 1107. The District resists this Court's analysis, contending that there is actually only a narrow rule that states cannot "evade preemption of regulation of supply of a product or service by regulating its demand." District.Br.28. That is not how this Court saw it. *CRA*, 89 F.4th at 1107.[2]

Nor is it what the Supreme Court has said. Fair enough, attempts to evade preemption often involve states "shifting their regulatory focus from one company to another in the same supply chain," especially where Congress has preempted regulation of a particular market. *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 652 (2013) (collecting cases). But those cases stand for a broader point: "Preemption is not a matter of semantics"; states cannot "evade the preemptive force of federal law by resorting to creative statutory

---

[2] *See also, e.g.*, *McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 893-94 (9th Cir. 2020) (rejecting "end run[s] around" preemption of regulations on federal savings associations); *Adkins v. Mireles*, 526 F.3d 531, 540 n.4 (9th Cir. 2008) ("artful[] pleading" cannot "escape federal labor law preemption" (cleaned up)).

interpretation or description at odds with the statute's intended operation and effect." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013). Rather, "a proper analysis requires consideration of what the state law in fact does." *Id.* at 637.

Regardless, the District's attempt to shoehorn Berkeley's ban into some special supply-and-demand rule logically dooms the District's rule too. The District says Berkeley could not "regulate[] the *supply* of gas (energy) to appliances" to evade preemption of regulations on "appliances' *demand* for it." District.Br.28. If regulating demand is what's preempted, then the District's rule goes down: By banning gas appliances' inevitable emissions, the District zeroed out their energy demand.

The District relegates this Court's concern about end-running preemption of direct bans to a footnote. District.Br.35 n.7. That is because it has no viable answer. It says a direct ban would "directly target[] the type and quantity of energy that covered appliances may use." *Id.* Not necessarily. All it would need to do is prohibit targeted appliances' installation or use; there would be no need to mention energy. Even so, the District's rule expressly identifies "natural gas" as the type of energy at issue, *see* Rule 1146.2(b), and restricts the quantity to zero just as effectively as—and no more indirectly than—Berkeley's ban.

**Technological advances.** Intervenors speculate that advances in fuel cell technology might someday make the zero-$NO_x$ rule's effective

ban "evaporate," unlike Berkeley's permanent ban. Intervenors.Br.46-47. Nothing in *CRA* or EPCA hints that tomorrow's hypothetical technology affects preemption today. Regardless, the argument misunderstands EPCA, the District's rule, and the record. Fuel cells are not EPCA-covered products. §6292. Nor are they covered by the District's rule; they are not gas-"fired." Rule 1146.2(b). And they could not comply anyway because they undisputedly emit "some $NO_x$." ER-88; SER-82. In short, fuel cells have nothing to do with this case. EPCA preempts the District's rule because it bans covered appliances, not because it bans any use of gas.

### 2. Defendants fail to rehabilitate the district court's purported distinctions.

Defendants' attempt to bolster the district court's distinctions winds up spotlighting their flaws. As Plaintiffs' table illustrated, every purported distinction the district court drew was expressly considered and rejected by this Court, unsuccessfully advanced in the dissent from denial of rehearing en banc, or equally true of Berkeley's ban—and often all three. Opening.Br.31-35.

**a.** The District buries its response in the back of its brief—and even then, it tries forfeiture first. District.Br.52-54. The District invites this Court to ignore the table because "Plaintiffs fail to explain" it. District.Br.52. To the contrary, Plaintiffs explained exactly what the

9

table shows.  Opening.Br.31-35.  Besides, the similarities speak for themselves.  Opening.Br.32-33.

Next, the District complains that Plaintiffs took "isolated phrases … out of context."  District.Br.52.  In fact, Plaintiffs reproduced the district court's entire paragraph of attempted distinctions and addressed each one.  Opening.Br.31-33.

**b.**  When the District finally gets to the substance, it has no viable response.  Take each attempt in turn.

**i.**  The district insists that its rule is "a regulation adopted to reduce pollutant emissions," "not a building code."  District.Br.53.  But Berkeley's ban was a building code in effect, not form; it was part of the city's health and safety code.  Opening.Br.32.  And as this Court recognized, Berkeley's stated purposes included addressing greenhouse gas emissions and associated "environmental and health hazards."  *CRA*, 89 F.4th at 1099 (attribution omitted).  The "building code" description fit because Berkeley pursued its objectives by regulating what could be installed in a building—much like the District did here.  *See id.*; Rule 1146.2(d)(2) (prohibiting installation of noncompliant appliances). Indeed, both the District's and Berkeley's regulations meet California's definition of a "building standard."  Cal. Health & Safety Code §18909(a) ("any rule, regulation, order, or other requirement … that specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement,

10

repair, or rehabilitation of a building, … *including fixtures therein* … ." (emphasis added)).  That the District's emissions reductions are meant "to attain state and federal air quality standards," District.Br.53, makes no difference.  *Infra* pp.25-33.

**ii.**  Next, the District declares "unrelated" the district court's attempt to distinguish the zero-$NO_x$ rule as "say[ing] nothing about the quantity of gas an appliance may use," ER-15-16, and Berkeley's rejected argument that its ordinance did not regulate the quantity of gas either, *CRA*, 89 F.4th at 1102.  Saying the arguments are unrelated does not make it so.  Berkeley's ban did not expressly address the quantity of gas appliances may use; instead, both rules take "a more circuitous route to the same result," *CRA*, 89 F.4th at 1098.  The same goes for the District's insistence that its rule, unlike Berkeley's, "does not require a quantity of 'zero' natural gas," District.Br.53.

**iii.** Also "unrelated," the District says, are the district court's view that the zero-$NO_x$ rule does not "address[]" appliances' "energy use," ER-15-16, and *CRA*'s conclusion that a regulation "effectively eliminat[ing] the 'use' of an energy source" is a "regulation on 'energy use,'" 89 F.4th at 1102.  The relationship is straightforward:  This Court's conclusion refutes the district court's contention.  The zero-$NO_x$ rule slots directly into the Court's description of a regulation concerning energy use.

**iv.** The District next asserts that "the district court was not adopting the dissental's reasoning" when it echoed the dissental's view that

11

Berkeley's regulation did not concern energy use because the ban did not require more efficient appliances. District.Br.53; *see* ER-16; *CRA*, 89 F.4th at 1126 (Friedland, J., dissenting from the denial of rehearing en banc). That dodges the point. Berkeley's ban, just like the District's rule, did not "depend on an appliance's efficiency or energy use," ER-16.

**v.** Forced to concede that Berkeley's ban and its rule have "some overlapping goals" and "some overlapping effects," the District says its "obligation to achieve air quality standards" and choice of a different "mechanism" makes all the difference. District.Br.53-54. But that is not what the district court said. The court thought "emission regulations designed to combat air pollution" were exempt from preemption in general; it did not limit that view to those motivated by any obligation. ER-16. And the District cannot evade preemption by using a different but equally effective "mechanism" to do the same preempted thing: ban gas appliances. *CRA*, 89 F.4th at 1107.

**vi.** The District has no real response to the fact that neither its rule nor Berkeley's "create[s] inconsistent state efficiency standards, require[s] that consumers use appliances with higher efficiency standards, or force[s] manufacturers to meet standards different than those set by the" Department of Energy. ER-16; *CRA*, 89 F.4th at 1099; *id.* at 1126 (Friedland, J., dissenting from the denial of rehearing en banc). It simply dismisses as "irrelevant" the district court's failed attempt at a distinction on this ground. District.Br.54.

**vii.** Finally, in response to this Court's recognition that §6297(c) is concerned with consumers' access to covered appliances, not just manufacturing and design, the District attacks the strawman position that EPCA confers an unconstrained right to use covered appliances "in any circumstance." District.Br.54. Nobody is saying that. Nor would it follow from (or even be supported by) recognizing that EPCA preempts the District's ban on types of covered products.

**c.** Intervenors try a different tack. They admit that many of the district court's purported distinctions were "arguments made by the en banc dissent" or equally true of Berkeley's ban. Intervenors.Br.50-51. But they say that does not matter because the panel did not necessarily reject those arguments. *Id.*

Not so. The points for which the table cites Judge Friedland's opinion were presented to the panel and therefore at least implicitly considered and rejected. For example, Berkeley emphasized its health and safety aims. Appellee's Brief at 7, *CRA*, 89 F.4th 1094 (No. 21-16278), Dkt.25. And its central argument against preemption was that its ban regulated local gas distribution, not "how appliance makers design and build their real products." *Id.* at 12-18, 27-28, 35-37; *accord* Brief for the United States in Support of Appellee at 19, *CRA*, 89 F.4th 1094 (No. 21-16278), Dkt.33 (arguing that Berkeley's ban did not prescribe any energy conservation standard, "require any particular energy use of a covered

13

product," or "attempt to regulate the *quantity* of energy that covered products use during normal operation").[3]

### 3. There is no basis for confining *CRA* to its facts.

Unable to distinguish *CRA*'s reasoning, Defendants embrace the district court's attempt to confine it to its facts.   District.Br.29-32; Intervenors.Br.44-46.  But they muster no better reason to do so.

Like the district court, Defendants latch onto the Court's descriptions of its holding as "narrow."  District.Br.29-32; Intervenors.Br.44-46.  By zooming in on those descriptions, Defendants lose sight of *CRA*'s reasoning and holding alike.  True, the Court was careful to decide only the case before it.  And it called the opinion "narrow" (and then "very narrow") to make clear that it was not disturbing the Natural Gas Act, not holding that Berkeley "must affirmatively make natural gas available everywhere," and not deciding whether EPCA preempts municipalities from regulating utilities' distribution of gas.  *CRA*, 89 F.4th at 1105-06.   None of those qualifications make the Court's reasoning any less applicable or binding here.  This case has nothing to do with regulating gas distribution and everything to do with banning EPCA-covered appliances.

Next, Defendants attempt to limit the decision to building codes by elevating the opinion's amendment history over its reasoning.

---

[3] *See also* Plaintiff-Appellant's Reply Brief at 25 & n.3, *CRA*, 89 F.4th 1094 (No. 21-16278), Dkt.75 (noting that Berkeley's ban was functionally, not formally, a building code).

District.Br.29-32; Intervenors.Br.45.   In the District's view, Plaintiffs' reliance on the amended opinion's reasoning is somehow "ignor[ing] the[] changes" reflected in it, even though Plaintiffs cite only the amended version.  District.Br.30.  That makes no sense.  The amended opinion says what it says—and it nowhere limits EPCA to building codes.  That this Court "*conclude[d] only* that EPCA applies to building codes," *CRA*, 89 F.4th at 1101 (emphasis added), does not mean EPCA *applies only* to building codes.  *Contra* ER-15 & n.7.  The reasoning that led to the Court's holding about Berkeley's building code applies equally to the District's zero-NO$_x$ rule and thus is "just as binding."  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019); Opening.Br.29.

The District suggests that circuit precedent requires confining precedential decisions to their facts whenever they "emphasiz[e] the[ir] limited scope."  District.Br.32.  The one case it cites for that remarkable rule comes nowhere near supporting it.  *See Regents of the Univ. of Cal. v. Shalala*, 82 F.3d 291, 295-96 (9th Cir. 1996) (declining to extend a narrow exception from a U.S. Court of Claims case because its reasoning was distinguishable, the agency's contrary view of its own regulation deserved deference, and circuit precedent pointed the other way).

Finally, Intervenors leave the opinion behind for the briefing.  Intervenors.Br.45-46.  But it is this Court's opinions, not litigants' arguments, that have precedential force.  Besides, nothing the California Restaurant Association said there is inconsistent with Plaintiffs' position

here. Years before zero-$NO_x$ rules existed, the Association said ordinary $NO_x$ limits were unlikely to be preempted, just as Plaintiffs say now. Opening.Br.50. And there remains just as much daylight between preempting appliance bans and creating an unconstrained right to use appliances free of local regulation.

## B. EPCA's plain text preempts emissions regulations that, like the District's, concern covered appliances' energy use.

The District's rule fits comfortably within §6297(c)'s preemptive scope as *CRA* interpreted it: The zero-$NO_x$ rule is a regulation concerning covered appliances' energy use because, by banning gas-fired appliances that emit any amount of an inevitable byproduct of combustion, it effectively caps their energy use at zero. Opening.Br.35-37.

**1.** Defendants protest that the District's rule is an emissions regulation and is therefore categorically beyond §6297(c)'s reach. But for all their insistence on that bright-line rule, Defendants cannot find any textual support for it. *Contra* District.Br.26-28; Intervenors.Br.23-26, 28-33, 53-57. Congress expressly preempted any "law, regulation, or other requirement" that "concern[s]" the preempted subject matter. §6297(a)(2)(A), (c). That encompasses emissions regulations just as readily as any other regulations. Opening.Br.45-48. Congress chose to preempt regulations based on what they "in fact do[]," not based on "semantics" or "framing." *See Wos*, 568 U.S. at 636-37 (attribution omitted).

16

This Court has already rejected Intervenors' lead argument that EPCA preemption is limited to "energy conservation standards" and the like. *Compare CRA*, 89 F.4th at 1105 (refusing to "reconfigure the statute" in this way), *with* Intervenors.Br.23-26 (ignoring this Court's decision). Intervenors' failure to heed that decision taints their related argument that "emission standards" categorically "do not concern energy conservation standards." Intervenors.Br.29.

The fundamental flaw with Defendants' position is that there is no defining feature of emissions regulations that precludes them from concerning energy use—or put another way, referring to or having a connection with that preempted subject matter. *See, e.g.*, *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A*, 519 U.S. 316, 324-25 (1997). *Contra* Intervenors.Br.28-31. Case in point: This one. Unlike most emission standards, "[t]he idea—and the inevitable effect—of the" District's zero-$NO_x$ limit is to categorically prohibit covered gas-fired appliances. *See Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 464 (2012). That is precisely what Congress preempted. *CRA*, 89 F.4th at 1107.

To be clear, there is no bright-line rule the other way, either. Not all emission standards are preempted—only those that concern the preempted subject matter. *Contra* District.Br.39-43; Intervenors.Br.35-41. This draws the line where Congress did. Rejecting Defendants' mistaken all-or-nothing view resolves Intervenors' concern for local gas distribution, Intervenors.Br.30, which is typically (and perhaps always)

17

too far removed from covered appliances' energy use to satisfy the "concerning" requirement. *See CRA*, 89 F.4th at 1105-06; *id.* at 1117-19 (Baker, J., concurring). Nor does Congress's decision in 2005 to direct the Department of Energy and the EPA to agree between themselves how to "divide[]" their "[r]esponsibilities under the [Energy Star] program," §6294a(b), say anything about whether some emission standards concern energy use under a preemption provision enacted decades earlier. *Contra* Intervenors.Br.30-31.

**2.** Intervenors retreat to the position that the cases establishing the meaning of "concerning" in preemption provisions do not apply. Intervenors.Br.53-54. Intervenors falsely claim that Plaintiffs rely on "a single case," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992). *Compare* Intervenors.Br.53-54 (citing Opening.Br.36), *with* Opening.Br.36-37, 44, 48-50 (discussing several controlling cases). And they ignore this Court's discussion of the term's meaning in this statute. *CRA*, 89 F.4th at 1103. That is reason enough to reject their view.

Anyhow, nobody is suggesting that "concerning" signals an intent to "deregulate an entire industry." *Contra* Intervenors.Br.53. Rather, it indicates that Congress at least "expand[ed] preemption beyond direct or facial regulations of covered appliances," *CRA*, 89 F.4th at 1103, to reach laws with "a significant impact" on Congress's objectives, *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008).

18

**3.** Nor can the statute be read to include an unwritten exception for emissions regulations. *Contra* District.Br.47-49; ER-16. Just as in *Rowe*, EPCA "explicitly lists a set of exceptions … , but the list says nothing about" emissions regulations. 552 U.S. at 374 (rejecting an "implied 'public health' or 'tobacco' exception"). So "[d]espite the importance of the [air quality] objective," the statutory text refutes Defendants' view that it makes an "exception on that basis." *Id.*; *see* Opening.Br.45-47.

The District dismisses *Rowe* as rejecting an unwritten exception merely because it was "vague." District.Br.48-49. That was just one of many reasons to doubt Congress intended the exception. *See Rowe*, 552 U.S. at 373-75. The key problem with the proposed exception—whether viewed as a "public health" exception, a "tobacco" exception, or an exception for "laws [that] help [states] prevent minors from obtaining cigarettes"—was that it was not among the "set of exceptions" Congress wrote. *Id.* Just so here.

The District also suggests that the legislative history supports its narrow reading. District.Br.50. But it identifies no evidence that "Congress made a firm judgment" not to preempt emissions regulations for which it provided no exception, and in any event the text controls. *See Rowe*, 552 U.S. at 374; *CRA*, 89 F.4th at 1103-05 (rejecting such a narrow view of Congress's objectives).

**4.** Ultimately, Defendants' and the district court's categorical carveout for emissions regulations would allow jurisdictions like

19

Berkeley to evade EPCA and this Court's *CRA* decision alike by reframing preempted bans on gas-fired appliances or piping as bans on combustion emissions. Opening.Br.40-48. "That would make a mockery of [EPCA's] preemption provision." *Nat'l Meat*, 565 U.S. at 464.

Defendants all but concede the point. Not to worry, they suggest: Because "cities do not face any obligation" to "attain federal air quality standards," their emissions regulations can be safely preempted after all. District.Br.52; *accord* Intervenors.Br.48 (distinguishing "the District's pollution-control mandate"). So much for a bright line between emissions regulations and those concerning energy use.

This leaves Defendants with a tall order: They must establish that even though neither EPCA nor the Clean Air Act says so, one or both statutes immunizes from preemption the subset of emissions regulations motivated by the CAA—no matter whether they ever make it into a state implementation plan. Defendants cannot fill that order. *Infra* pp.25-33.

## C. Unlike ordinary emissions regulations, the zero-$NO_x$ rule's effect on energy use is anything but incidental.

Defendants insist that the zero-$NO_x$ rule's effect on covered appliances' energy use must be written off as incidental in order to save ordinary emissions regulations. District.Br.33-43; Intervenors.Br.46-47. That misunderstands preemption law and the regulatory landscape.

**1.** There is nothing incidental about the District's $NO_x$ ban. Opening.Br.48-51. Just like Berkeley's piping ban, its purpose and effect

is to categorically prohibit gas appliances, ER-13, by preventing them from using any energy.  *See CRA*, 89 F.4th at 1102 ("an ordinance that effectively eliminates the 'use' of an energy source" is preempted).  That the District's rule operates on an inevitable byproduct of the targeted appliances' use of energy rather than directly setting energy use makes no more difference than did Berkeley's nominal regulation of piping.  "[S]hifting the[] regulatory focus" like this is not a way around preemption.  *Am. Trucking*, 569 U.S. at 652.

The Supreme Court's "connection with or reference to" test for similar preemption provisions confirms the point.  *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016).  Just like Berkeley's ban, the District's "ha[s] a significant impact" on—indeed, is inextricably intertwined with—covered appliances' energy use.  *See Rowe*, 552 U.S. at 371 (cleaned up).  And it "produces the very effect that the federal law sought to avoid," *id.* at 372, by banning types of appliances and fraying Congress's national approach into a patchwork.  *See CRA*, 89 F.4th at 1107 (recognizing that "EPCA would no doubt preempt" a direct ban and thus preempted Berkeley's indirect ban).  The District's rule thus has an "impermissible connection with" the preempted subject matter, *Gobeille*, 577 U.S. at 319-20, not a "tenuous, remote, or peripheral" one, *Rowe*, 552 U.S. at 375-76.

The District counters by comparing its rule instead to the gas distribution decisions or carbon taxes Judge Baker identified as likely

beyond EPCA's reach. District.Br.35-38. There is no resemblance. The District's rule "aim[s] directly at" entire types of covered appliances, *see Rowe*, 552 U.S. at 375-76, and prohibits them "from using available gas," *CRA*, 89 F.4th at 1106 (emphasis omitted). By contrast, general decisions about a utility's distribution system are so "remote" from or "peripheral" to the end use of gas in appliances in buildings connected to that system as to likely fall beyond EPCA's reach. *See Rowe*, 552 U.S. at 375-76; *Morales*, 504 U.S. at 390 (recognizing that regulating "the nonprice aspects of fare advertising" would have a "far more tenuous" connection to airfares than the fare-related restrictions at issue).

Carbon taxes are even further afield. Although they might incentivize the choice of electric appliances over gas appliances or of more efficient models, that is true of any regulation affecting energy prices. Such an "incentive or motivator" is worlds away from the District's "command" not to use the covered appliances within the scope of its rule. *See Nat'l Meat*, 565 U.S. at 464 (cleaned up). And the link between generally applicable regulations affecting energy prices and specific appliances' energy use is tenuous at best. *See Rowe*, 552 U.S. at 375-76.[4]

Finally, the District asks this Court to apply two district court cases that predate *CRA* and involve EPCA's separate preemption provision for

---

[4] The District suggests that Judge Baker's concurrence relied on silence about "regulations with only an incidental impact." District.Br.46-47. To the contrary, it applied the well-worn meaning of "concerning." *CRA*, 89 F.4th at 1116-19 (Baker, J., concurring).

fuel economy standards. District.Br.38-39. Those cases relied both on a presumption against preemption and on the dual-agency framework for vehicle regulations in which the National Highway Traffic Safety Administration regulates fuel economy under EPCA while the EPA regulates emissions under the Clean Air Act. *See Cent. Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1168, 1174-75 (E.D. Cal. 2007) (applying a presumption and emphasizing the requirement to "consider 'other motor vehicle standards of the Government'" when setting fuel economy standards (citing 49 U.S.C. §32909(f)); *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 353-54 (D. Vt. 2007) (same). They therefore do not provide a "viable reading" of §6297(c). *Contra* District.Br.39.

**2.** The contrast between the District's rule and ordinary emissions regulations reinforces the point. Opening.Br.48-51. Make no mistake: What makes the difference is not the number zero, but that the District's new limit is so low as to inevitably prevent gas appliances from using any energy. *Contra* District.Br.32-34, 39-42. That the District picked zero just simplifies the facts by leaving no doubt that its rule is an effective ban, as the district court recognized, ER-13. The District pretends that its rule is a "change in *degree*[,] not in *kind*," District.Br.40, but the reality is that gas appliances have long coexisted with its $NO_x$ limits— that is why more than a million units are covered, ER-39 ¶5—but will now be banned.

23

Attempting to assist the District on this point, NESCAUM scores an own goal—twice. First, it explains exactly why ordinary $NO_x$ standards, unlike $NO_x$ bans, have at most an incidental effect on energy use or efficiency: Manufacturers have a range of options for complying, such as "premixing fuel and air before combustion" or "lower[ing] the combustion temperature" through "flue gas recirculation." NESCAUM.Br.25-28. Some of those wind up increasing or reducing efficiency along the way. *Id.* That stands in stark contrast with "the inevitable effect" of the District's rule: Covered gas appliances' maximum energy use is effectively set to zero. *See Nat'l Meat*, 565 U.S. at 464.

Second, NESCAUM confirms that the District's rule is anything but ordinary. In attempting to show otherwise, it gathers $NO_x$ standards "from around th[e] country" (really, from only five states) into a table. NESCAUM.Br.12-20. But there's a reason the table hides the standards: Aside from the rule challenged here, the only zero-$NO_x$ standards are those the Bay Area District adopted in 2023. *See* Bay Area AQMD R. 9-6; NESCAUM.Br.20 (admitting as much). And nobody has even tried to establish that any of the non-zero rules effectively ban gas appliances.

Indeed, the novelty of the District's regulation is all the more reason not to treat Congress's silence decades ago as an endorsement. And it belies the District's claim that ordinary emissions regulations are "just as disruptive" to Congress's preemptive aims as the District's rule, District.Br.50-51. That those and other regulations can contribute at the

margins to differing local requirements for appliances is no reason to ignore the District's approach's far more "significant impact" on the patchwork Congress meant to prohibit. *See Rowe*, 552 U.S. at 375 (emphasis omitted); Opening.Br.40-44.

## II. The Clean Air Act Does Not Immunize the District's Rule.

Defendants contend that the Clean Air Act sets this case apart and that to find preemption would override, undermine, or ignore the CAA, disabling wide swaths of emissions regulations. They are mistaken.

It is shocking that Defendants do not mention, much less address, the CAA's requirement, as a prerequisite for EPA approval of a state implementation plan ("SIP") amendment, that the state provide assurances that its rule "**is not prohibited by any provision of Federal or State law**." §7410(a)(2)(E)(i) (emphasis added). Right from the start, this puts paid to the notion that the CAA lets states violate other federal laws when pursuing air quality objectives. There can be no conflict between EPCA and the CAA because the CAA already says how to resolve any potential clash: State and local governments cannot satisfy CAA obligations by adopting regulations that violate other laws, including EPCA. For the same reason, there is no need to "harmonize" the two statutes or rejigger them to "co-exist[]." *Contra* Intervenors.Br.39-40; CARB.Br.13. Nor did Congress, despite being well aware of the CAA's cooperative federalism structure, include an exception for CAA-motivated regulations in EPCA.

25

### A. The District's intent to satisfy Clean Air Act obligations does not allow it to avoid EPCA.

**1.** Defendants nowhere explain why, given the requirement that states provide assurances that their rules are "not prohibited by any provision of Federal or State law," §7410(a)(2)(E)(i), the CAA would allow the District to adopt regulations that violate EPCA. The District, like any state or local agency, is bound by other laws in pursuing air quality targets. Taken to its logical conclusion, the District's contrary position would mean that if it finds that eliminating appliance emissions based on a user's race would help it achieve its targets, the CAA authorizes it to violate the Equal Protection Clause and §1981. That cannot be correct. So too for EPCA's preemption provision and the Supremacy Clause. The District's regulations are not immune from EPCA challenges simply because they were adopted to implement the CAA.

Defendants also have no real response to the lack of a specific federal directive to regulate appliance emissions, let alone to adopt this particular rule. District.Br.44; Intervenors.Br.35. And that unravels their whole argument. There can be no defense to preemption—and no reason to distinguish *CRA*—based on a federal requirement that doesn't exist. *Contra* District.Br.43. To be clear, no one is contesting the District's general authority to regulate emissions. But that does not answer the question whether the responsibility to regulate emissions shields this particular regulation from preemption.

26

What's more, the District's own behavior undercuts its professed belief that it has no choice but to adopt zero-$NO_x$ rules. The District has not submitted its rule to CARB for inclusion in the SIP—without which it will not count toward meeting California's obligations, *see* §7410. And CARB fails to mention that it withdrew its request for the EPA to approve the Bay Area District's zero-$NO_x$ rules—the only other such rules in the country.[5] On top of that, the District recently voted down two other zero-$NO_x$ rules that surely were just as necessary for using "every conceivable means" to eliminate $NO_x$ emissions from "*all* stationary sources," District.Br.44-45 (cleaned up). Plaintiffs do not doubt that Congress has put the District between a rock and a hard place by requiring it to meet ambitious air quality targets while denying it control over major emission sources. PHLC.Br.23-24; NESCAUM.Br.23-25. But the District's plight does not allow it to violate other laws.

**2.** Defendants' suggestions that §6297(c) must be read "with an eye" toward or to "co-exist[]" with the CAA are not well founded. District.Br.43-44; Intervenors.Br.39-41. They either rest on an asserted need to "harmonize[]" EPCA with the CAA or collapse into a presumption against preemption. Both are barred by this Court's precedent.

---

[5] Letter from Michael T. Benjamin, Div. Chief, Cal. Air Res. Bd., to Cheree Peterson, Acting Reg'l Adm'r, Region 9, U.S. EPA (Mar. 10, 2025) (EPA-R09-OAR-2024-0417), https://www.regulations.gov/document/EPA-R09-OAR-2024-0417-0016.

Intervenors argue that because courts must give effect to statutes "capable of co-existence," EPCA should be construed to fit alongside the CAA. Intervenors.Br.39-40. Cognizant of adverse precedent, they claim this is something different from harmonizing the statutes. Intervenors.Br.54-57. Amicus CARB breezes past that constraint, expressly demanding a harmonization analysis to fix a "potential conflict." CARB.Br.3-4, 13-16.

Both recognize, as they must, that this Court has held that there is no need (indeed, no authority) to harmonize a federal preemption provision with a local air quality regulation. Intervenors.Br.56 n.7; CARB.Br.13-14. In *Association of American Railroads v. South Coast Air Quality Management District*, 622 F.3d 1094 (9th Cir. 2010), this Court found that a District rule regulating idling trains' emissions was preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), which regulates rail transportation, *id.* at 1096-97. The Court rejected the District's argument that its regulation had to be "harmonize[d]" with federal law: If there is an "apparent conflict" between "ICCTA and a *federal* law, then the courts must strive to harmonize the two laws, giving effect to both laws if possible"—but not if the conflict is with a "*state or local* law." *Id.* at 1097-98. Because the District's rule was not a federal law, it was "irrelevant that the Clean Air Act reserves certain regulatory authority to the states and localities." *Id.*

at 1098. Courts have "no authority … to harmonize the District's rules with ICCTA." *Id.*

So too here. Rule 1146.2 is a local law; it has not even been approved by the EPA so as to make it federally enforceable. The District's regulatory authority under the CAA is therefore "irrelevant," and the Court has "no authority" to try to "harmonize" the rule with EPCA. *Am. R.Rs.*, 622 F.3d at 1098.

Intervenors try to distinguish *American Railroads* on the ground that the federal statute there was deregulatory. Intervenors.Br.54-56. And CARB suggests ignoring it because it relied "in part" on *Chevron* deference and the local rule there was new. CARB.Br.13-14. Neither point has any bearing on the Court's holding that it lacks authority to harmonize state laws with federal laws.

That the CAA "supports" some laws EPCA might preempt creates no "potential conflict." *Contra* CARB.Br.14. "No legislation pursues its purposes at all costs." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (attribution omitted). And as noted, Congress already told CAA implementers how to navigate other laws: Don't do what they prohibit. §7410(a)(2)(E)(i). Rather than reconfiguring the two statutes by holding that "EPCA does not preempt what the [CAA] protects," CARB.Br.13, the only lawful way to "harmonize" them is to do what they say: Preempt the subset of emissions rules that concern covered appliances' energy use and therefore violate EPCA. *See* §§6297(c),

29

7410(a)(2)(E)(i). Far from a "repeal by implication," Intervenors.Br.39, that conclusion leaves in place the same marching orders the CAA has given for decades: to regulate air quality while complying with other federal laws, including EPCA.[6]

## B. Defendants' demand for a clear statement that EPCA preempts CAA-motivated emissions regulations would rewrite the statute to add an exception Congress left out.

As discussed, Defendants' bright line between emissions regulations and those concerning energy use is nowhere to be found in the statute—not in the definition of "State regulation," §6297(a)(2)(A); not in the express scope of preemption, §6297(c); and not among the enumerated exceptions, §6297(c)-(f). *Supra* pp.16-20. Defendants' fallback position that EPCA carves out emissions regulations intended to implement the CAA, whether in a SIP or not, is equally unsupported. Congress carefully crafted exceptions to §6297(c), and when it wanted the CAA to take priority over other provisions, it said so, *see* PHLC.Br.25-26 (discussing EPCA's fuel economy provisions, which explicitly account for the overlap with the CAA's vehicle emissions provisions). Its silence here speaks

---

[6] CARB mounts a lengthy attack on the strawman argument that EPCA "impliedly repeal[ed]" the CAA's "support for appliance emissions standards." CARB.Br.8-14. What it really wants is a decision saying the "EPA itself [has] authority to set nationwide emission standards for new appliances," CARB.Br.7 n.3 (citing an advocacy organization's proposal); *see* CARB.Br.14. This Court should not wade into an issue that has no bearing on this case and was "raised for the first time on appeal and only by an amicus," District.Br.24 n.4.

volumes: There is no unwritten exception for CAA-motivated emissions regulations. Opening.Br.45-48, 51-53.

Adding the CAA into the mix does not overcome the fundamental problem that Congress "explicitly list[ed] a set of exceptions" and did not include the one Defendants want. *See Rowe*, 552 U.S. at 374-75 (law "that denies States federal funds unless they forbid sales of tobacco to minors" without requiring "the particular state enforcement method" at issue did not exempt that method from otherwise applicable preemption). Congress was well aware of the CAA and states' role in it but nonetheless chose not to allow states to pursue air quality objectives through regulations concerning covered appliances' energy use.

Defendants' contrary view boils down to a clear statement rule under which EPCA does not preempt any kind of "State regulation" it does not expressly address. District.Br.47; Intervenors.Br.42 (demanding "exceedingly clear language"). EPCA's text provides no support for that rule, and its broad definition of "State regulation" refutes it. §6297(a)(2)(A). Nor do Defendants identify any cases reading similar preemption provisions in this way.

The District seizes on a footnote in *Dillingham*, which it takes to mean that because Congress "previously encouraged" emissions regulations in the CAA, it needed to explicitly address those regulations in EPCA to preempt any of them. District.Br.50 (citing *Dillingham*, 519 U.S. at 331 n.7). The footnote cannot bear the weight the District places on it. It

31

acknowledges that "the same Congress" is unlikely to have encouraged and preempted the same state laws at the same time. *Dillingham*, 519 U.S. at 331 n.7. But it recognizes that the inference does not hold when a later Congress preempts what an earlier statute (like the CAA here) promoted. *Id.* Timing aside, the inference depends on a concern that preemption would override the other statute. *See id.* That concern is absent here. There is nothing inconsistent about Congress directing states to regulate emissions while preempting the handful of emissions regulations that interfere with its energy policy. *Supra* pp.25-30.

Intervenors appeal to *Sackett v. EPA*, 143 S. Ct. 1322 (2023), but it is no help either. *Contra* Intervenors.Br.42. *Sackett* addressed the federal-state balance under the Clean Water Act and rejected a broad interpretation of "waters of the United States" that would have expanded federal jurisdiction. 143 S. Ct. at 1341. As for EPCA, Congress expressly shifted power from states and localities to the federal government. This is an "exceedingly clear" statement were one required. Besides, as discussed, recognizing that EPCA preempts the District's rule would not disrupt the CAA's cooperative federalism scheme.

Intervenors also suggest that a clear statement is required because Congress would not have intruded on "historic and recognized" state and local powers without saying so. Intervenors.Br.41-43. That is just the presumption against preemption by another name.

32

Finally, the District tries and fails to explain away the district court's resort to what amounts to a presumption against preemption. District.Br.51. The court's correct statement that there is no such presumption, ER-12, does not change the fact that its analysis effectively incorporated one. Reading preemption provisions narrowly to avoid "upsetting states and local governments' longstanding" emissions regulations, ER-16, is a paradigmatic application of the presumption. Defendants have no answer to this Court's rejection of a substantially identical justification for Berkeley's ban. *CRA*, 89 F.4th at 1099. And the District's attempt to brush off the district court's reliance on *Air Conditioning*'s use of the presumption, District.Br.51, is belied by what the court said: It quoted *Air Conditioning*'s statement that the legislative history "support[ed] a narrow interpretation of the preemption provision," ER-16—a conclusion drawn from applying the presumption. *See Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 497-500 (9th Cir. 2005).

## III. The District's Fallback Positions Fare No Better.

### A. The District misapplies the standard for facial challenges.

As a last-ditch effort to avoid a merits ruling against it, the District contends that even if its zero-$NO_x$ limits for EPCA-covered appliances are preempted, its rule is shielded from a facial challenge because it covers process heaters that EPCA does not. District.Br.55-56. That misapplies the legal standard and goes at most to the proper remedy, not the merits.

To be sure, a facial challenge generally requires showing that the challenged law is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). But that standard is tethered to the "plaintiffs' claim and the relief that would follow." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). "The label is not what matters"; "[w]here, as here, the claim and accompanying relief reach beyond the particular circumstances of the[] plaintiffs," facial standards apply—but only "to the extent of that reach." *Id.*; *accord Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025) (same); *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 914 (10th Cir. 2016) ("[F]acial standards are applied … to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision." (applying *Reed*)).

The scope of EPCA's preemption provision confirms the point. Congress preempted state regulations only to the extent they operate on covered appliances. §6297(c) ("no State regulation concerning" energy use "of such covered product *shall be effective with respect to such product*" (emphasis added)). It was well within Congress's power to choose a scalpel over a meat-ax. But by the District's logic, a state could easily flout EPCA by tacking on a regulation of a non-covered appliance to an otherwise preempted regulation. That result is contrary to Supreme Court precedent. *See Reed*, 561 U.S. at 194.

Here, "the universe of applications contemplated by [P]laintiffs' claim" is the zero-$NO_x$ rule's application to covered products under EPCA, *Sup. Ct. of N.M.*, 839 F.3d at 914. From their complaint's first sentence, Plaintiffs challenged the rule's imposition of "a zero-$NO_x$ standard on certain categories of natural gas appliances covered by" EPCA. ER-183 ¶1. It is therefore irrelevant that the rule is not preempted to the extent it imposes such standards on non-covered products. That is the takeaway from the cases the District relies on: In *Montana Medical Ass'n v. Knudsen*, 119 F.4th 618 (9th Cir. 2024), the plaintiffs challenged a statute's enforcement only "in health care settings," so they had to satisfy the facial challenge standard only for those settings, *id.* at 620, 623-24. By contrast, the plaintiffs in *American Apparel & Footwear Ass'n v. Baden*, 107 F.4th 934 (9th Cir. 2024), challenged a state law as to all "73 chemicals" it regulated, so they needed to show preemption for "all 73," *id.* at 936-39.

Any concern over the breadth of Plaintiffs' claim is properly addressed by cabining the remedy to covered products. *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010) (an objection to the scope of a facial challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint"). That was exactly how this Court handled *CRA*. Recognizing that "Berkeley may enforce its building code on non-covered products, but EPCA displaces its effect on covered products," the Court "conclude[d] that EPCA preempts

35

Berkeley's building code's effect against covered products." *CRA*, 89 F.4th at 1099, 1104. The same relief is warranted here.

The District has no response on this critical point, which it relegates to a footnote insisting that Plaintiffs' complaint is written too broadly. District.Br.56 n.13. That would at most be a reason to make Plaintiffs amend their complaint to clarify its scope. But that would be a pointless exercise in formalism that would change nothing about the dispute in this case: Plaintiffs say the District's zero-$NO_x$ limits for EPCA-covered products are preempted, whereas Defendants and the district court say they are not. There is no obstacle to resolving that dispute on the merits.[7]

## B. There is no basis to remand when it is undisputed that the rule bans gas-fired appliances.

In a single paragraph, the District tosses out a Hail Mary, claiming that a reversal should come with a remand for factfinding about "whether it is possible for gas appliances to comply with" its rule. District.Br.57. But relying on the undisputed facts, the district court already made the only finding that matters: The rule "effectively bans" covered gas appliances. ER-13; *see* ER-37 ¶3 (undisputed that "[n]o gas appliance can operate via combustion without producing some $NO_x$"); FER-7 ¶47 (similar).

---

[7] Nor is there any need to decide whether all process heaters are outside EPCA's coverage. That question will matter only if the rule is enjoined as to covered products, the District enforces it against process heaters, and a dispute about coverage arises.

As discussed, speculation about future gas fuel cell technology is immaterial.  Fuel cells are not covered under EPCA, not covered by Rule 1146.2, and by the District's own admission emit $NO_x$ and thus could not comply with its zero-$NO_x$ limit.  *Supra* pp.8-9.

Because there is no dispute that the rule effectively bans all the EPCA-covered appliances it regulates, there is no reason to remand.

## CONCLUSION

This Court should reverse.

Dated: November 12, 2025

Courtland L. Reichman
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94605

Brian C. Baran
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1909 K St. NW, Suite 800
Washington, DC 20006

Respectfully submitted,

*/s/ Sarah O. Jorgensen*
Sarah O. Jorgensen
REICHMAN JORGENSEN
  LEHMAN & FELDBERG LLP
1201 W. Peachtree St., Suite 2300
Atlanta, GA 30309
(650) 623-1401
sjorgensen@reichmanjorgensen.com

*Counsel for Appellants Rinnai America Corp., Noritz America Corp., National Association of Home Builders, California Manufacturers & Technology Association, California Restaurant Association, California Hotel & Lodging Association, California Apartment Association, Plumbing-Heating-Cooling Contractors of California, and Restaurant Law Center*

John J. Davis, Jr.
Luke Dowling
MCCRACKEN, STEMERMAN &
  HOLSBERRY LLP
475 – 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200
jjdavis@msh.law

*Counsel for Appellant California State Pipe Trades Council*

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, NW, Suite 700
Washington, DC 20036
(202) 331-5913
aamador@restaurant.org

*Counsel for Appellant Restaurant Law Center*

Matthew P. Gelfand
CALIFORNIANS FOR
  HOMEOWNERSHIP, INC.
525 S. Virgil Ave.
Los Angeles, CA 90020
(213) 739-8206
matt@caforhomes.org

*Counsel for Appellant Californians for Homeownership, Inc.*

38

## CIRCUIT RULE 25-5(f) CERTIFICATION

I certify under Circuit Rule 25-5(f) that all parties on whose behalf this brief is submitted concur in its content.

Dated: November 12, 2025          */s/ Sarah O. Jorgensen*
                                  Sarah O. Jorgensen

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-5129

I am the attorney or self-represented party.

**This brief contains** | 8,380 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◉ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.

    ☑ a party or parties are filing a single brief in response to multiple briefs.

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [                ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Sarah O. Jorgensen | **Date** | 11/12/25

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*