No. 25-5129

---

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

RINNAI AMERICA CORPORATION, et al.,

*Plaintiffs – Appellants*,

v.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,

*Defendant – Appellee*,

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, et al.,

*Intervenor – Defendants – Appellees*.

---

On Appeal from the United States District Court
for the Northern District of California
3:25-cv-09088-EMC, Hon. Edward M. Chen

---

# BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION AND NATIONAL FEDERATION OF INDEPENDENT BUSINESS SMALL BUSINESS LEGAL CENTER, INC., IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REHEARING EN BANC

---

Nathan W. Hotes
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
NHotes@pacificlegal.org

*Counsel for Amici Curiae*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

IDENTITY OF AMICI AND INTEREST IN CASE .......... 1

INTRODUCTION .......... 3

I. *Cal. Rest. Ass'n* Applies to the Facts of This Case .......... 5

A. Reducing NOx Emissions to "Zero" Sufficiently Concerns "Energy Use" .......... 5

B. "Emissions" are Part of the "Energy Chain" the Majority Articulated in *Cal. Rest. Ass'n* .......... 8

II. The *Rinnae* Panel Gave the CAA an Improper Scope .......... 10

A. CAA Compliance Does Not Require the SCAQMD Adopt a "Zero" Emissions Policy .......... 10

B. The Panel Majority Improperly Relied on a Lack of Legislative History to Determine the EPCA's Scope .......... 12

CONCLUSION .......... 15

CERTIFICATE OF SERVICE .......... 17

CERTIFICATE OF COMPLIANCE FOR BRIEFS .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beentjes v. Placer County Air Pollution Control District*,
397 F.3d 775 (9th Cir. 2005) .......... 11

*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) .......... 1, 3, 5–10, 14–15

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018) .......... 13

*Hallstrom v. Tillamook County*,
493 U.S. 20 (1989) .......... 13

*Harrison v. PPG Industries, Inc.*,
446 U.S. 578 (1980) .......... 13

*HR Ewell, Inc. v. EPA*,
25-1475 (9th Cir. 2025) .......... 2

*National Association of Home Builders of the United States v. Montgomery County*,
No. 26-1449 (4th Cir. pending) .......... 2

*NLRB v. Canning*,
573 U.S. 513 (2014) .......... 11

*Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*,
___ F.4th ___, 2026 WL 1912093 (9th Cir. July 2, 2026) .......... 6–13

*United States v. Morrison*,
529 U.S. 598 (2000) .......... 11

**Statutes**

42 U.S.C. § 6297(c) .......... 5, 14

42 U.S.C. § 7410(a)(2)(E)(i) .......... 4, 14

**Other Authorities**

Amicus Curiae Brief of Pacific Legal Foundation & American Timber Works in Support of Plaintiff-Appellants, *Mulhern Gas Co. v. Mosley,* No. 25-2041, 2025 WL 4676017 (2d Cir. Oct. 10, 2025) ........................................ 1

*Concern*, Merriam-Webster Dictionary Online (2026) ............................ 6

*Point of Use*, Oxford English Dictionary Online (2022) .......................... 3

S. Coast AQMD R. 1146.2 ........................................................ 1, 6, 8, 10

Scalia, Antonin & Garner, Bryan, *Reading Law: The Interpretation of Legal Text* (2012)............................................. 14

South Coast Air Quality Management District, *2022 Air Quality Management Plan* ES-4 (2022), https://tinyurl.com/2av7ur67 ............................................................ 10

Stark, Kevin, *Berkeley, Calif., repeals its first-in-the-nation ban on natural gas in new homes*, National Public Radio (Mar. 29, 2024, 5:14 AM), https://tinyurl.com/2hst4rd3 ..................... 3

## IDENTITY OF AMICI AND INTEREST IN CASE[1]

Founded in 1973, the Pacific Legal Foundation (PLF) is a nonprofit, tax-exempt corporation formed under California state law, dedicated to litigating public-interest cases. This case aligns with PLF's mission by promoting the responsible use of natural resources for production, innovation, and construction. PLF considers the South Coast Air Quality Management District's (SCAQMD) amended Rule 1146.2 an onerous and unlawful regulatory obstacle that hampers productivity.

PLF has previously filed an amicus brief in the Second Circuit supporting an Energy Policy and Conservation Act (EPCA) preemption claim.[2] *See* Amicus Curiae Brief of Pacific Legal Foundation and American Timber Works in Support of Plaintiffs-Appellants, *Mulhern Gas Co. v. Mosley*, No. 25-2041, 2025 WL 4676017 (2d Cir. Oct. 10, 2025). There, PLF argued that (1) this Court correctly decided *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), (2) that New York's ban

---

[1] No party's counsel authored this brief in whole or in part. No party contributed financial support intended to fund the preparation or submission of this brief. No individual or organization other than PLF and its counsel contributed funding for the preparation or submission of this brief. Amici have previously notified all parties of their intent to file.

[2] The constitutionality of the EPCA was not challenged in this case and is not addressed in this amicus brief.

on natural gas will not increase energy abundance, and that (3) EPCA Preemption will not affect local nuisance laws. PLF also has experience with the Clean Air Act (CAA) and is currently litigating a separate CAA issue in this Court. *See HR Ewell, Inc. v. EPA*, 25-1475 (9th Cir. 2025). PLF's EPCA and CAA experience combined allows PLF to examine the SCAQMD regulation from an individual liberty perspective.

The National Federation of Independent Business Small Business Legal Center, Inc. (NFIB Legal Center) is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the nation's courts through representation on issues of public interest affecting small businesses. It is an affiliate of the National Federation of Independent Business, Inc. (NFIB), which is the nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses. NFIB represents, in Washington, D.C., and all 50 state capitals, the interests of its members.

The NFIB Legal Center is currently involved in litigation in the Fourth Circuit involving EPCA preemption of a Montgomery County, Maryland, ban on gas appliances. *See National Association of Home*

*Builders of the United States v. Montgomery County*, No. 26-1449. This demonstrates the NFIB Legal Center's interest in both the outcome of this case and the interplay between the EPCA and the CAA.

## INTRODUCTION

This panel opinion serves as a cautionary tale detailing how quickly en banc precedent can be confined, and the Court should grant rehearing en banc to keep its decisions consistent.

Two years ago, this Court considered a legally identical matter involving differing interpretations of EPCA preemption in *Cal. Rest. Ass'n*, 89 F.4th at 1101 (en banc). Applying the dictionary definition of "point of use" as "the 'place where something is used,'" this Court struck down the City of Berkeley's first-in-the-nation building code banning natural gas in new buildings because the EPCA expressly preempted regulations preventing EPCA-covered appliances from consuming energy at their final destinations.[3] *Id.* (citing Oxford English Dictionary Online (2022)). This Court's decision underscored its commitment to enforcing

---

[3] This Court starts its quotation with *place*, while the 2025 Oxford dictionary entry starts its quotation with *the*. *See also* Kevin Stark, *Berkeley, Calif., repeals its first-in-the-nation ban on natural gas in new homes*, National Public Radio (Mar. 29, 2024, 5:14 AM), https://tinyurl.com/2hst4rd3.

the EPCA's text as written and preventing end-runs around federal appliance protections.

Here, a panel majority attempts to limit this en banc Court's earlier decision—on what amounts to be the same question of law—to its facts. It upholds legally identical regulations, justifying its 180-degree deviation because the local government here masked its policy choice as necessary for CAA compliance. The panel majority's distinction is illusory, since local governments can comply with their CAA requirements and avoid EPCA preemption in multiple ways, most clearly by regulating mobile transportation sources while steering clear of EPA-covered appliances.

Even assuming arguendo that local governments cannot comply with both the CAA and the EPCA, Congress wrote the CAA to yield to other federal statutes like the EPCA. State and local governments, before adopting any state implementation plan to regulate air quality standards under the CAA, must confirm their actions are "not prohibited by any provision of Federal or State law from carrying out such implementation plan or portion thereof."[4] 42 U.S.C. § 7410(a)(2)(E)(i). The CAA, at

[4] All regulatory citations are to Title 42 of the U.S. Code.

bottom, avoids conflict with other statutes by surrendering. The panel majority turns Congress's structure upside down, distorting other legal requirements to expand the CAA's reach.

The panel majority's decision has real consequences for broader EPCA preemption jurisprudence. A vast majority of government efforts to ban gas appliance use can be rewritten as emissions regulations necessary for CAA compliance. Berkeley's ban on piping, for example, could be refashioned as an emissions regime creating the same result. The panel majority attempts to stealthily erase *Cal. Rest. Ass'n*, since every local government restricting EPCA-covered appliances will take the panel majority's invitation to invoke the CAA as justification.

Accordingly, this Court should rehear the case en banc.

## I. *Cal. Rest. Ass'n* Applies to the Facts of This Case

### A. Reducing NOx Emissions to "Zero" Sufficiently Concerns "Energy Use"

The EPCA preempts "[s]tate regulation . . . concerning . . . the energy use . . . of [the] covered product." § 6297(c). "Concern" typically means "to relate to" or "to be about" something, as opposed to more direct relations. *Concern*, Merriam-Webster Dictionary Online (2026). Judge Lee's *Rinnai* dissent correctly applies this ordinary understanding, aptly

noting that "Berkeley's ban on new gas infrastructure will *by definition* affect 'energy use'" because the rule sets the "quantity of energy directly consumed" to zero. *Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*, ___ F.4th ___, 2026 WL 1912093, at *15 (9th Cir. July 2, 2026) (Lee, J., dissenting) (emphasis added). The panel majority found that Rule 1146.2 (the "zero-NOx Rule"), a rule barring the emission of any nitrogen oxides, does not concern "energy use" for two reasons: "The Rule presents no physical barrier to the use of natural gas" and "the Rule [does not] say anything about how much or what type of energy an appliance can consume provided that the emissions requirement is met." *Id.* at *11. These attempts to distinguish *Cal. Rest. Ass'n* fail for two key reasons.

First, while the panel majority correctly notes that the zero-NOx Rule imposes no "physical barrier to the use of natural gas," it fails to explain why that is legally significant when both laws effectively ban natural gas. *Id.* Applying the ordinary understanding of "concern" as "relate to," it makes little sense to argue that a zero-NOx policy does not at least relate to energy use because NOx emissions necessarily result from natural gas "energy use." *Id.* at *15 (Lee, J., dissenting). In *Cal. Rest. Ass'n*, 89 F.4th at 1098, for example, Berkeley's rule imposed a

physical barrier by banning natural gas piping in new buildings. There, this Court focused on the law's *result*, not on whether it was a physical barrier or a *de facto* ban. *Id.* at 1103. Focusing on the presence or absence of a physical barrier sidesteps the most legally significant issues: the "energy use" of "covered appliances" and the de facto ban on natural gas. *Id.*

Second, the panel majority engages in sleight-of-hand by asserting that "the Rule [does not] say anything about *how much . . . energy an appliance can consume* provided that the emissions requirement is met." *Rinnai*, 2026 WL 1912093, at *11 (emphasis added). While *technically* true, the statement that the zero-NOx rule imposes no per se limit on the amount of natural gas that property owners can use is greatly misleading, because "[u]nder current technology, *the zero NOx rule means no natural gas appliances*" remain useable. *Id.* at *15 (emphasis added). As this Court articulated in *Cal. Rest. Ass'n*, "by using the term 'concerning,' Congress meant to expand preemption beyond direct or facial regulations of covered appliances." 89 F.4th at 1103. Consequently, the panel majority struggles to articulate how the zero-NOx Rule does not "concern energy use" when it results in an absolute ban on natural

gas. S. Coast Air Quality Mgmt. Dist. Rule 1146.2 (amended June 7, 2024).

As such, this Court should hold that the zero-NOx Rule sufficiently "concern[s] energy use" and prevent local governments from evading the EPCA's unambiguous preemption.

### B. "Emissions" are Part of the "Energy Chain" the Majority Articulated in *Cal. Rest. Ass'n*

The panel majority, attempting to distinguish this case from *Cal. Rest. Ass'n*, held that "unlike Berkeley's ordinance, which banned the natural gas infrastructure that supplied gas *into* appliances, the Rule regulates the *output* of appliances by limiting the [purportedly] harmful NOx pollutants they emit." *Rinnai*, 2026 WL 1912093 at *11. The panel's distinction is illusory, and this Court explicitly accounted for this gamesmanship when it held that "States and localities can't skirt the text of broad preemption by doing *indirectly* what Congress says they can't do *directly*." *Cal. Rest. Ass'n*, 89 F.4th at 1107. There, this Court refused to uphold Berkeley's rule prohibiting natural gas piping in new buildings, stating that "Berkeley can't evade preemption by merely moving up one step in the energy chain and banning natural gas piping within those buildings." *Id.* This Court articulated that both the supply—the piping—

and the use of natural gas—via the covered appliances—are part of this "energy chain." *Id.* Consequently, including emissions in the "energy chain" as a necessary byproduct of natural gas use becomes a rational result. The panel majority committed a fatal error by ignoring this logical follow-through from *Cal. Rest. Ass'n*'s central holding.

Here, the zero-NOx Rule functions nearly identically to Berkeley's rule in *Cal. Rest. Ass'n*, except that it *moves down* the "energy chain" by targeting the appliance's *emissions*. The *Cal. Rest. Ass'n* court clearly emphasized that local governments cannot oscillate along the "energy chain" to dodge EPCA preemption. *Id.* Whether the SCAQMD moves "up" or "down" the energy chain—targeting "inputs" or "outputs"—is irrelevant to the logic of *Cal. Rest. Ass'n*. *Id.* Judge Lee emphasized this point in his dissent, noting that although "an opinion by its very nature only addresses the facts presented in the case . . . [we], however, look at the reasoning of the opinion and even the logic 'germane' to the case's resolution." *Rinnai*, 2026 WL 1912093, at *15–16 (Lee, J., dissenting). As such, this Court should grant the motion to rehear en banc and prohibit local governments from moving *down* the energy chain because the panel

opinion's holding—that emissions are outside the energy chain—is repugnant to the central reasoning of *Cal. Rest. Ass'n*.

## II. The *Rinnai* Panel Gave the CAA an Improper Scope

### A. CAA Compliance Does Not Require the SCAQMD Adopt a "Zero" Emissions Policy

The *Rinnai* panel majority articulated that the zero-NOx Rule was necessary for CAA compliance because "the District has determined that it *cannot* comply with the CAA *unless* it enacts zero emissions standards like Rule 1146.2." *Rinnai*, 2026 WL 1912093, at *8. However, as the *Rinnai* dissent notes, "the CAA does not micromanage *how* the states can meet the goal of cleaner air. In fact, States bear primary responsibility for developing plans to achieve air-quality goals." *Id.* at *16 (Lee, J., dissenting) (citations omitted). The dissent is correct practically and theoretically.

Practically, the SCAQMD claims to be caught between two statutes, but it is merely uncreative. As noted in the SCAQMD final report, 80% of NOx emissions originate from mobile sources—not from stationary water heaters. South Coast Air Quality Management District, *2022 Air Quality Management Plan* ES-4 (2022), https://tinyurl.com/2av7ur67. Because "California is allowed to implement air quality standards that are more

stringent than federal requirements," reducing these emissions is a significant alternative to an absolute zero-NOx rule. *Beentjes v. Placer County Air Pollution Control District*, 397 F.3d 775, 783 (9th Cir. 2005). Judge Lee agrees that the SCAQMD is "not so limited" as it claims and notes that the SCAQMD could regulate non-covered appliances and push for change in other parts of the state to avoid any conflict. *See also Rinnai*, 2026 WL 1912093, at *16 n.4 (Lee, J., dissenting). As such, the panel majority erred by giving substantial weight to the SCAQMD's assertion that the zero-NOx Rule was its sole means of CAA compliance.

Theoretically, the panel majority's reliance on the federal government's lack of objection to conclude that the zero-NOx Rule is necessary for CAA compliance raises Supremacy Clause concerns. *See id.* at *8. As Justice Scalia has noted, government bodies cannot seize additional power through "adverse possession." *NLRB v. Canning*, 573 U.S. 513, 593 (2014). The Supreme Court requires the federal government to remain within its enumerated powers, regardless of state acquiescence. *United States v. Morrison*, 529 U.S. 598, 654 (2000). In *Morrison*, the Supreme Court struck down the Violence Against Women

Act even though "[t]hirty-six [states] and the Commonwealth of Puerto Rico [] filed an *amicus* brief in support" of the law. *Id.*

Conversely, the panel majority reports that "[a]mici identif[ied] 35 other jurisdictions ranging from Texas to Utah to Washington that have adopted similar low, ultra-low, and zero NOx emissions standards for appliances" and that "the federal government has not sought to prevent states from enacting these appliance emissions regulations but instead has supported the states' efforts" to conclude that the CAA allows these zero-NOx Rules. *Rinnai*, 2026 WL 1912093, at *8. Following the Supreme Court's lead, this Court should reject the argument that federal acquiescence marks the boundary between federal and state power.

### B. The Panel Majority Improperly Relied on a Lack of Legislative History to Determine the EPCA's Scope

Even if the SCAQMD's regulations were mandated by the CAA, the panel majority erred in finding that the EPCA did not apply. The panel majority relied on the absence of legislative history to hold that EPCA preemption does not encompass emissions: "Plaintiffs [have not] pointed to a single piece of the EPCA's legislative history mentioning emissions regulations of any kind, let alone indicating that the EPCA was intended to preempt states' ability to regulate appliance emissions." *Rinnai*, 2026

WL 1912093, at *9. This violates a principle, then creates a practical issue.

In principle, Courts should no more rely on an absence of legislative history than they should rely on legislative history itself. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 90 (2018) (rejecting absence of legislative history because "[i]f the text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence in the legislative history cannot lend any clarity") (citations omitted). A cornerstone of statutory interpretation is that "a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark." *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 592 (1980). The Supreme Court has noted that "absent a clearly expressed legislative intention to the contrary, the words of the statute are conclusive." *Hallstrom v. Tillamook County*, 493 U.S. 20, 28 (1989) (citations omitted). Here, there cannot be any "clearly expressed legislative intent to the contrary" because the panel majority relies on the *lack of legislative history and intent* to hold that the EPCA does not regulate emissions. *Id.* The panel majority's reliance on the dog that did not bark flies squarely

in the face of both court precedent and accepted statutory methods of interpretation.

Practically, the panel majority's execution highlights the problem with relying on the absence of legislative history. Proving Justice Scalia's concern that legislative history results in interpretations inconsistent with textualist readings, the panel majority ignores clear textual evidence that EPCA preemption, regardless of the CAA, effects emissions. Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Text* 11 (2012). The zero-NOx Rule concerns "energy use," so is preempted by the EPCA. The CAA most likely does not apply, but if it did its savings clause cedes final control to the EPCA. § 6297(c). At bottom, the EPCA preempts the zero-NOx Rule because it concerns "energy use" of a covered appliance. The CAA, on the other hand, cannot allow the zero-NOx Rule because it violates the EPCA, a federal law. *See* § 6297(c); § 7410(a)(2)(E)(i). This Court should grant the motion for rehearing en banc, which will vacate the panel decision, and recognize that *Cal. Rest. Ass'n* properly controls both because it was an en banc decision on the same issue of law and because there the Court correctly applied EPCA preemption.

## CONCLUSION

For EPCA preemption to remain meaningful, courts must reject local government attempts to disguise gas bans as emissions rules and to use unrelated statutes as a pretext. The panel majority's reasoning, rooted in misplaced reliance on legislative silence and an inflated view of CAA necessity, invites the patchwork of local prohibitions that Congress enacted the EPCA to prevent. Upholding the plain meaning of "point of use," adhering to the energy chain logic agreed on by the *Cal. Rest. Ass'n* en banc opinion, and respecting the structural limits of federal environmental law can ensure that consumers retain access to federally approved appliances and that national energy policy remains coherent. This Court should rehear this case, which will vacate the panel decision, and ultimately reaffirm that the EPCA's broad preemption remains in effect.

DATED: August 24, 2026.

Respectfully submitted,

s/ Nathan W. Hotes

Nathan W. Hotes
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
NHotes@pacificlegal.org

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Nathan W. Hotes
Nathan W. Hotes

## Certificate of Compliance for Briefs

9th Cir. Case Number: 25-5129

I am the attorney or self-represented party.

**This brief contains 2,957 words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

[ ] it is a joint brief submitted by separately represented parties;

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

DATE: August 24, 2026.

s/ Nathan W. Hotes
Nathan W. Hotes
*Counsel for Amici Curiae*