**No. 25-5129**
Opinion filed July 2, 2026 | Before: LEE, KOH, and DE ALBA, JJ.

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

RINNAI AMERICA CORPORATION, et al.,
*Plaintiffs-Appellants,*

v.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, et al.,
*Defendant-Appellee,*

PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE, et al.,
*Intervenor–Defendants–Appellees*.

---

On Appeal from the United States District Court
for the Central District of California
No. 2:24-cv-10482
Hon. Percy Anderson, District Judge

---

# BRIEF OF *AMICUS CURIAE* AMERICAN GAS ASSOCIATION IN SUPPORT OF PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING *EN BANC*

---

Michael L. Murray
American Gas Association
400 North Capitol Street, NW
Washington, DC 20001
202-824-7071
mmurray@aga.org

Jennifer R.G. Baseman
American Gas Association
400 North Capitol Street, NW
Washington, DC 20001
202-824-7340
jbaseman@aga.org

*Counsel for* Amicus Curiae *American Gas Association*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ ii

Identity and Interest of *Amicus Curiae* ....................................................................1

Summary of Argument ..............................................................................................2

Argument.....................................................................................................................4

I. This Court's decision in *American Railroads* forecloses the foundational premise of the *Rinnai* majority's opinion..............................5

II. Even if the CAA question was ripe, the question of whether the CAA is impliedly repealed by EPCA is a false dichotomy because the statutes should be read in harmony.........................................................12

Conclusion ...............................................................................................................15

Form 8. Certificate of Compliance for Briefs.........................................................16

Certificate of Service ...............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Association of American Railroads v. SCAQMD*,
622 F.3d 1094 (9th Cir. 2010) ........................................................ 3, 5–8, 11, 15

*California Restaurant Association v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ........................................................ 2, 4–5, 12, 15

*Epic Systems Corporation v. Lewis*, 584 U.S. 497 (2018) ......................................6

*Morton v. Mancari*, 417 U.S. 535 (1974) ..............................................................13

*Rinnai America Corporation v. SCAQMD*,
No. 25-5129, 2026 U.S. App. LEXIS 19456 (9th Cir. July 2, 2026) ......... *passim*

*Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007) ....................7–8

*Sierra Club v. TVA*, 430 F.3d 1337 (11th Cir. 2005).............................................11

*United States v. Lucero*, 989 F.3d 1088 (9th Cir. 2021)........................................13

*Young v. UPS*, 575 U.S. 206 (2015) .....................................................................13

**STATUTES**

42 U.S.C. § 7410(a)(2)(A) ....................................................................................10

42 U.S.C. § 7410(a)(2)(E)(i)..................................................................... 4, 11–13

42 U.S.C. § 7410(k)(3)..............................................................................................9

42 U.S.C. § 7416 ......................................................................................................14

42 U.S.C. § 7502(c)(2).............................................................................................10

42 U.S.C. § 7511a(c)(2)...........................................................................................10

42 U.S.C. § 7515 ......................................................................................................14

**RULES**

*Air Plan Limited Approval and Limited Disapproval; California; South Coast Air Quality Management District; Refinery Flares*, 87 Fed. Reg. 57,836 (Sept. 22, 2022) .......................................8

*Disapproval of California Air Plan Revisions, South Coast Air Quality Management District*, 81 Fed. Reg. 4889 (Jan. 28, 2016) ................8

Cir. R. 26.1-1(a)(2) ..................................................................................2

Fed. R. App. P. 29(a)(4)(E)........................................................................1

SCAQMD Rule 1146.2 ..................................................................... *passim*

**OTHER AUTHORITIES**

AGA, *2026 Playbook* (Feb. 10, 2026) ......................................................1

AGA, *About AGA* (last visited Aug. 17, 2026)........................................1

Letter from CARB to EPA Region 9 Submitting 2022 AQMP (Feb. 22, 2023) ..........................................9

Letter from SCAQMD to CARB, *Submittal of the 2022 Air Quality Management Plan* (Dec. 13, 2022)..................................................9

EPA, *Required State Implementation Plan Elements Dashboard* (last visited on Aug. 18, 2026)...............................................................9

SCAQMD Governing Board, *Resolution No. 24-17* (June 7, 2024) .........................3

SCAQMD, *2022 Air Quality Management Plan* (Dec. 2, 2022)..............................8

SCAQMD, *Proposed Amended Rule 1146.2* (last visited Aug. 18, 2026).............10

U.S. Energy Info. Admin., *Annual Energy Outlook 2026* (Apr. 8, 2026).................1

U.S. Energy Info. Admin., *What is U.S. electricity generation by energy source?* (Feb. 29, 2024) ..........................................................1

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* American Gas Association ("AGA") represents natural gas local distribution companies (*i.e.*, natural gas utilities) that deliver natural gas to homes and businesses. There are more than 79 million residential, commercial, and industrial natural gas customers in the United States, of which 94 percent—more than 74 million customers—receive their natural gas from AGA members.[2] The natural gas moved by AGA members heats millions of American homes and generates over 43 percent of the nation's electricity.[3] More than 189 million Americans and 5.8 million businesses use natural gas,[4] and the demand continues to increase because natural gas is abundant, safe, and cost-effective.[5]

AGA provides a broad range of programs and services for natural gas utilities, as well as natural gas pipelines, marketers, gatherers, and industry associates. Among these services is advocacy on behalf of AGA members and their customers on many issues, including key legal issues that affect the distribution and use of

---

[1] No party's counsel for any party authored this brief in whole or in part, and no person or organization—other than AGA, its members, or its counsel—contributed money intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).
[2] *See* AGA, *About AGA*, https://www.aga.org/about (last visited Aug. 17, 2026).
[3] *See* U.S. Energy Info. Admin., *What is U.S. electricity generation by energy source?* (Feb. 29, 2024), https://www.eia.gov/tools/faqs/faq.php?id=427&t=3.
[4] *See* AGA, *2026 Playbook* (Feb. 10, 2026), https://playbook.aga.org.
[5] *See* U.S. Energy Info. Admin., *Annual Energy Outlook 2026* at 24–26 (Apr. 8, 2026), https://www.eia.gov/outlooks/aeo/pdf/AEO_Narrative.pdf.

natural gas. AGA has a substantial interest in the Court granting *en banc* rehearing of this case,[6] in which the majority conducted a flawed analysis of the Clean Air Act ("CAA") to distinguish the Court's recent, binding precedent on Energy Policy and Conservation Act ("EPCA") preemption, as set out in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024) ("*CRA*"). For AGA members, this case has an impact on the continuity of demand for natural gas, in turn affecting utilities' ability to provide natural gas service to their customers—not only within the South Coast Air Quality Management District ("District" or "SCAQMD") but also in other jurisdictions across the United States that are carefully watching how this Court addresses EPCA preemption. Accordingly, AGA files this brief to assist the Court in understanding why *en banc* rehearing must be granted to rectify the CAA-related errors that led to the majority's incorrect decision not to let *CRA* control this case.

## SUMMARY OF ARGUMENT

The majority made two critical, outcome-determinative errors in its CAA analysis, which improperly colored the Court's EPCA preemption analysis and caused its incorrect distinction between this case and the binding precedent in *CRA*.

---

[6] AGA initially demonstrated its interest earlier in this case by filing an *amicus curiae* brief on the history and purpose of EPCA preemption in support of Plaintiffs-Appellants' appeal. *See* Dkt. 21 (filed Sept. 29, 2025). Pursuant to Cir. R. 26.1-1(a)(2), AGA is not submitting Form 34 with this filing because there have been no changes or additions to AGA's Form 34 filed with its initial *amicus* brief.

First, the majority applied the wrong analytical lens in evaluating the preemption question. It assumed that there was a "conflict between two federal statutes" and thus placed a "heavy burden" on the challengers to demonstrate why EPCA should control over the District's emissions standard at issue here. *Rinnai America Corporation v. SCAQMD*, No. 25-5129, 2026 U.S. App. LEXIS 19456, at *26 (9th Cir. July 2, 2026). But while the District may have had attainment of CAA air quality standards in mind when it amended Rule 1146.2 to prohibit gas-fired water heaters, boilers, and process heaters that emit nitrogen oxides ("NOx"), the U.S. Environmental Protection Agency ("EPA") has not approved the incorporation of amended Rule 1146.2 into its CAA state implementation plan ("SIP").[7] This matters because—as this Court held more than a decade ago—although SIPs have "the force and effect of federal law" once approved by EPA, "[t]he corollary to that rule is that, *until approved by the EPA*, state implementation plans do *not* have the force and effect of federal law." *Association of American Railroads v. SCAQMD*, 622 F.3d 1094 (9th Cir. 2010). Under *American Railroads*, there is no clash of federal statutory mandates here because Rule 1146.2 remains

---

[7] Amended Rule 1146.2 has not yet been sent to EPA for approval, despite the fact that it has been more than two years since the District adopted the amendments to Rule 1146.2 and directed that it be submitted to CARB for approval and submittal to EPA for incorporation into the SIP. *See* SCAQMD Governing Board, *Resolution No. 24-17* (June 7, 2024), https://www.aqmd.gov/docs/default-source/rule-book/support-documents/rule-1146_2/rule-1146-2-signed-updated-resolution---june-2024.pdf?sfvrsn=3e60687e_0.

only a local regulation unless and until it is approved by EPA. The *Rinnai* majority contravened this Court's precedent by holding otherwise.

Second, even if the CAA issue was properly before this Court, the majority erred in assuming that applying EPCA preemption to Rule 1146.2 would result in an implied repeal of the CAA. The CAA and EPCA can (and should) be read in harmony with one another because the CAA does not allow SIP provisions that are otherwise prohibited by federal or state law. *See* 42 U.S.C. § 7410(a)(2)(E)(i). If EPCA preempts Rule 1146.2, then Rule 1146.2 is simply not an approvable SIP element under the CAA and the purported conflict evaporates. In other words, if an emissions-related rule submitted to EPA for purposes of CAA compliance is preempted by EPCA, it is not an implied repeal of the CAA but rather strict adherence to the clear text of *both* statutes.

Once the CAA issue is taken off the table, the majority's basis for distinguishing this case from *CRA* falls away. The Court should grant Plaintiffs-Appellants' petition for rehearing *en banc* so it can properly scope the question presented—whether the District's Rule 1146.2 is preempted by EPCA—and correctly evaluate that question under *CRA*.

## ARGUMENT

AGA agrees with Plaintiffs-Appellants and Judge Lee that *CRA* clearly controls this case. Rather than repeating those points here, AGA incorporates by

reference each of the EPCA preemption arguments in Plaintiffs-Appellants' petition for *en banc* reconsideration and will turn directly to the majority's flawed interpretation and application of the CAA.

The majority distinguishes this case from *CRA* by stating that "unlike the District, cities like Berkeley are not charged with the authority or obligation under the CAA to attain federal air quality standards by regulating emissions." *Rinnai*, 2026 U.S. App. LEXIS 19456, at *34–35. The attempted distinction of *CRA* runs headlong into another binding circuit precedent, *American Railroads*. Under *American Railroads*, there is no CAA issue presented unless and until EPA approves Rule 1146.2, which it is indisputably has not done.

Moreover, even if the CAA *was* relevant to the Court's inquiry, the panel should not have used this as an "occasion to consider whether EPCA would preempt a state's exercise of its regulatory authority under another federal statute," *id.* at *32, because there is no conflict between the CAA and EPCA based on the facts of this case.

## I. This Court's decision in *American Railroads* forecloses the foundational premise of the *Rinnai* majority's opinion.

The panel's opinion placed much weight on avoiding a conflict between EPCA and the Clean Air Act. It posed the question presented as "whether EPCA preempts state regulations enacted pursuant to another federal statute, like the CAA." *Rinnai*, 2026 U.S. App. LEXIS 19456, at *19. Viewing the matter through

the lens of "a claimed conflict between two federal statutes," the panel applied "the 'strong presumption' that repeals by implication are 'disfavored' and that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Id.* at *26 (quoting *Epic Systems Corporation v. Lewis*, 584 U.S. 497, 510 (2018)). In doing so, the panel placed a "heavy burden" on the challengers to demonstrate "that Congress intended for EPCA to intrude upon the intricate regulatory scheme established by the CAA." *Id*. Leaning into this mode of analysis, the panel ultimately concluded that allowing EPCA to preempt Rule 1146.2 "would amount to an implied repeal of the CAA" and held that the challengers had not made the necessary showing to justify that outcome. *Id.* at *28.

The majority's analytical approach might have been proper in a case that presented a clash between two federal laws, but this Court's precedent demonstrates that there is no such conflict here. This Court confronted a strikingly similar issue in *American Railroads*, which also involved a preemption challenge to emissions regulations issued by the District. *See* 622 F.3d at 1095–98. There, as here, the emissions regulations had not been approved by EPA as part of any federal CAA state implementation plan. *Id.* at 1098. That fact mattered a great deal in *American Railroads*, because "[i]f an apparent conflict exists between [a federal statute] and a *federal* law," then one set of analytical rules applies, but "[i]f an apparent conflict

exists between [a federal statute] and a *state or local* law . . . different rules apply." *Id.* at 1097.

This Court held that although "state implementation plans have 'the force and effect of federal law' . . . [o]nce approved by EPA, . . . [t]he corollary to that rule is that, *until approved by the EPA*, state implementation plans do *not* have the force and effect of federal law." *Id.* at 1098 (quoting *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007)). "For that reason," the Court continued, "it is irrelevant that the Clean Air Act reserves certain regulatory authority to the states and localities." *Id.* Nor did it matter that the District's regulations "might in the future" become part of an EPA-approved SIP. Unless and until that approval occurs, local regulations remain creatures of state or local law—not federal law. "Accordingly," the Court concluded, "there is no authority for the courts to harmonize the District's rules with [the federal statute]." *Id.* Instead, because "the District's rules have the force and effect of *state* law," the normal preemption analysis applied, with no need for any harmonization with the federal statute. *Id.*

The *American Railroads* holding is not only the law of this Circuit, but it also makes good sense. States may promulgate all manner of emissions regulations for a host of reasons. Naturally, those carry the force of state law. Only when the federal government grants its imprimatur to such a regulation as part of approving a SIP does that regulation become federal in nature and carry the force of federal law as

well. Federal approval is no small matter. SIP submissions must meet various statutory requirements and survive a rigorous regulatory review by EPA before being approved, *see* 42 U.S.C. § 7410(a)(2), and not all submissions pass muster, *see, e.g.*, *Air Plan Limited Approval and Limited Disapproval; California; South Coast Air Quality Management District; Refinery Flares*, 87 Fed. Reg. 57,836 (Sept. 22, 2022); *Disapproval of California Air Plan Revisions, South Coast Air Quality Management District*, 81 Fed. Reg. 4889 (Jan. 28, 2016). Only those state and local rules that successfully run this regulatory gauntlet have "the force and effect of federal law," as only then are they truly an integral part of the Clean Air Act's federal regulatory regime. *American Railroads*, 622 F.3d at 1098 (quoting *Safe Air for Everyone*, 488 F.3d at 1091).

The majority's analysis cannot be squared with *American Railroads*—which merited no discussion, and not even a citation, in the *Rinnai* opinion. Amended Rule 1146.2 has not been approved by EPA and thus presents no CAA issue. Specifically, in the 2022 Air Quality Management Plan ("AQMP"), the District stated that it planned to amend Rule 1146.2 to require zero NOx emissions as part of a broader effort to attain the 2015 8-hour ozone national ambient air quality standards ("NAAQS") under the federal CAA.[8] The District's *intention* to incorporate

[8] *See* SCAQMD, *2022 Air Quality Management Plan* at 4-15, 6-1 (Dec. 2, 2022), https://www.aqmd.gov/docs/default-source/clean-air-plans/air-quality-management-plans/2022-air-quality-management-plan/final-2022-aqmp/final-

amended Rule 1146.2 into its SIP is clear, but it has yet to ask EPA to amend the SIP to add this provision, which of course means that EPA has yet to act on it. Until EPA takes final action to approve the SIP revision, Rule 1146.2 is not an official part of the District's plan for attaining the ozone NAAQS, and the CAA questions posed by the majority are not relevant in this case. *See* 42 U.S.C. § 7410(k)(3) ("The plan revision shall not be treated as meeting the requirements of [the CAA] until the Administrator approves the entire plan revision as complying with the applicable requirements of [the CAA].").

On December 13, 2022, the District submitted its 2022 AQMP to the California Air Resources Board ("CARB") for approval and submission to EPA for incorporation into California's SIP.[9] CARB then approved the 2022 AQMP and submitted it to EPA on February 22, 2023,[10] which EPA received the following day.[11]

---

2022-aqmp.pdf ("2022 AQMP"). The 2022 AQMP also addresses California Clean Air Act requirements, but ozone NAAQS attainment under the federal CAA is the primary focus of the District's plan. *See id.* at 6-1.

[9] *See* Letter from SCAQMD to CARB, *Submittal of the 2022 Air Quality Management Plan* (Dec. 13, 2022), https://ww2.arb.ca.gov/sites/default/files/2022-12/SC_CV_CARB_SIP_Submittal_Letter_12_13_2022.pdf ("District AQMP Submittal Letter").

[10] *See* Letter from CARB to EPA Region 9 Submitting 2022 AQMP (Feb. 22, 2023), https://ww2.arb.ca.gov/sites/default/files/2023-03/2022_SC_AMQP_SSS_Submittal_Letter_to_EPA.pdf.

[11] *See* EPA, *Required State Implementation Plan Elements Dashboard*, https://awsedap.epa.gov/public/extensions/specs-element-dashboard/index.html (last visited on Aug. 18, 2026) (filtered results by state, area, and NAAQS to review the status of the District's SIP submissions).

As acknowledged by the District,[12] the 2022 AQMP serves as the District's required demonstrations of how it plans to make reasonable further progress toward attainment and eventually attain the ozone NAAQS by the applicable deadline. *See* 42 U.S.C. §§ 7502(c)(2), 7511a(c)(2).

EPA has yet to take action on the 2022 AQMP submission; however, even if it had, such action would still be an insufficient link between Rule 1146.2 and the District's CAA compliance obligations for the purpose of establishing the Court's jurisdiction to decide CAA questions in this case. The CAA requires that SIP elements "include enforceable emission limitations and other control measures, means, or techniques . . . as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements of [the CAA]." 42 U.S.C. § 7410(a)(2)(A). At the time of the 2022 AQMP submittal to EPA, the District had the *intention* of amending Rule 1146.2 to require zero NOx emissions, but it had not yet finalized the amendment or even officially kicked off the rulemaking process.[13] Amended Rule 1146.2 still has to be submitted to EPA for approval and incorporation into the SIP so EPA can determine whether the provision

[12] *See* District AQMP Submittal Letter.

[13] The public rulemaking process began with a workshop on April 26, 2023; amended Rule 1146.2 was adopted by the District on June 4, 2024. *See* SCAQMD, *Proposed Amended Rule 1146.2*, https://www.aqmd.gov/home/rules-compliance/rules/scaqmd-rule-book/proposed-rules/rule-1146-2 (last visited Aug. 18, 2026).

has the enforceable emission limits, compliance schedules, and other requirements for being approvable under the CAA.[14] If it were sufficient for the District to simply say it will use amended Rule 1146.2 for CAA compliance, there would be no point in Congress directing EPA to review such rules and approve or disapprove them under the CAA.[15] *See, e.g.*, *Sierra Club v. TVA*, 430 F.3d 1337, 1346 (11th Cir. 2005) ("If a state wants to add, delete, or otherwise modify any SIP provision, it must submit the proposed change to EPA for approval.").

Once EPA approves a SIP revision, it becomes part of the state or local jurisdiction's CAA obligations and makes the provision federally enforceable by EPA. Until EPA takes final action to approve amended Rule 1146.2 as a SIP revision, the underlying requirements remain enforceable only by the District as a matter of local law and the rule is not part of the District's CAA obligations. Yet the majority treated Rule 1146.2 as if it presents a competing federal mandate to be weighed against EPCA's preemption provision, which directly contravenes the Court's holding in *American Railroads*. This error must be rectified on rehearing.

---

[14] Among these other requirements is an assurance that the District is not prohibited by state or federal law from implementing Rule 1146.2, *see* 42 U.S.C. § 7410(a)(2)(E)(i), as discussed below in Section II.

[15] The majority insinuates that EPA has long supported states' efforts to require zero NOx emissions from appliances; however, each of the examples provided is a standard that requires appliances to *lower* but not *eliminate* NOx emissions. *See Rinnai*, 2026 U.S. App. LEXIS 19456, at *24–25. EPA has never approved a zero-NOx appliance standard for a SIP.

## II. Even if the CAA question was ripe, the question of whether the CAA is impliedly repealed by EPCA is a false dichotomy because the statutes should be read in harmony.

The Court should not have reached the CAA question in the first place. Nevertheless, the majority's treatment of the CAA was incorrect because "there is no inherent tension between the CAA and EPCA." *Rinnai*, 2026 U.S. App. LEXIS 19456, at *47 (Lee, J., dissenting). The majority interprets Plaintiffs-Appellants' EPCA preemption argument as an "an implied repeal of the CAA," *id.* at *28, prioritizing the CAA over EPCA despite the fact that Congress directly addressed how to resolve a scenario in which a state or local rule submitted to EPA for CAA purposes is in conflict with another federal law.

The CAA requires a state submitting a SIP for EPA approval to give assurances that the state or (as in this case) local authority "is not prohibited by any provision of Federal or State law from carrying out such implementation plan or portion thereof." 42 U.S.C. § 7410(a)(2)(E)(i). The majority relegates this provision to a mere "catchall" and claims it is "far from the 'clear and manifest' expression of Congress's intent needed to show that Congress intended for EPCA to displace the CAA." *Rinnai*, 2026 U.S. App. LEXIS 19456, at *27–28. But how much clearer did Congress need to be? If EPCA preempts Rule 1146.2—which it does, pursuant to this Court's binding precedent in *CRA*—then the rule is prohibited by federal law, which means the rule is also prohibited as a CAA compliance measure.

Ironically, in holding that EPCA preemption is defeated by CAA obligations, the majority is effectuating an implied repeal of EPCA's preemption provision. There need not be a conflict between these statutes:

> The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. When there are two acts upon the same subject, the rule is to give effect to both if possible.

*Morton v. Mancari*, 417 U.S. 535, 551 (1974) (internal quotations omitted). Furthermore, by choosing to ignore the CAA's requirement that SIP provisions be consistent with other federal laws, the majority is rendering EPA's SIP-approval authority as mere surplusage.[16] *See, e.g.*, *Young v. UPS*, 575 U.S. 206, 226 (2015) (internal quotations omitted) ("We have long held that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause is rendered superfluous, void, or insignificant."); *see also United States v. Lucero*, 989 F.3d 1088, 1110–11 (9th Cir. 2021) (citing *Young*).

Prior attempts by intervenors and *amici* in support of Defendant-Appellee have sought to minimize the importance of the CAA's SIP lawfulness provision, 42 U.S.C. § 7410(a)(2)(E)(i), but these efforts are unavailing. Intervenor-Defendant-

[16] The majority opinion does not clearly specify which part of the CAA would be impliedly repealed if the Court holds that Rule 1146.2 is preempted by EPCA. At a minimum, the Court should grant rehearing to clarify which CAA provision unavoidably requires the interpretation that Section 7410(a)(2)(E)(i) is optional.

Appellees refer to the CAA's protection of states and localities' rights to "adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution." 42 U.S.C. § 7416; *see* Intervenors Br. at 45, Dkt. 32. However, Section 7416 refers to the District's general authority to adopt air regulations notwithstanding the CAA; the excerpted portion of the provision does not refer to whether a regulation is approvable under the CAA. And, given the lack of EPA SIP approval for amended Rule 1146.2, Section 7416 is not relevant here, nor does it undermine EPCA's preemption authority.

*Amicus curiae* CARB describes CAA Section 7515 as "a savings clause protecting approved SIP measures against challenges under other statutes." CARB Br. at 18–19, Dkt. 39. First, as CARB recognizes, Section 7515 applies to an *approved* SIP measure, which amended Rule 1146.2 is not. Second, Section 7515 specifies that an approved SIP measure "shall remain in effect according to its terms, **except to the extent . . . inconsistent with any provision of this chapter**." 42 U.S.C. § 7515 (emphasis added). As discussed above, the SIP lawfulness provision prohibits Rule 1146.2, therefore this case fits within the exception in this savings clause and Section 7515 does not shield Rule 1146.2 from EPCA preemption.

When viewed through a harmonizing lens, it is clear that there is no inherent conflict between the CAA and EPCA. And yet, because Rule 1146.2 has not been

submitted to EPA for incorporation into California's SIP, the CAA is not even relevant to this case and the Court exceeded its authority in addressing it in the first place. *See American Railroads*, 622 F.3d at 1098 (9th Cir. 2010) (because the District's rules do not have the force and effect of federal law under the CAA, the courts have no authority to harmonize the rules with another federal statute). The sole question presented here is whether Rule 1146.2 is preempted by EPCA. Under *CRA*, the answer to this question is a straightforward "yes."

## CONCLUSION

For the foregoing reasons, AGA urges the Court to grant rehearing *en banc*.

Respectfully submitted,

*/s/ Michael L. Murray*

Michael L. Murray
American Gas Association
400 North Capitol Street, NW
Washington, DC 20001
202-824-7071
mmurray@aga.org

Jennifer R.G. Baseman
American Gas Association
400 North Capitol Street, NW
Washington, DC 20001
202-824-7340
jbaseman@aga.org

*Counsel for American Gas Association*

Dated: August 24, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 25-5129

I am the attorney or self-represented party.

**This brief contains 4,197 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Jennifer R.G. Baseman* **Date** August 24, 2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document on August 24, 2026 with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit via the Appellate Electronic Filing System, which will send notice of such filing to all registered users.

Respectfully submitted,

*/s/ Jennifer R.G. Baseman*

Jennifer R.G. Baseman
American Gas Association
400 North Capitol Street, NW
Washington, DC 20001
202-824-7340
jbaseman@aga.org

Dated: August 24, 2026